## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MOTOROLA, INC., a Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) ) | FILED: SEP 23,2008 |
| | ) | 08CV5427 |
| LEMKO CORPORATION, an Illinois Corporation, SHAOWEI PAN, an individual, HANJUAN JIN, an individual, XIAOHUA WU, an individual, XUEFENG BAI, an individual, and XIAOHONG SHENG, an individual, | ) ) ) ) ) ) ) | JUDGE KENNELLY MAGISTRATE JUDGE BROWN RCC |
| Defendants. | ) ) ) ) | |

## COMPLAINT

Plaintiff Motorola, Inc. ("Motorola" or "Plaintiff"), by and through its attorneys, for its Complaint against Defendant Lemko Corporation ("Lemko"), Defendant Shaowei Pan ("Pan"), Defendant Hanjuan Jin ("Jin"), Defendant Xiaohua Wu ("Wu"), Defendant Xuefeng Bai ("Bai"), and Defendant Xiaohong Sheng ("Sheng"), (together "Defendants"), alleges and states as follows:

## NATURE OF ACTION

1.      This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.*, for the threatened or actual misappropriation of trade secrets arising under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*., and for breach of fiduciary duty.

## THE PARTIES

2.      Plaintiff Motorola is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business and world headquarters at 1303 East Algonquin Road, Schaumburg, Cook County, Illinois, 60196.

3.      Defendant Lemko is a corporation organized and existing under the laws of Illinois, with its principal place of business at 1700 East Golf Road, 7th Floor, Schaumburg, Illinois, 60173.

4.      Defendant Pan is a citizen of Illinois, domiciled at 21878 North Tall Hills Drive, Kildeer, Illinois 60047, with a business address of 1700 East Golf Road, 7th Floor, Schaumburg, Illinois 60173.  Pan is the Chief Technology Officer of Defendant Lemko.

5.      Defendant Jin is a citizen of Illinois, domiciled at 2331 County Farm Lane, Schaumburg, Illinois 60194-4808.   Until February 27, 2007, Motorola employed Jin as a software engineer in its Schaumburg, Illinois offices.

6.      Defendant Wu is a citizen of Illinois, domiciled at 21878 North Tall Hills Drive, Kildeer, Illinois 60047.  Until December of 2007, Motorola employed Wu as an engineer at its Schaumburg, Illinois offices.  Defendant Wu is the spouse of Defendant Pan.

7.      Defendant Bai is a citizen of Illinois, domiciled at 2444 Palazzo Court, Buffalo Grove, Illinois 60089.  Until December of 2007, Motorola employed Bai as a software engineer at its Libertyville, Illinois offices.

8.      Defendant Sheng is a citizen of Illinois, domiciled at 875 Westmoreland Drive, Apartment 7, Vernon Hills, Illinois 60061.  Until July of 2008, Motorola employed Sheng as a software engineer at its Libertyville, Illinois offices.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over Plaintiff's claims arising under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, *et seq.*, pursuant to 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over all other claims asserted herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims brought under the CFAA as to form part of the same case or controversy.

10.     This Court has personal jurisdiction over Defendant Lemko.  Defendant Lemko is registered to do business in the State of Illinois.  Defendant Lemko also has a regular and established place of business in Illinois and this District at 1700 East Golf Road, Schaumburg, Illinois, 60173, and is and has been doing business in Illinois and this District at all times relevant hereto.

11.     This Court has personal jurisdiction over Defendant Pan.  On information and belief, at all times relevant hereto, Defendant Pan has resided in Illinois and in the District, has acted as an officer of Defendant corporation Lemko, and/or has committed tortious acts in Illinois and this District.  Defendant Pan's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

12.     This Court has personal jurisdiction over Defendant Jin.  On information and belief, at all times relevant hereto, Defendant Jin has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Jin's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

13.     This Court has personal jurisdiction over Defendant Wu.  On information and belief, at all times relevant hereto, Defendant Wu has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Wu's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

14.     This Court has personal jurisdiction over Defendant Bai.  On information and belief, at all times relevant hereto, Defendant Bai has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Bai's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

15.     This Court has personal jurisdiction over Defendant Sheng.  On information and belief, at all times relevant hereto, Defendant Sheng has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Sheng's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## GENERAL ALLEGATIONS

17.     Motorola is a global leader in communications technologies.  For nearly 80 years, Motorola has been engaged in the research and development of communication technologies, products and services.

4

18.     Motorola is known around the world for innovation in communications including enterprise mobility solutions, mission-critical communication tools, home and network communications and mobile devices.

