**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MOTOROLA, INC., a Delaware Corporation, <br><br><br> Plaintiff, <br><br> v. <br> LEMKO CORPORATION, an Illinois Corporation, SHAOWEI PAN, an individual, HANJUAN JIN, an individual, XIAOHUA WU, an individual, XUEFENG BAI, an individual, and XIAOHONG SHENG, an individual, <br><br> Defendants. | Case No.  08 CV 5427 |

**DEFENDANT LEMKO CORPORATION'S COUNTERCLAIM**

Defendant/Counter-Plaintiff, Lemko Corporation, by and through its attorneys, Aronberg Goldgehn David & Garmisa, for its Counterclaim against Plaintiff/Counter-Defendant, Motorola, Inc., states as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Defendant/Counter-Plaintiff, Lemko Corporation ("Lemko"), is an Illinois corporation with its principal place of business at 1700 East Golf Road, 7th Floor, Schaumburg, Cook County, Illinois.  Lemko is a market leader in IP based cellular infrastructure solutions for rural areas and disaster relief.

2.      Plaintiff/Counter-Defendant, Motorola, Inc. ("Motorola"), is a Delaware corporation with its principal place of business at 1303 East Algonquin Road, Schaumburg, Cook County, Illinois.

3.     This court has supplemental jurisdiction over this action

pursuant to 28 U.S.C. § 1367 because this Court has original jurisdiction

over Motorola's Complaint against Lemko, *et al.* and the claims alleged in

this Counterclaim are so related to the claims brought under the Complaint

so as to form a part of the same case or controversy.

4.     This Court has personal jurisdiction over Motorola because

Motorola is registered to do business in Illinois, has its principal place of

business in Schaumburg, Illinois and does business within this State.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)

and (c).

## The Motorola/Lemko Relationship

6.     Motorola and Lemko have communicated with one another on

numerous occasions and engaged in several technical and business

meetings to discuss joint development projects.

7.     On or about September 15, 2005, Motorola and Lemko entered

into that certain Mutual Non-Disclosure Agreement (the "NDA") to protect

any and all confidential information that would or could be disclosed as part

of their relationship.  The NDA was executed by an authorized

representative from both companies.  A true and accurate copy of the NDA

is attached as Exhibit A.

8.     Paragraph 1 of the NDA provides, in relevant part, as follows:

> Confidential Information is defined as any and all
> information consistent with the purpose described
> below that is (i) disclosed under this Agreement in

> oral, written, graphic, machine recognizable,
> and/or sample form being clearly designated,
> labeled or marked as confidential or its equivalent
> or (ii) obtained by examination, testing or analysis
> of any hardware, software or any component part
> thereof provided by Discloser to Recipient.[1]

9.    Paragraph 4 of the NDA provides, in relevant part, as follows:

> During the term of this Agreement and for a period
> of 5 year(s) from the expiration or termination of
> this Agreement, Recipient will…(v) promptly notify
> Discloser upon discovery of any unauthorized use
> or disclosure of the Confidential Information and
> take reasonable steps to regain possession of the
> Confidential Information and prevent further
> unauthorized actions or other breach of this
> Agreement…

10.    The NDA was to remain in full force and effect from September 15, 2005 through September 15, 2007.  However, the Recipient's obligations under Paragraph 4 of the NDA were to survive the expiration or termination of the NDA for a period of five (5) years after the expiration or termination by either party.

### Xiaohong Sheng- Employee of Lemko

11.    On or about February 1, 2005, Lemko hired Xiaohong Sheng ("Sheng") as a Project Lead Engineer.

12.    As part of Lemko's hiring process, Sheng was required to sign an employment offer (the "Employment Offer.").  A true and accurate copy of the Employment Offer is attached as Exhibit B.

---

[1] The terms "Discloser" and "Recipient" can refer to either Motorola or Lemko.

13.   The Employment Offer provides, in relevant part, as follows: "[a] copy of the Employee Manual is included, and we ask that you read it and with the execution of this offer you are acknowledging that your have read and understanding it."

14.   Page (iii) of the Employee Manual provides, in relevant part, as follows:

> **Confidential Information**
> I am aware that during the course of my employment confidential information will be made available to me, for instance, product designs, marketing strategies, customer lists, pricing policies and other related information. I understand that this information is proprietary and critical to the success of Lemko Corporation and must not be given out or used outside of Lemko's premises or with non-Lemko employees. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company.

(the "Confidentiality Agreement).

15.   On or about January 8, 2005, Sheng signed the Employment Offer.

16.   In the performance of Sheng's duties at Lemko, she had access to Lemko's proprietary information and trade secrets including, but not limited to, voicemail server and CDMA A-GPS network-based solutions. Specifically, Sheng had access to Lemko's source code for several cellular programs and solutions.

17.     Sheng continued to work for Lemko through November 30, 2006, when she abruptly resigned without giving any notice to Lemko.

### Sheng- Employee of Motorola

18.     On or about November 2006, Sheng began working for Motorola as a software engineer.  According to Motorola, it issued Sheng a Motorola-owned laptop computer (the "Computer") for use in carrying out her assigned tasks.  (Ex. C, Compl., ¶48)

19.     On or about July 2008, Motorola terminated Sheng.

20.     In Motorola's Complaint, which was filed on September 23, 2008, Motorola admits that, on or about July 2008, Motorola discovered source code belonging to Lemko on the Computer used by Sheng. (Ex. C, ¶50)

21.     At no point prior to filing the Complaint, did Motorola ever notify Lemko that it received Lemko's source code and/or other proprietary information nor did Motorola make any effort to return the source code and/or other proprietary information to Lemko.

### Count I- Actual or Threatened Misappropriation of Trade Secrets

22.     Lemko repeats, realleges, and incorporates the allegations contained in Paragraphs 1 through 21 as if fully set forth in this Paragraph 22.

23.     Lemko's source code is unique, highly valuable, technically complex and is not generally known to the public.  Lemko's source code is a

"trade secret" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*

24.     Lemko derives economic value and a competitive advantage from its source code and other proprietary information not being known by the general public.

25.     At all relevant times, Lemko has and continues to take reasonable measures to maintain the secrecy and confidentiality of its source code and other proprietary information.

26.     Specifically, Lemko, among other things, uses a firewall for source code protection, encrypts its source code, restricts access to source code on a need to know basis, periodically backs-up and stores source code in multiple secure and secret off-site locations, discusses technology and pricing information under Non-Disclosure Agreements, periodically trains its employees on protection of proprietary and secret information, and requires that many of its employees review the Confidentiality Agreement and acknowledge their compliance with the terms thereof.

27.     Motorola misappropriated Lemko's source code by acquiring the source code from Lemko's former employee, Sheng.

28.     There also exists the threat of misappropriation by Motorola to disclose or use Lemko's source code and/or acquire, disclose or use any other proprietary information or trade secrets which may have been obtained on Sheng's Motorola-owned Computer.

29.    Lemko is entitled to injunctive relief to restrain Motorola from continuing to misappropriate Lemko's source code and/or prevent the threatened misappropriation of Lemko's source code and other trade secrets and proprietary information that may be uncovered.

30.    Lemko has sustained and will continue to sustain damages in an amount to be proven at trial as a result of Motorola's actual misappropriation and/or threatened misappropriation of trade secrets. As a result, Lemko is entitled to damages for the actual loss caused by Motorola's actual and/or threatened misappropriation and unjust enrichment.