## Motorola's Proprietary Communications Technologies

19.     Motorola's proprietary and confidential mobile communications technologies include:  proprietary cellular service and product technologies; proprietary wireless broadband and wireless access service and product technologies; proprietary voice communications service and product technologies; proprietary data communications service and product technologies; proprietary integrated voice and data communication systems technologies; proprietary radio systems technologies; proprietary integrated emergency-response communications systems, service, and product technologies; proprietary integrated radio, wireless broadband, voice, and/or data communications systems, service, and product technologies; proprietary communications designs, solutions, initiatives, and equipment; and proprietary and unique confidential combinations and compilations of the above information (hereinafter referred to in the aggregate as Motorola's "proprietary trade secrets and confidential information").

20.     Motorola's proprietary trade secrets and confidential information are not generally known in the trade, and Motorola derives economic value and a competitive advantage in the marketplace from the secrecy of such information.  Indeed, Motorola's proprietary trade secrets and confidential information are Motorola's life blood as a technology leader whose market position depends in upon its innovations.

21.     Motorola has invested hundreds of millions of dollars, many times over, researching and developing its proprietary trade secrets and confidential information.

22.     At all times relevant hereto, Motorola has used reasonable measures to protect the secrecy of its proprietary trade secrets and confidential information, including but not limited to: restricted access on a need-to-know basis; global confidentiality policies; contractual confidentiality restrictions; security key cards; password-protected computer and network platforms; and a wide array of additional physical security measures.

23.     For example, Motorola has, at all times relevant hereto, required its engineers to sign confidentiality agreements.  One such employment agreement reads in part:

> In consideration of my employment, or continued employment by Motorola, Inc. . . . and the salary or wages paid to me, I understand and agree to the following provisions for the protection of Motorola property rights:
>
> 1.   Not to disclose to Motorola, or to use in my work at Motorola (a) any confidential information belonging to others, including my prior employers . . . or (b) any prior inventions made by me which Motorola is not otherwise entitled to learn of or to use.
>
> 2.   Not to use, or to publish, or to otherwise disclose to others, either during or subsequent to my employment by Motorola, any confidential information of Motorola . . . , except as my Motorola duties may require.
>
> 3.   Upon my termination of my employment by Motorola, to promptly deliver to a designated Motorola representative all documents and other records which related to the business activities of Motorola, or any other materials which belong to Motorola.
>
> 4.   To assign and I hearby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.
>
> …

(**EXHIBIT A**.)

24.     Also, since at least 2006, Motorola has required its engineers to sign an "Employment Confidentiality and Assignment of Inventions Agreement," which reads in part:

## 1.  Nondisclosure of Confidential Information

<u>Definitions</u>:  As used in this Agreement, "<u>Confidential Information</u>" means all confidential information and trade secrets (whether or not specifically labeled or identified as "confidential"), in any form or medium, that is disclosed to, or developed or learned by me and that relates to the business, products, services, research or development of Motorola or its suppliers, distributors or customers and that has not become publicly known.

…

I recognize that Motorola is engaged in a continuous program of research and development, and that as an employee, I will have access to Confidential Information that has independent economic value to Motorola in part because it is confidential.  I further recognize that Motorola has taken reasonable steps to protect its Confidential Information from disclosure to the public, including entering into this Agreement.  During and after my employment, I will not disclose or use any Confidential Information except to the extent I am required to disclose or use such Confidential Information in the performance of my assigned duties; and I will use my best efforts to safeguard the Confidential Information and protect it against disclosure, misuse, espionage, loss and theft.

…

## 3.  Ownership and Return of Materials

All documents and materials, which I have had access to or produced in connection with my services for Motorola, or which belong to Motorola, whether or not such materials contain Confidential Information, shall remain the sole property of Motorola.  Upon termination, or at any time requested, I shall promptly deliver to Motorola all such materials and copies in my possession and control and shall provide written confirmation that I have returned all such materials.

…

## 5.  Noncompliance

…

I acknowledge that my compliance with this Agreement is necessary to protect Motorola's goodwill and Confidential Information, that my failure to comply with this Agreement will irreparably harm the business of Motorola, and that monetary damages would not provide an adequate remedy to Motorola in the event of such non-compliance.  Therefore, Motorola shall be entitled to obtain an injunction and other equitable relief in any court of competent jurisdiction against a breach by me of this Agreement.