31.    Motorola's misappropriation of Lemko's source code and/or threatened misappropriation of Lemko's source code and other trade secrets and proprietary information was willful and malicious. As a result, Lemko is entitled to an award of exemplary damages and attorney's fees and costs pursuant to 765 ILCS 1065/4(b) and 765 ILCS 1065/5(iii).

WHEREFORE, Defendant/Counter-Plaintiff, Lemko Corporation, respectfully requests that this Honorable Court enter judgment in its favor and against Plaintiff/Counter-Defendant, Motorola, Inc., as follows:

a)    Finding that Motorola has willfully and maliciously misappropriated Lemko's trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*

b)    Finding that Motorola has willfully and maliciously threatened to misappropriate Lemko's trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*

c)    Entering a preliminary and permanent injunction enjoining and restraining Motorola, its officers, directors,

employees and agents from actual and/or threatened misappropriation of Lemko's proprietary information and trade secrets;

d)   Awarding Lemko compensatory damages sustained as a result of Motorola's wrongful actions;

e)   Ordering that Lemko is entitled to an accounting of Motorola's profits and unjust enrichment from its actual and/or threatened misappropriation of Lemko's trade secrets and proprietary information;

f)   Ordering that Motorola return any and all of Lemko's trade secrets and proprietary information obtained without authorization;

g)   Awarding Lemko attorney's fees pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/5(iii); and

h)   Awarding Lemko any other and further relief as this Court deems just and equitable.

## Count II- Breach of Contract

32.   Lemko repeats, realleges, and incorporates the allegations contained in Paragraphs 1 through 21 as if fully set forth in this Paragraph 32.

33.   Lemko and Motorola entered into the NDA to enable one another to disclose "Confidential Information", as that term is defined in Paragraph 1 of the NDA, in furtherance of potential business opportunities.

34.   Motorola acquired source code belonging to Lemko on the Computer used by Sheng.

35.   Lemko's source code is considered "Confidential Information" under the NDA.

36.     Pursuant to Paragraph 4(v) of the NDA, Motorola had a duty to promptly notify Lemko upon the discovery of any unauthorized use or disclosure of Confidential Information and take reasonable steps to return the Confidential Information to Lemko.

37.     Motorola breached the NDA by failing to promptly notify Lemko of its discovery of Lemko's source code, and any other Confidential Information, on Sheng's Computer and take reasonable steps to return the source code, and any other Confidential Information obtained, to Lemko.

38.     Lemko has performed all conditions precedent required of it under the NDA.

49.     Lemko is entitled to the return of its source code and any other Confidential Information Motorola may have obtained without Lemko's authorization and damages in an amount to be determined at trial in order to make Lemko whole.

WHEREFORE, Defendant/Counter-Plaintiff, Lemko Corporation, respectfully requests that this Honorable Court enter judgment in its favor and against Plaintiff/Counter-Defendant, Motorola, Inc., as follows:

a)     Finding that Motorola has breached the NDA;

b)     Ordering that Motorola comply with the terms of the NDA and return Lemko's source code and any and all other Confidential Information acquired without authorization;

c)     Awarding Lemko compensatory damages sustained as a result of Motorola's breach of the NDA; and

d)     Awarding Lemko any other and further relief as this Court deems just and equitable.

9

LEMKO CORPORATION


By:   s/ John M. Riccione
                 One of its attorneys


John M. Riccione, ARDC # 6209375
William J. Serritella, Jr., ARDC # 6210001
Amy M. Rapoport, ARDC # 6293612
ARONBERG GOLDGEHN DAVIS & GARMISA
330 North Wabash Avenue – Suite 1700
Chicago, Illinois  60611
312-828-9600
498235.v2

# EXHIBIT A

 **MOTOROLA**

### MUTUAL NON-DISCLOSURE AGREEMENT

15 Sep 2005 (Effective Date)                                           File No. 38160

This Mutual Non-Disclosure Agreement ("Agreement") is entered into as of the Effective Date, between Motorola Inc. with offices at 1501 W. Shure Drive, Arlington Heights, IL, 60004, United States ("Motorola") and **LEMKO** with offices at 1700 E. Golf Road, Schaumburg, IL, 60173, USA    - State of Illinois. Each party and its Affiliates, are a disclosing party ("Discloser") and a receiving party ("Recipient") under this Agreement. "Affiliate" means any company which is, now or during the term of this Agreement, a wholly-owned subsidiary of a party or any of its wholly-owned subsidiaries, the parent company of a party, or a wholly-owned subsidiary of the parent company.

1.  Confidential Information is defined as any and all information consistent with the purpose described below that is (i) disclosed under this Agreement in oral, written, graphic, machine recognizable, and/or sample form, being clearly designated, labeled or marked as confidential or its equivalent or (ii) obtained by examination, testing or analysis of any hardware, software or any component part thereof provided by Discloser to Recipient. The nature and existence of this Agreement are considered Confidential Information. Confidential Information that is disclosed solely orally must be identified as confidential at the time of disclosure and confirmed by the Discloser by submitting a written document to the Recipient within 30 days after such disclosure. The written document must contain a summary of the Confidential Information disclosed with enough specificity for identification purpose and must be labeled or marked as confidential or its equivalent.   CONFIDENTIAL INFORMATION IS DISCLOSED FOR EVALUATION ONLY.  The purpose of this Agreement is to enable LEMKO and Motorola parties to hold a business meeting to evaluate the line of products in furtherance of potential business opportunities (the "Purpose").

2.  Recipient is not obligated to maintain as confidential, Confidential Information that Recipient can demonstrate by documentation (i) is now available or becomes available to the public without breach of this Agreement; (ii) is explicitly approved for release by written authorization of Discloser; (iii) is lawfully obtained from a third party or parties without a duty of confidentiality; (iv) is known to the Recipient prior to such disclosure; or (v) is independently developed by Recipient without the use of any of Discloser's Confidential Information or any breach of this Agreement.

3.  If a Recipient is required to disclose Confidential Information pursuant to applicable law, statute, or regulation, or court order, the Recipient will give to the Discloser prompt written notice of the request and a reasonable opportunity to object to such disclosure and seek a protective order or appropriate remedy.  If, in the absence of a protective order, the Recipient determines, upon the advice of counsel, that it is required to disclose such information, it may disclose only Confidential Information specifically required and only to the extent compelled to do so.

4.  During the term of this Agreement and for a period of 5 year(s) from the expiration or termination of this Agreement, Recipient will (i) not disclose Confidential Information to any third party; (ii) restrict disclosure of Confidential Information to only those employees, agents or consultants who must be directly involved with the Confidential Information for the Purpose and who are bound by confidentiality terms substantially similar to those in this Agreement; (iii) not reverse engineer, de-compile or disassemble any Confidential Information; (iv) use the same degree of care as for its own information of like importance, but at least use reasonable care, in safeguarding against disclosure of Confidential Information; (v) promptly notify Discloser upon discovery of any unauthorized use or disclosure of the Confidential Information and take reasonable steps to regain possession of the Confidential Information and prevent further unauthorized actions or other breach of this Agreement; and (vi) only use the Confidential Information for evaluation in connection with the Purpose.