**(EXHIBIT B**.)

25.     Motorola also requires its employees to adhere to its published "Code of Business Conduct," its "Appropriate Use of Computer Resources Policy," and a "Protection of Proprietary Information" agreement, which employees (including Defendants Jin, Pan, Wu, Bai, and Sheng) acknowledge receiving and reviewing with their signature.

26.     Motorola's proprietary trade secrets and confidential information are not known to the public or generally known within the telecommunications industry, and Motorola derives economic benefit from the secrecy of Motorola's proprietary trade secrets and confidential information.

**Defendants Lemko and Jin Conspire to Smuggle Motorola's Trade Secrets and Other Proprietary Motorola Documents to China**

27.     In 1998, Motorola employed Defendant Jin as a software engineer, where she remained employed for the next nine years, until February of 2007.  Defendant Jin is a naturalized U.S. citizen and a citizen of the People's Republic of China by birth.

28.     Defendant Lemko is a privately held company headquartered in Schaumburg, Illinois with offices in China and India.

29.     Defendant Lemko is a direct competitor of Motorola and advertises itself with the trademark "Wireless for the Next Billion People."

30.     In the course of her employment as a software engineer with Motorola, Defendant Jin had access to Motorola's proprietary trade secrets and confidential information in the performance of her duties.

31.     Motorola reposed a high level of trust and confidence in Defendant Jin's trustworthiness, integrity, and fidelity to her obligations towards Motorola.  These duties were memorialized in part through Jin's executed "Employee Agreement."

32.     In February of 2006, Defendant Jin took an indefinite medical leave of absence from her duties at Motorola.

33.     During her medical leave, Defendant Jin was secretly communicating with and working for Defendant Lemko while still employed by Motorola.

34.     Defendant Jin's activities with Defendant Lemko include the use of a Lemko-owned computer to obtain unauthorized access to Motorola's virtual private network (VPN), multiple times; unauthorized access to Defendant Lemko's email system; and the transfer of Motorola proprietary source code and other proprietary information to Defendant Jin's personal email account.

35.     On February 23, 2007, Defendant Jin advised Motorola that she was ready to end her medical leave and return to work for Motorola.  Defendant Jin did not advise Motorola that she already had accepted employment with Defendant Lemko.

36.     On February 24, 2007, Defendant Jin purchased a one-way ticket to China for a flight scheduled to depart on February 28, 2007.

37.     On February 26, 2007, Defendant Jin returned to work at Motorola.  Without authorization, Defendant Jin accessed Motorola's secure internal network and downloaded hundreds of proprietary and confidential Motorola documents and technical specifications by and through nonsecure means into a nonsecure environment, thereby impairing the value, integrity and/or availability of such information.  That evening, Defendant Jin returned to the Motorola offices and downloaded additional proprietary and confidential Motorola documents through nonsecure means into a nonsecure environment and removed numerous proprietary documents and other materials from the Motorola offices without authorization.

38.     On February 27, 2007, at approximately 12:15 p.m., Defendant Jin sent an e-mail to her supervisor at Motorola resigning from Motorola.   Defendant Jin then surreptitiously returned to the Motorola offices late that same night and again accessed the Motorola secure internal network and downloaded numerous additional proprietary and confidential Motorola documents and technical specifications by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

39.     On February 28, 2007, while attempting to board a flight to China at Chicago's O'Hare International Airport, with over $30,000 dollars in cash, Defendant Jin was thwarted by U.S. Customs officials, who seized more than 1,000 electronic and paper documents identified as the property of Motorola, including proprietary information and trade secrets, in Defendant Jin's possession, including a laptop computer, external hard drives and a thumb drive.

40.     Many of the seized documents were marked as Motorola's confidential and proprietary property, including detailed schematics relating to Motorola's interstate communication network, architecture and network support information.

41.     To date, Motorola has incurred substantial expenses investigating the damage and losses caused by the unauthorized access and unauthorized removal, possession, and impairment of these electronic files and documents.

42.     In April 2008, Defendant Jin was indicted by a Grand Jury sitting in the United States District Court, Northern District of Illinois, for three counts of violation of 18 U.S.C. § 1832(a)(3) relating to Jin's possession of Motorola proprietary documents containing proprietary trade secrets and confidential information.