5.  All Confidential Information remains the property of the Discloser and will not be copied or reproduced without the express written permission of the Discloser, except for copies that are absolutely necessary in order

 **MOTOROLA**

to fulfill the Purpose. Within ten (10) days of receipt of Discloser's written request, Recipient will return all Confidential Information to Discloser along with all copies and portions thereof, or certify in writing that all such Confidential Information has been destroyed. However, Recipient may retain one (1) archival copy of the Confidential Information that it may use only in case of a dispute concerning this Agreement. No license, express or implied, in the Confidential Information is granted other than to use the Confidential Information in the manner and to the extent authorized by this Agreement. The Discloser warrants that it is authorized to disclose any Confidential Information it discloses pursuant to this Agreement. However, Discloser makes no other representation or warranty of any kind with respect to the Confidential Information.

6. This Agreement commences on the Effective Date and continues for a period of 2 year(s). Either party may terminate this Agreement for any reason by giving 30 days' written notice to the other party. Recipient's obligations regarding Confidential Information as stated in paragraphs 3 and 4 will survive the expiration or termination of this Agreement.

7. Recipient will not transfer, directly or indirectly, any product, technical data or software furnished hereunder or the direct product of such technical data or software to any country for which the United States or any other applicable government requires an export license or other governmental approval without first obtaining such license or approval.

8. This Agreement is the entire agreement between the parties with respect to the subject matter contained herein and supersedes all prior or contemporaneous oral or written agreements concerning this subject matter. This Agreement may only be modified in writing by the parties. Any understanding between the parties beyond the Purpose of this Agreement will be set forth in a separate written agreement containing appropriate terms and conditions.

9. This Agreement will be governed by and construed in accordance with the laws of Illinois.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Effective Date.

Motorola Inc.

By: _____
(signature of authorized representative)

Name: Paul D Steinberg

Title: VP Technical Staff, Wireless Systems
Architecture, Networks

LEMKO

By: _____
(signature of authorized representative)

Name: _____

Title: _____

Network Solutions Sector
1501 W. Shure Drive, Arlington Heights, IL 60004 • (847) 632-5000

# EXHIBIT B



# LEMKO CORPORATION

## Employment Offer

January 3, 2005

Ms. Xiaohong Sheng
932 Eagle Heights   Apt. C
Madison, WI 53705

Dear Xiaohong:

Everyone at Lemko enjoyed meeting you and believe you can make great contributions as part of the Lemko team. Accordingly, this letter is written to confirm Lemko Corporation's ("Lemko") interest in offering employment to you as a Project Lead Engineer. You have agreed to begin employment on a to be determined, mutually agreed date consistent with your transition from your Ph.D. program at the University of Wisconsin. This offer is the entire offer to you. There are no other express or implied promises, representations or contracts being offered to you. We are excited about working with you and believe that you have the ability to contribute to the success of this organization.

Your starting salary for this position will be $ 76,000 per year to be paid in accordance with the Company's normal payroll practice. Lemko also wishes to recognize your excellent educational credentials by offering you NSO Stock Option in the amount of $10,000. These shares will have a vesting period of three years. In addition to your salary, you will receive those fringe benefits normally available to full-time employees in accordance with the Company's established policies.

Lemko's policies and plan documents govern benefits provided to employees and should be consulted for the details of the plan. At Lemko's discretion, policies, pay, and benefits may be changed at any time, and this letter does not establish any vested rights in pay or benefits.

This letter does not create a contract of employment or a contract for pay or benefits. Your employment is "at-will." This means that you may terminate your employment with Lemko at any time and for any reason whatsoever simply by notifying Lemko. Likewise, Lemko may terminate your employment, change your duties or compensation, at any time with or without cause or advance notice. This at-will employment relationship cannot be changed except in writing signed by the President.

As a Company employee, you will be expected to abide by Company rules and policies contained in the Lemko Corporation Employee Manual. A copy of the Employee Manual is included, and we ask you to read it and with the execution of this offer you are acknowledging that your have read and understanding it. Feel free to inquire of any provisions which are not clear prior to executing this offer.

It is Lemko's policy not to infringe upon the proprietary information, trade secrets, or confidential information of third parties. In addition, it is Lemko's policy not to interfere with third parties' contractual or business relations. Therefore, I also write to confirm that you have represented and warranted that you are not subject to any agreement that would prevent you from performing your duties for Lemko, and that you are not subject to or in breach of any non-disclosure agreement, including any agreement concerning trade secrets or

confidential information owned by any other party. Finally, I write to confirm that, during your employment with Lemko, you will not use, disclose, or reverse engineer (i) any confidential information or trade secrets of any former employer or third party, or (ii) any works of authorship developed in whole or in part by you during any former employment or for any other party, unless authorized in writing by the former employer or third party. In this regard we ask you to sign an Employee Confidentiality Agreement, a copy of which is attached for your review.

If you choose to accept this offer of employment, please sign and date this letter on the lines below, and return this letter to me by January 14, 2005. As a condition of your employment you are required to return the Employee Manual Acknowledgment and Employee Confidentiality Agreement, signed and dated.

Sincerely,

LEMKO CORPORATION

By: _____

Its: _____

**OFFER ACCEPTED BY:**

_____
Signature

_____XIAOHONG SHENG_____
Printed Name

Date: ___01/08/05___

#311811.1

2

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MOTOROLA, INC., a Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) ) | FILED: SEP 23,2008<br>08CV5427 |
| LEMKO CORPORATION, an Illinois Corporation, SHAOWEI PAN, an individual, HANJUAN JIN, an individual, XIAOHUA WU, an individual, XUEFENG BAI, an individual, and XIAOHONG SHENG, an individual, | ) ) ) ) ) ) ) | JUDGE KENNELLY<br>MAGISTRATE JUDGE BROWN<br>RCC |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff Motorola, Inc. ("Motorola" or "Plaintiff"), by and through its attorneys, for its Complaint against Defendant Lemko Corporation ("Lemko"), Defendant Shaowei Pan ("Pan"), Defendant Hanjuan Jin ("Jin"), Defendant Xiaohua Wu ("Wu"), Defendant Xuefeng Bai ("Bai"), and Defendant Xiaohong Sheng ("Sheng"), (together "Defendants"), alleges and states as follows:

### NATURE OF ACTION

1.  This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.*, for the threatened or actual misappropriation of trade secrets arising under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, and for breach of fiduciary duty.

1

## THE PARTIES

2.      Plaintiff Motorola is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business and world headquarters at 1303 East Algonquin Road, Schaumburg, Cook County, Illinois, 60196.

3.      Defendant Lemko is a corporation organized and existing under the laws of Illinois, with its principal place of business at 1700 East Golf Road, 7th Floor, Schaumburg, Illinois, 60173.

4.      Defendant Pan is a citizen of Illinois, domiciled at 21878 North Tall Hills Drive, Kildeer, Illinois 60047, with a business address of 1700 East Golf Road, 7th Floor, Schaumburg, Illinois 60173.  Pan is the Chief Technology Officer of Defendant Lemko.

5.      Defendant Jin is a citizen of Illinois, domiciled at 2331 County Farm Lane, Schaumburg, Illinois 60194-4808.   Until February 27, 2007, Motorola employed Jin as a software engineer in its Schaumburg, Illinois offices.

6.      Defendant Wu is a citizen of Illinois, domiciled at 21878 North Tall Hills Drive, Kildeer, Illinois 60047.  Until December of 2007, Motorola employed Wu as an engineer at its Schaumburg, Illinois offices.  Defendant Wu is the spouse of Defendant Pan.

7.      Defendant Bai is a citizen of Illinois, domiciled at 2444 Palazzo Court, Buffalo Grove, Illinois 60089.  Until December of 2007, Motorola employed Bai as a software engineer at its Libertyville, Illinois offices.