**Defendant Sheng's Unauthorized Activities with Defendants Lemko and Jin**

43.     Defendant Sheng is a citizen of China who has been studying or working in the U.S. as an engineer since 1999.

44.     In 2006, Defendant Sheng worked as a software engineer for Defendant Lemko at its Schaumburg, Illinois offices.

45.     In November 2006, Defendant Sheng became employed by Motorola as a software engineer.

46.     In the course of her employment as a software engineer for Motorola, Defendant Sheng had access to Motorola's proprietary trade secrets and confidential information in the performance of her duties.

47.     Motorola reposed a high level of trust and confidence in Defendant Sheng's trustworthiness, integrity, and fidelity to her obligations towards Motorola.  These duties were memorialized in part through Defendant Sheng's executed "Employee Confidentiality and Assignment of Inventions Agreement," as described in paragraph 24 above.

48.     In the course of her employment, Motorola provided Defendant Sheng with a laptop computer for use in carrying out her assigned tasks.  Defendant Sheng had access to Motorola's secure internal computer networks through this laptop.

49.     Defendant Sheng secretly continued to work for Lemko after she became employed at Motorola.

50.     In or about July 2008, Motorola discovered source code belonging to Defendant Lemko on the Motorola laptop used by Defendant Sheng.

51.     Upon information and belief, Defendant Sheng used this Motorola laptop to access Motorola's secure internal computer networks without authorization or in excess of her

authorization to obtain and utilize Motorola's proprietary information and trade secrets for her own benefit and the benefit of Defendant Lemko and others, without Motorola's authorization or consent and by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

52.     Defendant Sheng has communicated with Defendant Jin multiple times since Defendant Jin was detained at O'Hare International Airport by U.S. Customs on February 28, 2007 and upon information and belief such communications have been related to Lemko and unauthorized access to Motorola source code and other Motorola proprietary trade secrets and confidential information.

53.     Upon information and belief, Defendant Sheng, individually and in concert with Defendant Lemko, Defendant Jin and others, without Motorola's authorization or consent, copied, duplicated, downloaded and transferred Motorola's proprietary trade secrets and confidential information for her own benefit and the benefit of others, including Defendant Lemko, by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

54.      Motorola terminated Defendant Sheng's employment in July 2008.

### Defendants Wu and Bai's Unauthorized Activities
### With Defendants Pan and Lemko

55.     Defendant Wu is a citizen of China and has been studying or working in the United States as an engineer since approximately 1985.   In June of 1995 Motorola hired Defendant Wu as a staff engineer.   In 1997 Motorola promoted Wu to the position of senior staff engineer.   Defendant Wu is married to Defendant Pan.

56.     In the course of her employment as an engineer for Motorola, Defendant Wu had access to Motorola's proprietary trade secrets and confidential information in the performance of her duties.

57.     Motorola reposed a high level of trust and confidence in Defendant Wu's trustworthiness, integrity, and fidelity to her obligations towards Motorola. These duties were memorialized in part through Defendant Wu's signed "Employee Agreement."

58.     Motorola terminated Defendant Wu's employment in December of 2007.

59.     Defendant Bai is a citizen of China and been studying of working in the United States as an engineer since approximately 1998.  In January of 2001 Motorola hired Defendant Bai as a software engineer.  In 2002 Motorola promoted Bai to the position of senior software engineer.

60.     In the course of his employment as a software engineer for Motorola, Defendant Bai had access to Motorola's proprietary trade secrets and confidential information in the performance of his duties.

61.     Motorola reposed a high level of trust and confidence in Defendant Bai's trustworthiness, integrity, and fidelity to his obligations towards Motorola. These duties were memorialized in part through Defendant Bai's signed "Employment Agreement."

62.     Motorola terminated Defendant Bai's employment in December of 2007.

63.     Defendant Pan is the current Chief Technology Officer of Defendant Lemko. Defendant Pan is a citizen of China and has been studying or working in the U.S. since approximately 1988.  Defendant Pan is married to Defendant Wu.

64.     In July of 1994, Motorola hired Defendant Pan as a staff engineer.     Motorola promoted Pan to the position of senior staff engineer in 1995, and to the position of principal staff engineer in 1996.

65.     In the course of his employment as an engineer for Motorola, Defendant Pan had access to Motorola's proprietary trade secrets and confidential information in the performance of his duties.

66.     Motorola reposed a high level of trust and confidence in Defendant Pan's trustworthiness, integrity, and fidelity to his obligations towards Motorola. These duties were memorialized in part through Defendant Pan's signed "Employee Agreement."