8.      Defendant Sheng is a citizen of Illinois, domiciled at 875 Westmoreland Drive, Apartment 7, Vernon Hills, Illinois 60061.  Until July of 2008, Motorola employed Sheng as a software engineer at its Libertyville, Illinois offices.

2

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over Plaintiff's claims arising under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, *et seq.*, pursuant to 28 U.S.C. § 1331.   This Court also has supplemental jurisdiction over all other claims asserted herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims brought under the CFAA as to form part of the same case or controversy.

10.     This Court has personal jurisdiction over Defendant Lemko.  Defendant Lemko is registered to do business in the State of Illinois.   Defendant Lemko also has a regular and established place of business in Illinois and this District at 1700 East Golf Road, Schaumburg, Illinois, 60173, and is and has been doing business in Illinois and this District at all times relevant hereto.

11.     This Court has personal jurisdiction over Defendant Pan.  On information and belief, at all times relevant hereto, Defendant Pan has resided in Illinois and in the District, has acted as an officer of Defendant corporation Lemko, and/or has committed tortious acts in Illinois and this District.  Defendant Pan's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

12.     This Court has personal jurisdiction over Defendant Jin.  On information and belief, at all times relevant hereto, Defendant Jin has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Jin's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

3

13.    This Court has personal jurisdiction over Defendant Wu.  On information and belief, at all times relevant hereto, Defendant Wu has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Wu's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

14.    This Court has personal jurisdiction over Defendant Bai.  On information and belief, at all times relevant hereto, Defendant Bai has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Bai's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

15.    This Court has personal jurisdiction over Defendant Sheng.  On information and belief, at all times relevant hereto, Defendant Sheng has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Sheng's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## **GENERAL ALLEGATIONS**

17.    Motorola is a global leader in communications technologies.  For nearly 80 years, Motorola has been engaged in the research and development of communication technologies, products and services.

4

18.    Motorola is known around the world for innovation in communications including enterprise mobility solutions, mission-critical communication tools, home and network communications and mobile devices.

### Motorola's Proprietary Communications Technologies

19.    Motorola's proprietary and confidential mobile communications technologies include:  proprietary cellular service and product technologies; proprietary wireless broadband and wireless access service and product technologies; proprietary voice communications service and product technologies; proprietary data communications service and product technologies; proprietary integrated voice and data communication systems technologies; proprietary radio systems technologies; proprietary integrated emergency-response communications systems, service, and product technologies; proprietary integrated radio, wireless broadband, voice, and/or data communications systems, service, and product technologies; proprietary communications designs, solutions, initiatives, and equipment; and proprietary and unique confidential combinations and compilations of the above information (hereinafter referred to in the aggregate as Motorola's "proprietary trade secrets and confidential information").

20.    Motorola's proprietary trade secrets and confidential information are not generally known in the trade, and Motorola derives economic value and a competitive advantage in the marketplace from the secrecy of such information.  Indeed, Motorola's proprietary trade secrets and confidential information are Motorola's life blood as a technology leader whose market position depends in upon its innovations.

21.    Motorola has invested hundreds of millions of dollars, many times over, researching and developing its proprietary trade secrets and confidential information.

22.     At all times relevant hereto, Motorola has used reasonable measures to protect the secrecy of its proprietary trade secrets and confidential information, including but not limited to: restricted access on a need-to-know basis; global confidentiality policies; contractual confidentiality restrictions; security key cards; password-protected computer and network platforms; and a wide array of additional physical security measures.

23.     For example, Motorola has, at all times relevant hereto, required its engineers to sign confidentiality agreements.  One such employment agreement reads in part:

> In consideration of my employment, or continued employment by Motorola, Inc. . . . and the salary or wages paid to me, I understand and agree to the following provisions for the protection of Motorola property rights:
>
> 1.  Not to disclose to Motorola, or to use in my work at Motorola (a) any confidential information belonging to others, including my prior employers . . . or (b) any prior inventions made by me which Motorola is not otherwise entitled to learn of or to use.
>
> 2.  Not to use, or to publish, or to otherwise disclose to others, either during or subsequent to my employment by Motorola, any confidential information of Motorola . . . , except as my Motorola duties may require.
>
> 3.  Upon my termination of my employment by Motorola, to promptly deliver to a designated Motorola representative all documents and other records which related to the business activities of Motorola, or any other materials which belong to Motorola.
>
> 4.  To assign and I hearby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.
>
> …

**(EXHIBIT A.)**

24.     Also, since at least 2006, Motorola has required its engineers to sign an "Employment Confidentiality and Assignment of Inventions Agreement," which reads in part:

## 1. Nondisclosure of Confidential Information

<u>Definitions</u>:  As used in this Agreement, "<u>Confidential Information</u>" means all confidential information and trade secrets (whether or not specifically labeled or identified as "confidential"), in any form or medium, that is disclosed to, or developed or learned by me and that relates to the business, products, services, research or development of Motorola or its suppliers, distributors or customers and that has not become publicly known.

…

I recognize that Motorola is engaged in a continuous program of research and development, and that as an employee, I will have access to Confidential Information that has independent economic value to Motorola in part because it is confidential.  I further recognize that Motorola has taken reasonable steps to protect its Confidential Information from disclosure to the public, including entering into this Agreement.  During and after my employment, I will not disclose or use any Confidential Information except to the extent I am required to disclose or use such Confidential Information in the performance of my assigned duties; and I will use my best efforts to safeguard the Confidential Information and protect it against disclosure, misuse, espionage, loss and theft.

…

## 3. Ownership and Return of Materials

All documents and materials, which I have had access to or produced in connection with my services for Motorola, or which belong to Motorola, whether or not such materials contain Confidential Information, shall remain the sole property of Motorola.  Upon termination, or at any time requested, I shall promptly deliver to Motorola all such materials and copies in my possession and control and shall provide written confirmation that I have returned all such materials.

…

## 5. Noncompliance

…

I acknowledge that my compliance with this Agreement is necessary to protect Motorola's goodwill and Confidential Information, that my failure to comply with this Agreement will irreparably harm the business of Motorola, and that monetary damages would not provide an adequate remedy to Motorola in the event of such non-compliance.  Therefore, Motorola shall be entitled to obtain an injunction and other equitable relief in any court of competent jurisdiction against a breach by me of this Agreement.

**(EXHIBIT B.)**

25.     Motorola also requires its employees to adhere to its published "Code of Business Conduct," its "Appropriate Use of Computer Resources Policy," and a "Protection of Proprietary Information" agreement, which employees (including Defendants Jin, Pan, Wu, Bai, and Sheng) acknowledge receiving and reviewing with their signature.

26.     Motorola's proprietary trade secrets and confidential information are not known to the public or generally known within the telecommunications industry, and Motorola derives economic benefit from the secrecy of Motorola's proprietary trade secrets and confidential information.

**Defendants Lemko and Jin Conspire to Smuggle Motorola's Trade Secrets and Other Proprietary Motorola Documents to China**

27.     In 1998, Motorola employed Defendant Jin as a software engineer, where she remained employed for the next nine years, until February of 2007.   Defendant Jin is a naturalized U.S. citizen and a citizen of the People's Republic of China by birth.

28.     Defendant Lemko is a privately held company headquartered in Schaumburg, Illinois with offices in China and India.

29.     Defendant Lemko is a direct competitor of Motorola and advertises itself with the trademark "Wireless for the Next Billion People."

30.     In the course of her employment as a software engineer with Motorola, Defendant Jin had access to Motorola's proprietary trade secrets and confidential information in the performance of her duties.