67.     Defendant Pan resigned from his employment with Motorola in March of 2004.

68.     Upon information and belief, Defendant Wu, individually and in concert with Defendant Lemko, Defendant Pan (her husband), Defendant Bai and others, without Motorola's authorization or consent, by and through nonsecure means into a nonsecure environment, copied, duplicated, downloaded, uploaded and transferred Motorola's proprietary trade secrets and confidential information from the Motorola secure internal network, thereby impairing the value, integrity and/or availability of such information, for her own benefit and the benefit of others including Defendant Lemko.

69.     Upon information and belief, Defendant Wu used a Lemko-issued laptop computer to engage in these unlawful activities while still employed at Motorola and was a conduit for the unlawful transfer of Motorola proprietary trade secrets and confidential information to Defendant Pan, her husband and the Chief Technology Officer at Defendant Lemko.

70.     Upon information and belief, Defendant Bai, individually and in concert with Defendant Lemko, Defendant Wu, Defendant Pan and others, without Motorola's authorization or consent, through nonsecure means into a nonsecure environment, copied, duplicated, downloaded, uploaded and transferred Motorola's proprietary trade secrets and confidential information from the Motorola secure internal network, thereby impairing the value, integrity and/or availability of such information, for his own benefit and the benefit of others, including Defendant Lemko.

71.     Upon information and belief, Defendant Pan, in concert with Defendant Lemko, Defendant Wu (his wife), Defendant Bai, Defendant Jin, Defendant Sheng and others, without Motorola's authorization or consent, by and through nonsecure means into a nonsecure environment, received, copied, duplicated, downloaded, uploaded and transferred Motorola's proprietary and confidential trade secrets and confidential information from the Motorola secure internal network, thereby impairing the value, integrity and/or availability of such information, for his own benefit and the benefit of others, including Defendant Lemko.

## COUNT ONE
## COMPUTER FRAUD AND ABUSE ACT
### (against all Defendants)

72.     Motorola repeats and realleges the averments of paragraphs 1-71 as if fully set forth herein.

73.     All computers used by Defendants without authorization or in excess of authorized access, or to destroy or impair Motorola information, including but not limited to all servers, desktop computers, laptop computers, external hard drives, "Blackberry" and/or "Q" devices, and thumb drives and "flash" drives, were at all relevant times used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act, 18

U.S.C. § 1030(e).  The Motorola proprietary trade secrets and confidential information is stored on, and may be accessed from, one or more of these protected computers owned by Motorola, access to which is strictly controlled via various security measures, including secret passwords, and all involve interstate or foreign communications.

74.     Defendants intentionally, knowingly, and with the intent to defraud accessed the secure, protected computers of Motorola, or caused others to access the secure, protected computers of Motorola, without authorization or exceeding authorized access, by and through nonsecure means into nonsecure environments, to copy, duplicate, download, upload and/or transfer Motorola's electronic information, including Motorola's proprietary trade secrets and confidential information, in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)(i)-(iii).

75.     Defendants, through their actions in intentionally, knowingly, and with the intent to defraud, accessing the secure, protected computers of Motorola, or causing others to access the secure, protected computers of Motorola, without authorization or in excess of their authorized access and in violation of the Motorola policies, have caused Motorola to incur losses for responding to Defendants' misconduct and including damage and security assessments exceeding five thousand dollars ($5,000.00) during a one-year period; the investigation of such losses continues.

76.     Defendants intentionally, knowingly, and with the intent to defraud, accessed the secure, protected computers of Motorola, or caused others to access the secure, protected computers of Motorola, without authorization or in excess of authorized access and in violation of the Motorola policies, and from that access, obtained, transmitted, and/or deleted or otherwise destroyed or caused impairment and damage to Motorola property, protected computers, and/or

other confidential information, all of which is of considerable value to Motorola, and/or further their intended fraud, in violation of 18 U.S.C. § 1030, (a)(2), (a)(4), and (a)(5)(A)(i)-(iii).

77.     In addition to an award of compensatory damages, Motorola also is entitled to injunctive relief pursuant to 18 U.S.C. § 1030, *et seq.*, restraining and enjoining Defendants and all those in privity, concert or participation with Defendants from engaging in such wrongful acts in violation of 18 U.S.C. § 1030, *et seq.*

**COUNT TWO**

**THREATENED OR ACTUAL**

**MISAPPROPRIATION OF TRADE SECRETS**

**(against all Defendants)**

78.     Motorola repeats and realleges the averments of paragraphs 1-71 as if fully set forth herein.

79.     The Motorola proprietary trade secrets and confidential information, set forth individually and collectively in the preceding paragraphs of the Complaint, are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

80.     At all times, Motorola has taken reasonable measures to protect the Motorola proprietary trade secrets and confidential information, and Motorola derives economic value and competitive advantage from such information not being generally known to the public or trade.