31.     Motorola reposed a high level of trust and confidence in Defendant Jin's trustworthiness, integrity, and fidelity to her obligations towards Motorola.   These duties were memorialized in part through Jin's executed "Employee Agreement."

8

32.     In February of 2006, Defendant Jin took an indefinite medical leave of absence from her duties at Motorola.

33.     During her medical leave, Defendant Jin was secretly communicating with and working for Defendant Lemko while still employed by Motorola.

34.     Defendant Jin's activities with Defendant Lemko include the use of a Lemko-owned computer to obtain unauthorized access to Motorola's virtual private network (VPN), multiple times; unauthorized access to Defendant Lemko's email system; and the transfer of Motorola proprietary source code and other proprietary information to Defendant Jin's personal email account.

35.     On February 23, 2007, Defendant Jin advised Motorola that she was ready to end her medical leave and return to work for Motorola.  Defendant Jin did not advise Motorola that she already had accepted employment with Defendant Lemko.

36.     On February 24, 2007, Defendant Jin purchased a one-way ticket to China for a flight scheduled to depart on February 28, 2007.

37.     On February 26, 2007, Defendant Jin returned to work at Motorola.  Without authorization, Defendant Jin accessed Motorola's secure internal network and downloaded hundreds of proprietary and confidential Motorola documents and technical specifications by and through nonsecure means into a nonsecure environment, thereby impairing the value, integrity and/or availability of such information.  That evening, Defendant Jin returned to the Motorola offices and downloaded additional proprietary and confidential Motorola documents through nonsecure means into a nonsecure environment and removed numerous proprietary documents and other materials from the Motorola offices without authorization.

38.     On February 27, 2007, at approximately 12:15 p.m., Defendant Jin sent an e-mail to her supervisor at Motorola resigning from Motorola.  Defendant Jin then surreptiously returned to the Motorola offices late that same night and again accessed the Motorola secure internal network and downloaded numerous additional proprietary and confidential Motorola documents and technical specifications by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

39.     On February 28, 2007, while attempting to board a flight to China at Chicago's O'Hare International Airport, with over $30,000 dollars in cash, Defendant Jin was thwarted by U.S. Customs officials, who seized more than 1,000 electronic and paper documents identified as the property of Motorola, including proprietary information and trade secrets, in Defendant Jin's possession, including a laptop computer, external hard drives and a thumb drive.

40.     Many of the seized documents were marked as Motorola's confidential and proprietary property, including detailed schematics relating to Motorola's interstate communication network, architecture and network support information.

41.     To date, Motorola has incurred substantial expenses investigating the damage and losses caused by the unauthorized access and unauthorized removal, possession, and impairment of these electronic files and documents.

42.     In April 2008, Defendant Jin was indicted by a Grand Jury sitting in the United States District Court, Northern District of Illinois, for three counts of violation of 18 U.S.C. § 1832(a)(3) relating to Jin's possession of Motorola proprietary documents containing proprietary trade secrets and confidential information.

**Defendant Sheng's Unauthorized Activities with Defendants Lemko and Jin**

43.     Defendant Sheng is a citizen of China who has been studying or working in the U.S. as an engineer since 1999.

44.     In 2006, Defendant Sheng worked as a software engineer for Defendant Lemko at its Schaumburg, Illinois offices.

45.     In November 2006, Defendant Sheng became employed by Motorola as a software engineer.

46.     In the course of her employment as a software engineer for Motorola, Defendant Sheng had access to Motorola's proprietary trade secrets and confidential information in the performance of her duties.

47.     Motorola reposed a high level of trust and confidence in Defendant Sheng's trustworthiness, integrity, and fidelity to her obligations towards Motorola. These duties were memorialized in part through Defendant Sheng's executed "Employee Confidentiality and Assignment of Inventions Agreement," as described in paragraph 24 above.

48.     In the course of her employment, Motorola provided Defendant Sheng with a laptop computer for use in carrying out her assigned tasks. Defendant Sheng had access to Motorola's secure internal computer networks through this laptop.

49.     Defendant Sheng secretly continued to work for Lemko after she became employed at Motorola.

50.     In or about July 2008, Motorola discovered source code belonging to Defendant Lemko on the Motorola laptop used by Defendant Sheng.

51.     Upon information and belief, Defendant Sheng used this Motorola laptop to access Motorola's secure internal computer networks without authorization or in excess of her

11

authorization to obtain and utilize Motorola's proprietary information and trade secrets for her own benefit and the benefit of Defendant Lemko and others, without Motorola's authorization or consent and by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

52.     Defendant Sheng has communicated with Defendant Jin multiple times since Defendant Jin was detained at O'Hare International Airport by U.S. Customs on February 28, 2007 and upon information and belief such communications have been related to Lemko and unauthorized access to Motorola source code and other Motorola proprietary trade secrets and confidential information.

53.     Upon information and belief, Defendant Sheng, individually and in concert with Defendant Lemko, Defendant Jin and others, without Motorola's authorization or consent, copied, duplicated, downloaded and transferred Motorola's proprietary trade secrets and confidential information for her own benefit and the benefit of others, including Defendant Lemko, by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

54.     Motorola terminated Defendant Sheng's employment in July 2008.

## Defendants Wu and Bai's Unauthorized Activities
## With Defendants Pan and Lemko

55.     Defendant Wu is a citizen of China and has been studying or working in the United States as an engineer since approximately 1985.   In June of 1995 Motorola hired Defendant Wu as a staff engineer.   In 1997 Motorola promoted Wu to the position of senior staff engineer.   Defendant Wu is married to Defendant Pan.

56.    In the course of her employment as an engineer for Motorola, Defendant Wu had access to Motorola's proprietary trade secrets and confidential information in the performance of her duties.

57.    Motorola reposed a high level of trust and confidence in Defendant Wu's trustworthiness, integrity, and fidelity to her obligations towards Motorola. These duties were memorialized in part through Defendant Wu's signed "Employee Agreement."

58.    Motorola terminated Defendant Wu's employment in December of 2007.

59.    Defendant Bai is a citizen of China and been studying of working in the United States as an engineer since approximately 1998. In January of 2001 Motorola hired Defendant Bai as a software engineer. In 2002 Motorola promoted Bai to the position of senior software engineer.

60.    In the course of his employment as a software engineer for Motorola, Defendant Bai had access to Motorola's proprietary trade secrets and confidential information in the performance of his duties.

61.    Motorola reposed a high level of trust and confidence in Defendant Bai's trustworthiness, integrity, and fidelity to his obligations towards Motorola. These duties were memorialized in part through Defendant Bai's signed "Employment Agreement."

62.    Motorola terminated Defendant Bai's employment in December of 2007.

63.    Defendant Pan is the current Chief Technology Officer of Defendant Lemko. Defendant Pan is a citizen of China and has been studying or working in the U.S. since approximately 1988. Defendant Pan is married to Defendant Wu.

64.     In July of 1994, Motorola hired Defendant Pan as a staff engineer.   Motorola promoted Pan to the position of senior staff engineer in 1995, and to the position of principal staff engineer in 1996.

65.     In the course of his employment as an engineer for Motorola, Defendant Pan had access to Motorola's proprietary trade secrets and confidential information in the performance of his duties.

66.     Motorola reposed a high level of trust and confidence in Defendant Pan's trustworthiness, integrity, and fidelity to his obligations towards Motorola. These duties were memorialized in part through Defendant Pan's signed "Employee Agreement."