81.     There exists the threatened or actual misappropriation of trade secrets by the Defendants, acting individually and in concert, to acquire, disclose and/or use, by improper means, the Motorola proprietary trade secrets and confidential information for their own benefit and/or the benefit of others without Motorola's authorization and consent.

82.     Motorola has sustained and will continue to sustain damages, and Defendants have been and will continue to be unjustly enriched in an amount to be proven at trial, as a direct

result of Defendants' threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information.

83.     Defendants' threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information has been willful and malicious and entitles Motorola to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

84.     Motorola also is entitled to injunctive relief to prevent the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information by Defendants pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

**COUNT THREE**
**BREACH OF FIDUCIARY DUTY**

**(against Defendants Jin, Wu, Bai, and Sheng)**

85.     Motorola repeats and realleges the averments of paragraphs 1-18, 27-29, 31-40, 42-46, 47-55, 57-59, 61-64 and 66-71 as if fully set forth herein.

86.     Defendants Jin, Wu, Bai, and Sheng individually and in concert, abused their respected positions and trust with Motorola to further their private interests, failed to protect the corporate property of Motorola, and deprived Motorola of profit or advantages in the marketplace.

87.     Defendants Jin, Wu, Bai, and Sheng, by their actions individually and in concert, violated the duty of loyalty required of them as employees of Motorola not to engage in competition with Motorola while employed by Motorola.

88.     Defendants Jin, Wu, Bai, and Sheng individually and in concert acted with fraud, oppression, and/or malice.

89.     Motorola has sustained losses and damages as a direct and proximate result of Defendant's wrongful actions described herein in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief against Defendants, including:

a.      both preliminary and permanent relief pursuant to 765 ILCS 1065/1, *et seq.* restraining and enjoining Defendant Lemko, its officers, directors, employees, agents, and all those in privity, concert or participation with it from the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information;

b.      both preliminary and permanent relief pursuant to 765 ILCS 1065/1, *et seq.* restraining and enjoining Defendants Jin, Wu, Bai, Sheng, and Pan, and all those in privity, concert or participation with them from the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information;

c.      a finding that Defendants' acts and conduct constitute the actual or threatened misappropriation of trade secrets in violation of 765 ILCS 1065/1, *et seq.*, and that such acts and conduct are and have been willful and malicious;

d.      compensatory and increased damages sustained as a result of Defendants' wrongful actions, together with an accounting of Defendants' profits and unjust enrichment arising from such actions;

e.      compensatory damages, including disgorgement, for the breach of fiduciary duty by Defendants Jin, Wu, Bai, and Sheng, and exemplary damages for the acts constituting breach of fiduciary duty committed with fraud, oppression, and/or malice;

f.      both preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1030, *et seq.*, restraining and enjoining Defendants and all those in privity, concert or participation with them from engaging in acts and practices in violation thereof;

g.      judgment be entered in favor of Plaintiff, and against Defendants, for compensatory damages pursuant to 18 U.S.C. § 1030, *et seq.*, in an amount in excess of $5,000.00 to be proven at trial;

h.      an order compelling Defendants to return any and all of Plaintiff's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code, designs, prototypes and the like, in Defendants' possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivations and compilations and/or other memorializations of such purloined information; together with such other affirmative relief required to compel compliance with this order, including the use of electronic evidence experts and other technicians;

i.      attorneys' fees and costs pursuant to 765 ILCS 1065/1, *et seq.*; and

j.      such further relief as this Court may deem just and proper, in law or equity.

### **JURY DEMAND**

Pursuant to FED. R. CIV. P. 38(b), Motorola respectfully demands a trial by jury of all issues triable by a jury in its Complaint.

*      *      *

Date:   September 23, 2008               Respectfully submitted,

                              /s/ R. Mark Halligan
                              _____

**R. Mark Halligan (IL 6200723)**
mark.halligan@lovells.com
**Deanna R. Swits (IL 6287513)**
deanna.swits@lovells.com
**Kathryn K. Wycoff (IL 6291095)**
kathryn.wycoff@lovells.com
**LOVELLS LLP**
330 N. Wabash Avenue
Suite 1900
Chicago, IL  60611
Tel:  312 832 4400
Fax:  312 832 4444

*Attorneys for Plaintiff Motorola, Inc.*