67.     Defendant Pan resigned from his employment with Motorola in March of 2004.

68.     Upon information and belief, Defendant Wu, individually and in concert with Defendant Lemko, Defendant Pan (her husband), Defendant Bai and others, without Motorola's authorization or consent, by and through nonsecure means into a nonsecure environment, copied, duplicated, downloaded, uploaded and transferred Motorola's proprietary trade secrets and confidential information from the Motorola secure internal network, thereby impairing the value, integrity and/or availability of such information, for her own benefit and the benefit of others including Defendant Lemko.

69.     Upon information and belief, Defendant Wu used a Lemko-issued laptop computer to engage in these unlawful activities while still employed at Motorola and was a conduit for the unlawful transfer of Motorola proprietary trade secrets and confidential information to Defendant Pan, her husband and the Chief Technology Officer at Defendant Lemko.

70.    Upon information and belief, Defendant Bai, individually and in concert with Defendant Lemko, Defendant Wu, Defendant Pan and others, without Motorola's authorization or consent, through nonsecure means into a nonsecure environment, copied, duplicated, downloaded, uploaded and transferred Motorola's proprietary trade secrets and confidential information from the Motorola secure internal network, thereby impairing the value, integrity and/or availability of such information, for his own benefit and the benefit of others, including Defendant Lemko.

71.    Upon information and belief, Defendant Pan, in concert with Defendant Lemko, Defendant Wu (his wife), Defendant Bai, Defendant Jin, Defendant Sheng and others, without Motorola's authorization or consent, by and through nonsecure means into a nonsecure environment, received, copied, duplicated, downloaded, uploaded and transferred Motorola's proprietary and confidential trade secrets and confidential information from the Motorola secure internal network, thereby impairing the value, integrity and/or availability of such information, for his own benefit and the benefit of others, including Defendant Lemko.

## COUNT ONE
## COMPUTER FRAUD AND ABUSE ACT
### (against all Defendants)

72.    Motorola repeats and realleges the averments of paragraphs 1-71 as if fully set forth herein.

73.    All computers used by Defendants without authorization or in excess of authorized access, or to destroy or impair Motorola information, including but not limited to all servers, desktop computers, laptop computers, external hard drives, "Blackberry" and/or "Q" devices, and thumb drives and "flash" drives, were at all relevant times used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act, 18

U.S.C. § 1030(e). The Motorola proprietary trade secrets and confidential information is stored

on, and may be accessed from, one or more of these protected computers owned by Motorola,

access to which is strictly controlled via various security measures, including secret passwords,

and all involve interstate or foreign communications.

74.     Defendants intentionally, knowingly, and with the intent to defraud accessed the

secure, protected computers of Motorola, or caused others to access the secure, protected

computers of Motorola, without authorization or exceeding authorized access, by and through

nonsecure means into nonsecure environments, to copy, duplicate, download, upload and/or

transfer Motorola's electronic information, including Motorola's proprietary trade secrets and

confidential information, in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)(i)-(iii).

75.     Defendants, through their actions in intentionally, knowingly, and with the intent

to defraud, accessing the secure, protected computers of Motorola, or causing others to access

the secure, protected computers of Motorola, without authorization or in excess of their

authorized access and in violation of the Motorola policies, have caused Motorola to incur losses

for responding to Defendants' misconduct and including damage and security assessments

exceeding five thousand dollars ($5,000.00) during a one-year period; the investigation of such

losses continues.

76.     Defendants intentionally, knowingly, and with the intent to defraud, accessed the

secure, protected computers of Motorola, or caused others to access the secure, protected

computers of Motorola, without authorization or in excess of authorized access and in violation

of the Motorola policies, and from that access, obtained, transmitted, and/or deleted or otherwise

destroyed or caused impairment and damage to Motorola property, protected computers, and/or

other confidential information, all of which is of considerable value to Motorola, and/or further their intended fraud, in violation of 18 U.S.C. § 1030, (a)(2), (a)(4), and (a)(5)(A)(i)-(iii).

77.    In addition to an award of compensatory damages, Motorola also is entitled to injunctive relief pursuant to 18 U.S.C. § 1030, *et seq.*, restraining and enjoining Defendants and all those in privity, concert or participation with Defendants from engaging in such wrongful acts in violation of 18 U.S.C. § 1030, *et seq.*

**COUNT TWO**

**THREATENED OR ACTUAL**

**MISAPPROPRIATION OF TRADE SECRETS**

**(against all Defendants)**

78.    Motorola repeats and realleges the averments of paragraphs 1-71 as if fully set forth herein.

79.    The Motorola proprietary trade secrets and confidential information, set forth individually and collectively in the preceding paragraphs of the Complaint, are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

80.    At all times, Motorola has taken reasonable measures to protect the Motorola proprietary trade secrets and confidential information, and Motorola derives economic value and competitive advantage from such information not being generally known to the public or trade.

81.    There exists the threatened or actual misappropriation of trade secrets by the Defendants, acting individually and in concert, to acquire, disclose and/or use, by improper means, the Motorola proprietary trade secrets and confidential information for their own benefit and/or the benefit of others without Motorola's authorization and consent.

82.    Motorola has sustained and will continue to sustain damages, and Defendants have been and will continue to be unjustly enriched in an amount to be proven at trial, as a direct

result of Defendants' threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information.

83.     Defendants' threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information has been willful and malicious and entitles Motorola to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

84.     Motorola also is entitled to injunctive relief to prevent the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information by Defendants pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

### COUNT THREE
### BREACH OF FIDUCIARY DUTY

**(against Defendants Jin, Wu, Bai, and Sheng)**

85.     Motorola repeats and realleges the averments of paragraphs 1-18, 27-29, 31-40, 42-46, 47-55, 57-59, 61-64 and 66-71 as if fully set forth herein.

86.     Defendants Jin, Wu, Bai, and Sheng individually and in concert, abused their respected positions and trust with Motorola to further their private interests, failed to protect the corporate property of Motorola, and deprived Motorola of profit or advantages in the marketplace.

87.     Defendants Jin, Wu, Bai, and Sheng, by their actions individually and in concert, violated the duty of loyalty required of them as employees of Motorola not to engage in competition with Motorola while employed by Motorola.

88.     Defendants Jin, Wu, Bai, and Sheng individually and in concert acted with fraud, oppression, and/or malice.

89.     Motorola has sustained losses and damages as a direct and proximate result of Defendant's wrongful actions described herein in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief against Defendants, including:

a.     both preliminary and permanent relief pursuant to 765 ILCS 1065/1, *et seq.* restraining and enjoining Defendant Lemko, its officers, directors, employees, agents, and all those in privity, concert or participation with it from the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information;

b.     both preliminary and permanent relief pursuant to 765 ILCS 1065/1, *et seq.* restraining and enjoining Defendants Jin, Wu, Bai, Sheng, and Pan, and all those in privity, concert or participation with them from the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information;

c.     a finding that Defendants' acts and conduct constitute the actual or threatened misappropriation of trade secrets in violation of 765 ILCS 1065/1, *et seq.*, and that such acts and conduct are and have been willful and malicious;

d.     compensatory and increased damages sustained as a result of Defendants' wrongful actions, together with an accounting of Defendants' profits and unjust enrichment arising from such actions;

e.     compensatory damages, including disgorgement, for the breach of fiduciary duty by Defendants Jin, Wu, Bai, and Sheng, and exemplary damages for the acts constituting breach of fiduciary duty committed with fraud, oppression, and/or malice;

f.      both preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1030, *et seq.*, restraining and enjoining Defendants and all those in privity, concert or participation with them from engaging in acts and practices in violation thereof;

g.      judgment be entered in favor of Plaintiff, and against Defendants, for compensatory damages pursuant to 18 U.S.C. § 1030, *et seq.*, in an amount in excess of $5,000.00 to be proven at trial;

h.      an order compelling Defendants to return any and all of Plaintiff's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code, designs, prototypes and the like, in Defendants' possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivations and compilations and/or other memorializations of such purloined information; together with such other affirmative relief required to compel compliance with this order, including the use of electronic evidence experts and other technicians;

i.      attorneys' fees and costs pursuant to 765 ILCS 1065/1, *et seq.*; and

j.      such further relief as this Court may deem just and proper, in law or equity.

## JURY DEMAND

Pursuant to FED. R. CIV. P. 38(b), Motorola respectfully demands a trial by jury of all issues triable by a jury in its Complaint.

\*      \*      \*

20

Date:   September 23, 2008                    Respectfully submitted,


                                              /s/ R. Mark Halligan
                                              _____

                                              **R. Mark Halligan (IL 6200723)**
                                              mark.halligan@lovells.com
                                              **Deanna R. Swits (IL 6287513)**
                                              deanna.swits@lovells.com
                                              **Kathryn K. Wycoff (IL 6291095)**
                                              kathryn.wycoff@lovells.com
                                              **LOVELLS LLP**
                                              330 N. Wabash Avenue
                                              Suite 1900
                                              Chicago, IL  60611
                                              Tel:  312 832 4400
                                              Fax:  312 832 4444

                                              *Attorneys for Plaintiff Motorola, Inc.*

08CV5427
JUDGE KENNELLY
MAGISTRATE JUDGE BROWN
RCC

# EXHIBIT A

 **MOTOROLA** | # EMPLOYMENT AGREEMENT

In consideration of my employment, or continued employment by Motorola, Inc. or its subsidiaries (referred to separately or together as "Motorola") and the salary or wages paid to me, I understand and agree to the following provisions for the protection of Motorola property rights:

1. Not to disclose to Motorola, or to use in my work at Motorola (a) any confidential information belonging to others, including my prior employers (unless written authorization is first obtained), or (b) any prior inventions made by me which Motorola is not otherwise entitled to learn of or to use.

2. Not to use, or to publish, or to otherwise disclose to others, either during or subsequent to my employment by Motorola, any confidential information of Motorola (including confidential information of customers and suppliers), except as my Motorola duties may require.

3. Upon termination of my employment by Motorola, to promptly deliver to a designated Motorola representative all documents and other records which relate to the business activities of Motorola, or any other materials which belong to Motorola.

4. To assign and I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.

5. To make and maintain written records of all inventions, innovations, or ideas referred to in paragraph 4 above and to submit promptly such records, and supplemental oral disclosures, to designated representatives of Motorola.

6. To execute all papers, and otherwise provide proper assistance, at Motorola's request and expense, during and subsequent to my employment by Motorola to enable Motorola or its nominees to obtain patents, copyrights, and legal protection for inventions or innovations in any country.

7. I represent that the inventions identified in the _____ pages I attach hereto comprise all the unpatented inventions which I have made or conceived prior to my employment by Motorola, which inventions shall be excluded from this agreement. (It is only necessary to list the title of such inventions and the purpose thereof, but not details of the invention itself per paragraph 1(b)). IF THERE ARE NO SUCH UNPATENTED INVENTIONS TO BE EXCLUDED, EMPLOYEE INITIAL HERE _____.

8. I further represent that I have attached hereto a copy of any agreement which presently affects my compliance with the terms of this present agreement. (Such copy must specify the other contracting party or employer, the date of such agreement, the date of termination of any employment). IF THERE IS NO SUCH AGREEMENT, EMPLOYEE INITIAL HERE _____.

This agreement replaces any existing employee agreement between Motorola and me regarding patents and/or confidential information and shall be binding on my executors, administrators, heirs, legal representatives or assigns.

This agreement may not be modified except in writing with approval of an officer of Motorola.

| WITNESS | EMPLOYEE | |
|---|---|---|
| SIGNATURE | SIGNATURE | |
| TYPED OR PRINTED NAME | TYPED OR PRINTED NAME | |
| DATE | SOCIAL SEC. NO. | DATE |

MOTOROLA FORM NO. 3757-43(A)

**2. PERSONNEL FOLDER**

COR-02-021

08CV5427
JUDGE KENNELLY
MAGISTRATE JUDGE BROWN
RCC

# EXHIBIT B

**EMPLOYEE CONFIDENTIALITY
AND ASSIGNMENT OF INVENTIONS AGREEMENT**

THIS EMPLOYEE CONFIDENTIALITY AND ASSIGNMENT OF INVENTIONS AGREEMENT ("Agreement") is made by the undersigned employee ("I" or "me") with Motorola, Inc. ("Motorola"). Motorola includes its successors, assigns, current and former affiliates ("affiliates" defined to mean entities that own, are owned by, or are under common ownership with Motorola, Inc.). In consideration of my employment by Motorola and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I agree as follows:

1.    **NONDISCLOSURE OF CONFIDENTIAL INFORMATION**

Definitions:   As used in this Agreement, "Confidential Information" means all confidential information and trade secrets (whether or not specifically labeled or identified as "confidential"), in any form or medium, that is disclosed to, or developed or learned by me and that relates to the business, products, services, research or development of Motorola or its suppliers, distributors or customers and that has not become publicly known.  As used in this Agreement, Confidential Information includes all "Intellectual Property", which means all patent applications, ideas, inventions, formulae, know-how, devices, designs, models, methods, techniques and processes, specifications, tooling, computer programs, copyrightable works, mask works, technical and product information concerning circuits, and all other intellectual property rights.

I recognize that Motorola is engaged in a continuous program of research and development, and that as an employee, I will have access to Confidential Information that has independent economic value to Motorola in part because it is confidential.  I further recognize that Motorola has taken reasonable steps to protect its Confidential Information from disclosure to the public, including entering into this Agreement. During and after my employment, I will not disclose or use any Confidential Information except to the extent I am required to disclose or use such Confidential Information in the performance for my assigned duties; and I will use my best efforts to safeguard the Confidential Information and protect it against disclosure, misuse, espionage, loss and theft.  In the event Motorola has entered into confidentiality agreements, which contain provisions different from and more restrictive than those set forth in this Agreement, I agree to comply with any such different and more restrictive provisions of which I am notified. Confidential Information or Intellectual Property of third parties, including my former employers, may have been disclosed to me and I lawfully may be bound not to disclose such information to others.  I agree not to disclose such information or violate such nondisclosure restrictions and agree to provide Motorola with copies of any written agreements with former employers that contain such restrictions.

2.    **OWNERSHIP OF INTELLECTUAL PROPERTY**

I hereby assign and agree to assign to Motorola all right, title and interest that I may have or acquire in and to any Intellectual Property that relates in whole or in part to Motorola's business or actual or demonstrably anticipated research or development, to the extent such Intellectual Property is not already owned by Motorola as a matter of law.  I shall reduce to writing any Intellectual Property not already in such form and promptly and fully communicate to Motorola all such Intellectual Property and I shall, both during and after my employment, cooperate with Motorola, at its reasonable expense, to protect Motorola's interests in such Intellectual Property.  In the event that Motorola is unable to secure my signature to any document required for any application process for such Intellectual Property, I hereby irrevocably appoint Motorola and its duly authorized officers and agents, as my agents and attorneys-in-fact, to act on my behalf to do any lawfully permitted acts to further the prosecution or issuance of patents for such Intellectual Property with the same legal effect as if executed by me.

I hereby irrevocably waive any and all "moral rights" that I may have in the Intellectual Property created hereunder (the "Work Product"), or any part thereof, in connection with Motorola's use(s) thereof.   To the extent such waiver may be unenforceable, I agree that I will, without further remuneration (except for out-of-pocket expenses), execute and deliver to Motorola such waiver of my moral rights concerning the Work Product and Motorola's uses(s) thereof.  I acknowledge and understand that the term "moral rights" as used herein includes the right of an author  to be known as the author of his/her work to prevent others from being named as the author of his/her work to prevent

others from making deforming changes in his/her work and to prevent others from using the work or the author's name in such a way as to reflect negatively on his/her professional standing.

During the term of my employment with Motorola and for a period of six (6) months after termination, I will promptly disclose to Motorola all Intellectual Property, that relates in whole or in part to Motorola's business or actual or demonstrably anticipated research or development, and that is created, conceived or reduced to practice by me, either alone or jointly with others, whether or not patentable or subject to copyright. I acknowledge and agree that any Intellectual Property related to Motorola's business or research or development, and that is created, conceived or reduced to practice by me (whether alone or jointly with others) within six (6) months after termination of my employment with Motorola will be presumed to have been conceived or made during the period of my employment with Motorola, unless and until established to the contrary by me. I hereby assign such Intellectual Property to Motorola.

I agree that this Agreement does not require assignment of any of my rights in an invention if I can establish that: no equipment, supplies, facilities or Confidential Information of Motorola were used; the invention was developed entirely on my own time and did not result from any work performed by me for Motorola; or that the invention does not relate, at the time of conception or reduction to practice, to Motorola's business or its research or development. I acknowledge and agree that any materials, authored, prepared, contributed to or written by me, in whole or in part, shall be done as "work made for hire" as defined and used in the Copyright Act of 1976, 17 U.S.C. § 101, et seq. Prior to my employment at Motorola, I did not make or acquire any interest in inventions, that are the subject of issued patents or pending patent applications, or that might become the basis for one or more patent applications, other than those listed on Exhibit A.

3.   **OWNERSHIP AND RETURN OF MATERIALS**

All documents and materials, which I have had access to or produced in connection with my services for Motorola, or which belong to Motorola, whether or not such materials contain Confidential Information, shall remain the sole property of Motorola. Upon termination, or at any time requested, I shall promptly deliver to Motorola all such materials and copies in my possession and control and shall provide written confirmation that I have returned all such materials.

4.   **NON-SOLICITATION BY EMPLOYEE**

In further consideration of my employment by Motorola, I agree that during the term of my employment with Motorola and for a period of twelve (12) months after termination of my employment with Motorola, I shall not, directly or indirectly, induce or attempt to induce (i) any employee of Motorola or any of its subsidiaries or affiliates to leave the employ of Motorola or such subsidiary or affiliate or (ii) any other person to terminate a relationship with Motorola or any of its subsidiaries or affiliates. To the extent that any other agreements that I previously have entered into, or may enter into in the future, with Motorola contain provisions regarding my non-solicitation obligations that are different than or more restrictive than those set forth in this Agreement, I agree to comply with any such different and more restrictive provisions to which I have agreed.

5.   **NONCOMPLIANCE**

I acknowledge and agree that the limitations set forth herein are reasonable with respect to scope, and duration, and are properly required for the protection of the legitimate business interest of Motorola. I acknowledge that my compliance with this Agreement is necessary to protect Motorola's goodwill and Confidential Information, that my failure to comply with this Agreement will irreparably harm the business of Motorola, and that monetary damages would not provide an adequate remedy to Motorola in the event of such non-compliance. Therefore, Motorola shall be entitled to obtain an injunction and other equitable relief in any court of competent jurisdiction against a breach by me of this Agreement, without the posting of bond or other security, in addition to whatever other remedies it may have. I agree that any action relating in any way to this Agreement shall be brought solely in a court of competent jurisdiction for the location of the Motorola facility at which I worked and consent to the jurisdiction of any such court and hereby waive any defense or objection related to improper or inconvenient forum, venue

or jurisdiction.  In the event that Motorola successfully enforces this Agreement against me in any court, I will indemnify Motorola for the actual costs incurred by Motorola in enforcing this Agreement, including but not limited to attorneys' fees.

### 6.   EMPLOYEE AT WILL

This Agreement does not constitute an employment agreement and I understand that I remain an employee at will.   This means that I may resign at any time and Motorola may terminate my employment at any time, with or without cause and with or without notice.

### 7.   MISCELLANEOUS

This Agreement shall be governed by, and construed and interpreted in accordance with the laws of Illinois (or if I am employed outside of the United States, the applicable local legal jurisdiction for the location of the Motorola facility at which I worked) without regard to conflict of law principles.

I agree that Motorola may present a copy of this Agreement to any of my actual or prospective subsequent employers.  I also agree that upon termination and for a period of 12 months thereafter, I will immediately inform Motorola of the identity of any subsequent employer, my new position and job duties and responsibilities and any other information necessary to determine my compliance with the terms of this Agreement.

Any waiver by Motorola of the breach of or its right to enforce any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or right of enforcement.  The provisions of this Agreement are severable; if any provision is found to be unenforceable, the remaining provisions shall remain in full force and effect.  If the scope of any provision in this Agreement is found to be too broad to permit its full enforcement, I consent to judicial modification of such provision and enforcement to the maximum extent permitted by law.

This Agreement and Exhibit A attached to this Agreement contain the entire agreement between the parties with respect to the subject matter hereof and supersede any previous understandings or agreements, whether written or oral, by or between the parties.  No amendment to this Agreement, and no waiver of any one or more of the provisions of this Agreement, shall be effective unless set forth in writing and signed by the parties hereto.

### 8.   UNDERSTAND AGREEMENT

I REPRESENT AND WARRANT THAT:   (A) I HAVE READ AND UNDERSTAND THIS AGREEMENT; (B) I HAVE HAD THE OPPORTUNITY TO OBTAIN ADVICE FROM LEGAL COUNSEL OF MY CHOICE IN ORDER TO INTERPRET THIS AGREEMENT; AND (C) I HAVE BEEN GIVEN A COPY OF THIS AGREEMENT.

**IN WITNESS WHEREOF,** I acknowledge that this Agreement is neither a contract of employment nor a guarantee of continued employment and, intending to be legally bound hereby, I have executed this Agreement this _____ day of _____, 20___.

Signature:_____

Full Name:_____

Employee ID No. (i.e., Social Security #, government ID #, Motorola Commerce ID):_____

**EXHIBIT A**

**TO THE**

**EMPLOYEE CONFIDENTIALITY**
**AND ASSIGNMENT OF INVENTIONS AGREEMENT**

The following is a complete list of all inventions or improvements or works of authorship or other Intellectual Property relevant to the subject matter of my employment with, and/or the business of, Motorola, Inc. ("Motorola") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my employment by Motorola.

☐   No inventions, improvements, works of authorship or other Intellectual Property.

☐   See below.

☐   Additional sheets attached.

DATE:_____

Signature:_____

Full Name:_____

Employee ID No. (i.e., Social Security #, government ID #, Motorola Commerce ID):_____