**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MOTOROLA, INC., a Delaware Corporation, )<br><br>Plaintiff / Counterclaim Defendant, )<br><br>v. )<br><br>LEMKO CORPORATION, an Illinois Corporation, )<br>and XIAOHONG SHENG, an individual, )<br><br>Defendants / Counterclaim Plaintiffs, )<br><br>SHAOWEI PAN, an individual, HANJUAN JIN, )<br>an individual, XIAOHUA WU, an individual, )<br>XUEFENG BAI, an individual, NICHOLAS )<br>LABUN, an individual, BOHDAN PYSKIR, an )<br>individual, HECHUN CAI, an individual, )<br>JINZHONG ZHANG, an individual, ANGEL )<br>FAVILA, an individual, ANKUR SAXENA, an )<br>individual, RAYMOND HOWELL, an individual, )<br>FAYE VORICK, an individual, and NICHOLAS )<br>DESAI, an individual, )<br><br>Defendants. ) | Case No. 08 CV 5427<br><br>Judge Matthew F. Kennelly<br><br>Magistrate Judge Geraldine<br>Soat Brown |

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiff Motorola, Inc. ("Motorola" or "Plaintiff"), by and through its attorneys, for its

Second Amended Complaint against Defendant Lemko Corporation ("Lemko"), Defendant

Shaowei Pan ("Pan"), Defendant Hanjuan Jin ("Jin"), Defendant Xiaohua Wu ("Wu"),

Defendant Xuefeng Bai ("Bai"), Defendant Xiaohong Sheng ("Sheng"), Defendant Nicholas

Labun ("Labun"), Defendant Bohdan Pyskir ("Pyskir"), Defendant Hechun Cai ("Cai"),

Defendant Jinzhong Zhang ("Zhang"), Defendant Angel Favila ("Favila"), Defendant Ankur

Saxena ("Saxena"), Defendant Raymond Howell ("Howell"), Defendant Faye Vorick

("Vorick"), and Defendant Nicholas Desai ("Desai"), (together "Defendants"), alleges and states as follows:

## NATURE OF ACTION

1.      This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.,* for threatened or actual misappropriation of trade secrets arising under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.,* breach of fiduciary duty, breach of contract, usurpation of corporate opportunity, copyright infringement, declaratory judgment of patent ownership, tortuous interference with contract, common law fraud, spoliation of evidence and civil conspiracy.

## THE PARTIES

2.      Plaintiff Motorola is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business and world headquarters at 1303 East Algonquin Road, Schaumburg, Illinois 60196.

3.      Defendant Lemko is a corporation organized and existing under the laws of Illinois, with its principal place of business at 1700 East Golf Road, 7th Floor, Schaumburg, Illinois 60173.

4.      Defendant Pan is a citizen of Illinois, domiciled at 21878 North Tall Hills Drive, Kildeer, Illinois 60047, with a business address of 1700 East Golf Road, 7th Floor, Schaumburg, Illinois 60173.   Pan is the Chief Technology Officer and Director of Defendant Lemko. Defendant Pan was employed and paid a salary by Motorola from about August 1, 1994 through about April 2, 2004.

5.      Defendant Jin is a citizen of Illinois, domiciled at 2331 County Farm Lane, Schaumburg, Illinois 60194-4808.   Defendant Jin was employed and paid a salary by

- 2 -

Motorola from 1998 through about February 27, 2007.  Motorola employed Jin as a software engineer in its Schaumburg, Illinois offices.

6.      Defendant Wu is a citizen of Illinois, domiciled at 21878 North Tall Hills Drive, Kildeer, Illinois 60047.  Defendant Wu was employed and paid a salary by Motorola from about June 1995 through about December of 2007.  Motorola employed Wu as an engineer at its Schaumburg, Illinois offices.  Defendant Wu is the spouse of Defendant Pan.

7.      Defendant Bai is a citizen of Illinois, domiciled at 2444 Palazzo Court, Buffalo Grove, Illinois 60089.  Defendant Bai was employed and paid a salary by Motorola from about January 2001 through about December of 2007.  Motorola employed Bai as a software engineer at its Libertyville, Illinois offices.

8.      Defendant Sheng is a citizen of California, domiciled at 4290 Albany Drive, San Jose, California.  Sheng was employed and paid a salary by Motorola from about November 2006 through about July of 2008, Motorola employed Sheng as a software engineer at its Libertyville, Illinois offices.

9.      Defendant Labun is a citizen of Illinois, domiciled at 1325 North State Parkway, 22F, Chicago, Illinois 60610.  Labun is the Chief Executive Officer and Director of Defendant Lemko.  Labun was employed and paid a salary by Motorola from September 25, 1989 through about May 10, 2004.  Labun was Vice President of Business Development at Motorola.

10.     Defendant Pyskir is a citizen of Illinois, domiciled at 645 Chesterfield Avenue, Naperville, Illinois 60540.  Pyskir is the President and Director of Defendant Lemko.  Pyskir was employed and paid a salary by Motorola from about January 7, 1993 through about March 31, 2004.  Defendant Pyskir was a senior director within Motorola's management team.

11.     Defendant Cai is a citizen of Illinois, domiciled at 1254 South Falcon Drive, Palatine, Illinois 60067.  Cai is currently employed by Defendant Lemko as a software engineer. Cai was employed and paid a salary by Motorola from about October 26, 1998 through about May 19, 2005.  Motorola employed Cai as a software engineer.

12.     Defendant Zhang is a citizen of Illinois, domiciled at 1119 Berkshire Lane, Barrington, Illinois 60010.  Zhang is currently employed by Defendant Lemko.  Zhang was employed and paid a salary by Motorola from about May 19, 1995 through about July 11, 2004. Motorola employed Zhang as a software engineer.

13.     Defendant Favila is a citizen of Illinois, domiciled at 5419 Crossview Lane, Lake In The Hills, Illinois 60156.  Favila was employed and paid a salary by Motorola from about December 18, 1989 through the present.  Motorola employed Favila as a software engineer.

14.     Defendant Saxena is a citizen of Illinois, domiciled at 1043 North Glenview Court, Palatine, Illinois 60067.  Saxena is currently employed by Defendant Lemko as a software engineer.  Saxena was employed and paid a salary by Motorola from about May 31, 2000 through about August 2, 2005.  Motorola employed Saxena as a software engineer.

15.     Defendant Howell is a citizen of Illinois, domiciled at 26680 North Countryside Lake Drive, Mundelein, Illinois 60060.  Howell was the Chief Financial Officer and Director of Defendant Lemko until about November 2008.  Howell was employed by Motorola from about September 28, 1981 through about October 30, 1998.   Motorola employed Howell as a Director of Finance.

16.     Defendant Vorick is a citizen of Illinois, domiciled at 425 West Parkside Drive, Palatine, Illinois 60067.  Vorick is the VP of Marketing for Defendant Lemko. Vorick was

employed by Motorola from about June 19, 1989 through about September 6, 2001.  Motorola employed Vorick as a Senior Marketing Manager.

17.    Defendant Desai is a citizen of California, domiciled at 1915 Mathews #2, Redondo Beach, CA 90278.  Desai is the VP Business Development for Defendant Lemko.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction over Plaintiff's claims arising under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, *et seq.,* pursuant to 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over all other claims asserted herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims brought under the CFAA so as to form part of the same case or controversy.

19.    This Court has personal jurisdiction over Defendant Lemko.  Defendant Lemko is registered to do business in the State of Illinois.  Defendant Lemko also has a regular and established place of business in Illinois and this District at 1700 East Golf Road, Schaumburg, Illinois 60173, and is and has been doing business in Illinois and this District at all times relevant hereto.

20.    This Court has personal jurisdiction over Defendant Pan.  On information and belief, at all times relevant hereto, Defendant Pan has resided in Illinois and in the District, has acted as an officer of Defendant Lemko, and/or has committed tortious acts in Illinois and this District.  Defendant Pan's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

21.    This Court has personal jurisdiction over Defendant Jin.  On information and belief, at all times relevant hereto, Defendant Jin has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Jin's wrongful conduct, as set forth herein, arises out of and

is related to the business she has transacted and the tortious acts she has committed in this State and District.

22.     This Court has personal jurisdiction over Defendant Wu.  On information and belief, at all times relevant hereto, Defendant Wu has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Wu's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

23.     This Court has personal jurisdiction over Defendant Bai.  On information and belief, at all times relevant hereto, Defendant Bai has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Bai's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

24.     This Court has personal jurisdiction over Defendant Sheng.  On information and belief, at all times relevant hereto, Defendant Sheng resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Sheng's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

25.     This Court has personal jurisdiction over Defendant Labun  On information and belief, at all times relevant hereto, Defendant Labun has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed

tortious acts in Illinois and this District.  Defendant Labun's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

26.    This Court has personal jurisdiction over Defendant Pyskir.  On information and belief, at all times relevant hereto, Defendant Pyskir has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Pyskir's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

27.    This Court has personal jurisdiction over Defendant Cai.  On information and belief, at all times relevant hereto, Defendant Cai has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Cai's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

28.    This Court has personal jurisdiction over Defendant Zhang.  On information and belief, at all times relevant hereto, Defendant Zhang has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Zhang's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

29.    This Court has personal jurisdiction over Defendant Favila.  On information and belief, at all times relevant hereto, Defendant Favila has resided in Illinois and in this

District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Favila's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

30.     This Court has personal jurisdiction over Defendant Saxena.  On information and belief, at all times relevant hereto, Defendant Saxena has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Saxena's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

31.     This Court has personal jurisdiction over Defendant Howell.  On information and belief, at all times relevant hereto, Defendant Howell has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Howell's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

32.     This Court has personal jurisdiction over Defendant Vorick.  On information and belief, at all times relevant hereto, Defendant Vorick has resided in Illinois and in this District, has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Vorick's wrongful conduct, as set forth herein, arises out of and is related to the business she has transacted and the tortious acts she has committed in this State and District.

33.     This Court has personal jurisdiction over Defendant Desai.  On information and belief, at all times relevant hereto, Defendant Desai has transacted business with Defendant Lemko in this District, and/or has committed tortious acts in Illinois and this District.  Defendant Desai's wrongful conduct, as set forth herein, arises out of and is related to the business he has transacted and the tortious acts he has committed in this State and District.

34.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## GENERAL ALLEGATIONS

35.     Motorola is a global leader in communications technologies.  For nearly 80 years, Motorola has competed at the forefront of research and development of communication technologies, products and services.

36.     Motorola is recognized worldwide for its innovations in communications including, without limitation, enterprise mobility solutions, cellular infrastructure systems, mission-critical communication tools, emergency and disaster relief communication tools, home and network communications and mobile devices.

### Motorola's Proprietary Communications Technologies

37.     Motorola's proprietary and confidential mobile communications technologies include: proprietary cellular service and product technologies; proprietary wireless broadband and wireless access service and product technologies; proprietary voice communications service and product technologies; proprietary data communications service and product technologies; proprietary integrated voice and data communication systems technologies; proprietary radio systems technologies; proprietary integrated emergency-response communications systems, service, and product technologies; proprietary integrated radio, wireless broadband, voice, and/or data communications systems, service, and product technologies; proprietary communications designs, solutions, initiatives, and equipment; proprietary iDen technology; proprietary

information dispatch and networking technology; proprietary Push-to-Talk technology; proprietary ICD technology; proprietary WiMax technology; proprietary SATCOW technology; proprietary SIP-related technology; proprietary subsidy unlock codes; proprietary global system for mobile communication ("GSM") development tools and data; proprietary Universal Mobile Telecommunications System ("UMTS") technology; proprietary W-CDMA technology; proprietary "log files" recording the specific functions of Motorola telephones; proprietary "dump file" software files; proprietary Motorola virtual private network ("VPN") access software; and proprietary and unique confidential combinations and compilations of the above information (hereinafter referred to in the aggregate as "Motorola's proprietary trade secrets and confidential information").

38.     Motorola's proprietary trade secrets and confidential information are not generally known in the trade, and Motorola derives economic value and a competitive advantage in the marketplace from the secrecy of such information.  Indeed, Motorola's proprietary trade secrets and confidential information are Motorola's lifeblood as a technology leader whose market position depends upon its innovations.

39.     Motorola has invested hundreds of millions of dollars, many times over, researching and developing its proprietary trade secrets and confidential information.

40.     At all times relevant hereto, Motorola has used reasonable measures to protect the secrecy of its proprietary trade secrets and confidential information, including but not limited to: restricted access on a need-to-know basis; global confidentiality policies; contractual confidentiality restrictions; security key cards; password-protected computer and network platforms; and a wide array of additional physical security measures.

41.    For example, Motorola has, at all times relevant hereto, required its engineers to sign confidentiality agreements.  One such employment agreement reads in part:

> In consideration of my employment, or continued employment by Motorola, Inc. . . . and the salary or wages paid to me, I understand and agree to the following provisions for the protection of Motorola property rights:
>
> 1.  Not to disclose to Motorola, or to use in my work at Motorola (a) any confidential information belonging to others, including my prior employers . . . or (b) any prior inventions made by me which Motorola is not otherwise entitled to learn of or to use.
> 2.  Not to use, or to publish, or to otherwise disclose to others, either during or subsequent to my employment by Motorola, any confidential information of Motorola . . . , except as my Motorola duties may require.
> 3.  Upon my termination of my employment by Motorola, to promptly deliver to a designated Motorola representative all documents and other records which are related to the business activities of Motorola, or any other materials which belong to Motorola.
> 4.  To assign and I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.
> ...

**(EXHIBIT A.)**

42.    Also, since at least 2006, Motorola has required its engineers to sign an "Employment Confidentiality and Assignment of Inventions Agreement," which reads in part:

> **1.  Nondisclosure of Confidential Information**
> <u>Definitions</u>: As used in this Agreement, "<u>Confidential Information</u>" means all confidential information and trade secrets (whether or not specifically labeled or identified as "confidential"), in any form or medium, that is disclosed to, or developed or learned by me and that relates to the business, products, services, research or development of Motorola or its suppliers, distributors or customers and that has not become publicly known.
> ...
> I recognize that Motorola is engaged in a continuous program of research and development, and that as an employee, I will have access to Confidential Information that has independent economic value to Motorola in part because it is confidential.  I further recognize that Motorola has taken reasonable steps to protect its Confidential Information from disclosure to the public, including entering into this Agreement.  During and after my employment, I will not disclose or use any Confidential Information except to the extent I am required to

disclose or use such Confidential Information in the performance of my assigned duties; and I will use my best efforts to safeguard the Confidential Information and protect it against disclosure, misuse, espionage, loss and theft.

...

**3. Ownership and Return of Materials**

All documents and materials, which I have had access to or produced in connection with my services for Motorola, or which belong to Motorola, whether or not such materials contain Confidential Information, shall remain the sole property of Motorola.  Upon termination, or at any time requested, I shall promptly deliver to Motorola all such materials and copies in my possession and control and shall provide written confirmation that I have returned all such materials.

...

**5. Noncompliance**

...

I acknowledge that my compliance with this Agreement is necessary to protect Motorola's goodwill and Confidential Information, that my failure to comply with this Agreement will irreparably harm the business of Motorola, and that monetary damages would not provide an adequate remedy to Motorola in the event of such non-compliance.  Therefore, Motorola shall be entitled to obtain an injunction and other equitable relief in any court of competent jurisdiction against a breach by me of this Agreement.

(**EXHIBIT B.**)

43.     Motorola maintains strict policies over its employees' use of its information assets (including any information, tangible or intangible, physical or digital, that is owned or created by Motorola, or is entrusted to Motorola by a third party) and information resources (including technology hardware such as computers, servers, personal digital assistants, telephones, networks, routers, accessories, storage media, and the software supporting the hardware such as operating systems, databases, and applications such as e-mail, and services) owned by, leased to, or otherwise operated by Motorola.

44.     These policies have been codified in part in Motorola policies governing the appropriate use of computer resources and protection of proprietary information.  For example, Motorola's "Protection of Proprietary Information" policy provides that

> "Each employee has a responsibility not to use, or to publish, or to otherwise disclose to others, any proprietary or confidential information of Motorola or its

customers or suppliers or other contractors, except as Motorola duties may require.  Each employee should report information security breaches to the Corporate Security Department and the local Security Department."

45.      Additionally, Motorola's "Information Protection Policy and Control Standards for Information Users" ("iProtect") policy prohibits "inappropriate use of Motorola's Information Resources," including, without limitation:

> "Disclosing information that is owned by Motorola, or entrusted by a third party to Motorola, to unauthorized recipients;"
>
> "Enabling non-Motorolans who have not signed the proper non-disclosure agreements with Motorola to access a Motorola provided network connection;"
>
> "Misusing intellectual property (e.g., trademarks, copyrights, or patents) of Motorola or a third party;" and
>
> "Accessing Motorola Confidential Restricted and similar non-Motorola information on Information Resources without authorization."

46.      The iProtect policy also provides that "User IDs must not be utilized by anyone except the individual to whom the IDs have been issued.  Users are responsible for all activity performed with their User IDs." Finally, it provides that "Motorola Confidential Restricted information, Internal information, and Third Party Proprietary Information may not be removed or sent from Motorola's premises unless there is a business requirement to do so."

47.      Motorola also requires its employees to adhere to the Motorola "Code of Business Conduct" (previously titled the Motorola "Code of Conduct") that instructs employees:

> We may not work for or receive payments for services from any competitor, customer, distributor or supplier of Motorola without prior approval.  Any outside activity must be strictly separated from Motorola employment and should not harm job performance at Motorola.  Skills learned and used at Motorola must not be used in a way that could hurt the business of Motorola.

### Defendants Lemko and Jin Conspire to Smuggle Motorola's Trade Secrets and Other Proprietary Motorola Documents to China

48.     In 1998, Motorola employed Defendant Jin as a software engineer, where she remained employed for the next nine years, until February of 2007.  Defendant Jin is a naturalized U.S. citizen and a citizen of the People's Republic of China by birth.

49.     Defendant Lemko is a privately held company headquartered in Schaumburg, Illinois with additional offices in China and India.

50.     Defendant Lemko is Motorola's direct competitor in areas such as the development and marketing of cellular infrastructure systems, cellular voice, high-speed data and text services, emergency and disaster relief communication systems, wireless communication and control applications for government markets, and rural cellular solutions.  Defendant Lemko advertises itself with the trademark "Wireless for the Next Billion People."

51.     In the course of her employment as a software engineer with Motorola, Defendant Jin had access to Motorola's proprietary trade secrets and confidential information in the performance of her duties.

52.     Motorola reposed a high level of trust and confidence in Defendant Jin's trustworthiness, integrity, and fidelity to her obligations towards Motorola.  These duties were memorialized in part through Jin's executed "Employee Agreement" and her signed acknowledgment of Motorola's Code of Conduct.

53.     In or before June of 2004, without Motorola's knowledge or consent, Defendant Jin accepted employment with Defendant Lemko.  Defendant Jin continued her employment with Motorola until February of 2007, but never disclosed her simultaneous employment with Defendant Lemko to Motorola, in violation of the Motorola "Code of Business Conduct," which provided that employees "may not work for or receive payments for services from any

competitor, customer, distributor or supplier of Motorola without prior approval," and required employees to "disclose any situation that may be or appear to be a conflict of interest."

54.     On March 24, 2005, shortly after accepting employment with Defendant Lemko, Defendant Jin intentionally, knowingly, with intent to defraud, accessed Motorola's protected computers and obtained and transferred by e-mail, in furtherance of that fraud, valuable Motorola proprietary trade secrets and confidential information, including Motorola source code, from Motorola's protected computers to her non-secure personal e-mail account without authorization or exceeding her authorized access, without Motorola's knowledge or consent, and in violation of Motorola's confidentiality and security policies, thereby knowingly and recklessly causing damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

55.     Beginning in or before June of 2005, Defendant Jin intentionally, knowingly, and with the intent to defraud, accessed her Lemko webmail account through the secure Motorola network of protected Motorola computers, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent.

56.     Between June 15, 2005 and September 1, 2005, Defendant Jin took a partial leave of absence, during which time Defendant Jin was still a Motorola employee but did not report to work at Motorola full time.  Defendant Jin also continued to work for Defendant Lemko during this period, without Motorola's knowledge or consent.

57.     From February of 2006 until February of 2007, Defendant Jin took a prolonged leave of absence from her duties at Motorola, allegedly for medical reasons.  During this prolonged leave of absence, Defendant Jin was still a Motorola employee.  Again, Defendant Jin continued to work for Defendant Lemko during this medical leave.

58.     Even though Defendant Jin had no assigned duties for Motorola during this leave, and even though she was actively working for Defendant Lemko during this time in violation of Motorola's policies, Defendant Jin continued to intentionally and knowingly, and with the intent to defraud, access Motorola's protected computers and its proprietary trade secrets and confidential information through Motorola's secure internal document access system, including, without limitation, documents related to System Architecture Design ("SAD"), ICD technology specifications, Push-to-Talk technology, iDen technology, and WiMax technology, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent. In furtherance of that fraud, Defendant Jin obtained valuable Motorola proprietary trade secrets and confidential information from Motorola's protected computers and recklessly caused damage and loss by impairing their integrity and/or availability.

59.     Beginning in February of 2006 or earlier, Defendant Jin installed Motorola's proprietary secure virtual private network ("VPN") access software on non-Motorola computers, including a Lemko-owned computer, intentionally, knowingly, and with an intent to defraud, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent.  During her period of leave, Defendant Jin frequently accessed Motorola's protected computers through Motorola's secure VPN from these non-Motorola computers, including a Lemko-owned computer, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent.  By accessing Motorola's protected computers from a Lemko-owned computer in this manner, Defendant Jin, in furtherance of that fraud, obtained valuable information from Motorola's protected computers and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

60. In February of 2007, while still on medical leave from Motorola, Defendant Jin travelled to China, returning on February 15, 2007. While she was in China, Defendant Jin obtained access to Motorola's protected computers through Motorola's secure VPN on multiple occasions, intentionally, knowingly, and with an intent to defraud, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent. By accessing Motorola's protected computers in this manner, Defendant Jin, in furtherance of that fraud, obtained valuable information from Motorola's protected computers and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

61. Between February 18 and 19, 2007, Defendant Jin continued to access Motorola's proprietary trade secrets and confidential information from Motorola's protected computers through Motorola's secure internal document access system, intentionally, knowingly, and with an intent to defraud, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent. Defendant Jin, in furtherance of that fraud, obtained valuable information from Motorola's protected computers and recklessly caused damage and loss by impairing the integrity and availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

62. On February 23, 2007, Defendant Jin advised Motorola that she was ready to end her leave and return to work for Motorola. Defendant Jin did not advise Motorola at this or at any other time that she had been working secretly for Defendant Lemko since at least 2004.

63. On February 24, 2007, Defendant Jin purchased a one-way ticket to Beijing, China for a flight scheduled to depart on February 28, 2007.

64.    On February 26, 2007, Defendant Jin returned to work at Motorola, where she received no work assignments.  On that day, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent, Defendant Jin intentionally, knowingly, and with the intent to defraud, accessed Motorola's protected computers and downloaded hundreds of valuable, proprietary and confidential Motorola documents and technical specifications without Motorola's knowledge or consent.  Defendant Jin, in furtherance of that fraud, obtained valuable information from Motorola's protected computers and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

65.    On the evening of February 26, 2007, Defendant Jin returned to the Motorola offices at approximately 9 p.m.  At approximately 9:10 p.m., Defendant Jin accessed Defendant Lemko's webmail system.  Defendant Jin then intentionally, knowingly, and with intent to defraud, accessed Motorola's protected computers without authorization or exceeding her authorized access, and without Motorola's knowledge or consent.  In furtherance of that fraud, Defendant Jin downloaded additional valuable, proprietary and confidential Motorola documents and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

66.    Around midnight, Defendant Jin intentionally, knowingly, and with intent to defraud, removed, in furtherance of that fraud, numerous valuable, proprietary printed documents and other materials from Motorola's secure offices without authorization or exceeding her authorized access, and without Motorola's knowledge or consent and recklessly

caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

67.     On February 27, 2007, at approximately 12:15 p.m., Defendant Jin sent an e-mail to her supervisor at Motorola stating that she was not able to work.  Defendant Jin's manager was unable to locate her that afternoon, and was not able to discuss this e-mail with Defendant Jin.  Defendant Jin then surreptitiously returned to the Motorola offices at approximately 10:30 p.m. that same night and, as she had the previous night, first logged onto Defendant Lemko's webmail system.  Defendant Jin then intentionally, knowingly, and with intent to defraud, accessed Motorola's protected computers and, in furtherance of that fraud, downloaded numerous valuable, proprietary and confidential Motorola documents and technical specifications without authorization or exceeding her authorized access, and without Motorola's knowledge or consent and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

68.     On February 28, 2007, while attempting to board a flight to Beijing, China at Chicago's O'Hare International Airport, with over $30,000 dollars in cash, Defendant Jin was thwarted by U.S. Customs officials, who seized more than 1,000 electronic and paper documents identified as the property of Motorola, including valuable, proprietary information and trade secrets, in Defendant Jin's possession, including a laptop computer, external hard drives, and a thumb drive.

69.     Many of the seized documents were marked as Motorola's confidential property, including detailed schematics relating to Motorola's interstate communication network, architecture and network support information, and documents relating to Motorola's proprietary

iDen technology, and Motorola's proprietary SATCOW technology.  If the Motorola proprietary trade secrets and confidential information found in Defendant Jin's possession were replicated by a competitor, Motorola would suffer many millions of dollars in harm.

70.     To date, Motorola has incurred substantial losses, in excess of $5,000 in a one-year period, due to Defendant Jin's and Defendant Lemko's unauthorized access to Motorola's protected computers and unauthorized removal, possession, and impairment of Motorola's electronic files and documents, including, without limitation, the costs of investigating Defendant Jin's and Defendant Lemko's actions and assessing the damage they caused.

71.     Defendant Jin, individually and in concert with Defendant Lemko, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent, intentionally, knowingly, and with intent to defraud accessed Motorola's protected computers and, in furtherance of that fraud, downloaded, uploaded and transferred valuable Motorola proprietary trade secrets and confidential information for her own benefit and the benefit of others, including Defendant Lemko, by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

72.     In April 2008, Defendant Jin was indicted by a Grand Jury sitting in the United States District Court, Northern District of Illinois, for three counts of violation of 18 U.S.C. § 1832(a)(3) relating to Jin's possession of Motorola proprietary documents containing proprietary trade secrets and confidential information.  In December 2008, the grand jury brought a six count superseding indictment containing three additional counts alleging violation of 18 U.S.C. § 1831(a)(3) for Jin's possession of Motorola proprietary documents intending and

knowing that the offense would benefit a foreign government, namely the People's Republic of China.

### Defendants Wu and Bai's Unauthorized Transfers of Information to Defendants Pan and Lemko

73.     In June of 1995, Motorola hired Defendant Wu as a staff engineer.  Motorola promoted Defendant Wu to more senior engineering positions in 1997 and 1999.

74.     Defendant Wu is married to Defendant Pan, who is the current Chief Technology Officer of Defendant Lemko.

75.     In July of 1994, Motorola hired Defendant Pan as a staff engineer.  Motorola promoted Defendant Pan to the position of senior staff engineer in 1995, and to the position of principal staff engineer in 1996.

76.     Defendant Pan resigned from his employment with Motorola in March of 2004.

77.     Defendant Bai is a citizen of China and has been studying or working in the United States as an engineer since approximately 1998.  In January of 2001, Motorola hired Defendant Bai as a software engineer.  In 2002, Motorola promoted Bai to the position of senior software engineer.

78.     In the course of their employment as engineers for Motorola, Defendants Wu, Bai, and Pan had access to Motorola's proprietary trade secrets and confidential information in the performance of their duties.

79.     Motorola reposed a high level of trust and confidence in the trustworthiness and integrity of Defendants Wu, Bai, and Pan, and in their fidelity to their obligations towards Motorola.  These duties were memorialized in part through these Defendants' signed "Employee Agreements" and through their signed acknowledgments of Motorola's "Code of Business Conduct."

80.     In the 2005 calendar year, Defendant Wu, on behalf of Defendant Pan, purchased at least 24 Motorola telephones from Motorola's on-line employee store.  Motorola policies prohibit employees from purchasing more than four such telephones per calendar year, and prohibit any commercial resale or use of such telephones.  Defendant Wu forwarded confirmation of orders placed through her Motorola e-mail address to Defendant Pan's personal e-mail address.

81.     On October 8, 2005, Defendant Bai intentionally, knowingly, and with intent to defraud, accessed Motorola's protected computers and, in furtherance of that fraud, obtained and transferred by e-mail three of Motorola's proprietary and confidential subsidy unlock codes to Defendant Wu, without authorization or exceeding his authorized access, and without Motorola's knowledge or consent.  Subsidy unlock codes allow individual cellular telephones to interface with multiple carrier systems rather than only with one designated carrier system, and Motorola strictly controls access to these valuable codes.  On October 10, 2005, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent, Defendant Wu intentionally, knowingly, and with intent to defraud, accessed Motorola's protected computers and, in furtherance of that fraud, obtained and forwarded Defendant Bai's October 8 e-mail containing these proprietary and confidential subsidy unlock codes from a protected Motorola computer to Defendant Pan's Lemko e-mail account and personal e-mail account, thereby impairing the integrity and/or availability of these codes.

82.     On April 17, 2006, Defendant Pan, using his Lemko e-mail account, sent Defendant Bai a request for another valuable, confidential, proprietary subsidy unlock code for a Motorola telephone.  In that same e-mail Defendant Pan also asked Defendant Bai for two specific, highly valuable, confidential and proprietary Motorola development files related to

"GSM" telephone technology, including GSM phone "flex" software and a debug tool for reading "GSM send/receive messages." Defendant Pan wrote from his Lemko e-mail account that "[w]e need to find one for the GSM network system development." Defendant Pan also sent a copy of this e-mail to Defendant Wu.

83.    That same day Defendant Bai responded to Defendant Pan's request by intentionally, knowingly, and with intent to defraud, accessing Motorola's protected computers and, in furtherance of that fraud, obtaining and sending the valuable, confidential, proprietary Motorola unlock code that Defendant Pan had requested to Pan's Lemko e-mail account from protected Motorola computers, without authorization or exceeding his authorized access, and without Motorola's knowledge or consent.  Defendant Bai also stated in this e-mail that he would call Defendant Pan later concerning the requested "debug tool."  Defendant Bai sent a copy of this e-mail to Defendant Wu's Motorola e-mail account, who forwarded it to Defendant Pan's personal e-mail account.

84.    On August 2, 2006, Defendant Pan wrote Defendant Bai an e-mail from his Lemko e-mail account, asking Defendant Bai for "dump files" relating to W-CDMA technology. Defendant Pan sent a copy of this e-mail to Defendant Wu.

85.    "Dump files" are highly valuable, confidential software files that allow a specific cellular telephone's "log file" to be examined and deciphered.  Log files give detailed information about all of the functions and actions of the software and hardware in a cellular telephone.  Motorola engineers combine these tools in the course of their GSM development efforts with proprietary Motorola GSM/UMTS software.  Motorola "dump files," the "log files" they decode, and the GSM/UMTS software used to combine them constitute Motorola proprietary trade secrets and confidential information.

86.     On September 1, 2006, without authorization or exceeding his authorized access, and without Motorola's knowledge or consent, Defendant Bai complied with Defendant Pan's request to share confidential and proprietary Motorola trade secrets by intentionally, knowingly, and with intent to defraud accessing Motorola's protected computers and, in furtherance of that fraud, obtaining and placing two valuable, confidential, and proprietary Motorola "log files" and a valuable, confidential, and proprietary "dump file" on Motorola's secure internal document sharing system and recklessly causing damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.  Defendant Bai, in furtherance of the same fraud, then obtained and e-mailed links giving Defendant Pan access to that confidential, proprietary Motorola information to Defendant Pan's Lemko e-mail account from a protected Motorola computer, in direct violation of Motorola's information protection and security policies. Defendant Bai sent a copy of this e-mail to Defendant Wu.

87.     Between September 4, 2006 and April 24, 2007, an unidentified user accessed the three valuable, confidential proprietary, Motorola files to which Defendant Bai had provided Defendants Pan and Wu access links.  One "log file" was accessed once, on September 4, 2006, while the other "log file" and the "dump file" were accessed multiple times, the last access occurring on April 24, 2007.

88.     On October 5, 2006, Defendant Pan wrote to Defendant Bai from his Lemko account and confirmed "[w]e loaded your dump file." Defendant Pan then asked for another valuable, confidential, and proprietary Motorola "dump file" showing the "MAC and RLC layer," copying the message to Defendant Wu.  By these actions, Defendants Pan and Lemko intentionally, knowingly, with intent to defraud, and in furtherance of that fraud requested,

accessed, and/or uploaded valuable, confidential and proprietary Motorola information, without authorization, from protected Motorola computers and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

89.     On October 21, 2006, Defendant Wu intentionally, knowingly, and with intent to defraud accessed Motorola's protected computers and, in furtherance of that fraud, obtained and installed Motorola's highly valuable, confidential, and proprietary GSM/UMTS software, which is used to combine Motorola's proprietary "log files" and "dump files" for GSM development, onto a Lemko-owned computer without authorization or exceeding her authorized access, and without Motorola's knowledge or consent and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

90.     Defendant Wu has also transferred a considerable number of other Motorola proprietary trade secrets and confidential information to Defendants Pan and Lemko without authorization or exceeding her authorized access, and without Motorola's knowledge or consent. For example, in 2006 or sooner, Defendant Wu intentionally, knowingly, and with intent to defraud accessed Motorola's protected computers and, in furtherance of that fraud, obtained and installed Motorola's proprietary VPN access software on non-Motorola computers, including a Lemko-owned computer, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent.  Throughout 2006, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent, Defendant Wu intentionally, knowingly, and with intent to defraud accessed Motorola's protected computers through Motorola's secure VPN, and, in furtherance of that fraud, obtained valuable information on

numerous occasions both from a Lemko-owned computer and from a personal computer owned by her husband, Defendant Pan, recklessly causing damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

91.    On December 1, 2006, in violation of Motorola's information protection and security policies and in excess of her authorization, Defendant Wu intentionally, knowingly, with intent to defraud, and in furtherance of that fraud, gave Defendant Pan access to valuable Motorola proprietary trade secrets and confidential information by e-mailing this information to Defendant Pan's personal e-mail account, copying both her Motorola and her personal email accounts and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

92.    On May 31, 2007, without authorization or exceeding her authorized access, and without Motorola's knowledge or consent, Defendant Wu intentionally, knowingly, and with intent to defraud accessed Motorola's protected computers and, in furtherance of that fraud, obtained and e-mailed documents containing valuable Motorola proprietary trade secrets and confidential information relating to passive subscriber location in UMTS technology from a protected Motorola computer to Defendant Pan's personal e-mail account, and recklessly caused damage and loss by impairing the integrity and/or availability of the Motorola proprietary trade secrets and confidential information and the Motorola protected computers.

93.    In December of 2007, Motorola terminated Defendant Wu's and Defendant Bai's employment for violations of the Motorola policies.

94.     To date, Motorola has incurred substantial losses, in excess of $5,000 in a one-year period, due to Defendant Wu's, Defendant Bai's, Defendant Pan's, and Defendant Lemko's unauthorized access to Motorola's protected computers and unauthorized removal, possession, and impairment of Motorola's electronic files and documents, including without limitation the costs of investigating these Defendants' actions and assessing the damage they caused.

95.     Defendants Wu, Bai, Pan, and Lemko, individually and in concert, without authorization or exceeding their authorized access, and without Motorola's knowledge or consent, intentionally, knowingly, and with intent to defraud accessed Motorola's protected computers, and, in furtherance of that fraud, downloaded, uploaded and transferred Motorola's proprietary trade secrets and confidential information from Motorola's protected computers for their individual benefit and the benefit of others, by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

**Defendant Sheng's Unauthorized Activities with Defendants Lemko and Jin**

96.     Defendant Sheng is a citizen of China who has been studying or working in the U.S. as an engineer since 1999.

97.     In 2006, Defendant Sheng worked as a software engineer for Defendant Lemko at its Schaumburg, Illinois offices.

98.     In November 2006, Defendant Sheng began to work for Motorola as a software engineer.  Nevertheless, Defendant Sheng secretly continued to work for and/or assist Defendant Lemko after she accepted employment with Motorola, as demonstrated by a January 29, 2007 e-mail in which Defendant Sheng stated, "[t]omorrow will be the last time that I help them.  I actually felt the same way as you felt to Shaowei [Pan] and Lemko."

99.    In the course of her employment as a software engineer for Motorola, Defendant Sheng had access to Motorola's proprietary trade secrets and confidential information in the performance of her duties.

100.    Motorola reposed a high level of trust and confidence in Defendant Sheng's trustworthiness, integrity, and fidelity to her obligations towards Motorola.  These duties were memorialized in part through Defendant Sheng's executed "Employee Confidentiality and Assignment of Inventions Agreement" and through her signed acknowledgment of Motorola's "Code of Business Conduct."

101.    Motorola provided Defendant Sheng with a laptop computer for use in carrying out her assigned tasks.  Defendant Sheng had access to Motorola's secure internal computer networks through this laptop.

102.    In the course of its investigation, Motorola discovered the presence of Lemko associated source code on Sheng's Motorola-issued laptop, as well as evidence that the laptop had been connected by Sheng to a USB drive containing folders labeled "Lemko."

103.    While Defendant Sheng surreptitiously worked for and/or assisted Defendant Lemko while employed by Motorola, Defendant Sheng placed Lemko associated source code on the Motorola laptop issued to her, in violation of Motorola's policies.

104.    Defendant Sheng also has communicated with Defendant Jin multiple times since Defendant Jin was detained at O'Hare International Airport by U.S. Customs on February 28, 2007, and, upon information and belief, such communications have been related to Lemko and unauthorized access to Motorola source code and other valuable Motorola proprietary trade secrets and confidential information.

105.     On the evening of July 1, 2008, Motorola notified Defendant Sheng to report for a meeting with Motorola management the next day.  Later that night and early in the morning of July 2, 2008, Defendant Sheng intentionally, knowingly, and with intent to defraud, accessed Motorola's protected laptop computer and, in furtherance of that fraud, downloaded a large number of files containing valuable Motorola proprietary trade secrets and confidential information from that protected laptop onto a non-Motorola, non-secure USB hard drive without authorization or exceeding her authorized access, and without Motorola's knowledge or consent, thereby impairing the integrity and/or availability of this information.

106.     The next day, July 2, 2008, Motorola interviewed Defendant Sheng, and terminated her employment for violations of Motorola's policies.

107.     To date, Motorola has incurred substantial losses, in excess of $5,000 in a one-year period, due to Defendant Sheng's unauthorized access to Motorola's protected computers and unauthorized removal, possession, and impairment of Motorola's electronic files and documents, including without limitation, the costs of investigating Defendant Sheng's actions and assessing the damage she caused.

108.     Defendant Sheng, individually and in concert with Defendant Lemko, Defendant Jin and others, without authorization or exceeding their authorized access, and without Motorola's knowledge or consent, intentionally, knowingly, and with intent to defraud accessed Motorola's protected computers and, in furtherance of that fraud, downloaded, uploaded, and transferred Motorola's proprietary trade secrets and confidential information for her own benefit and the benefit of others, including Defendants Lemko and Jin, by and through nonsecure means into a nonsecure environment, thereby impairing the integrity and/or availability of such information.

**Defendants Pan, Labun, Pyskir, Cai, Zhang, Favila, Saxena and Jin**
**Conspire to Form and Conduct A Fraudulent and Competing Business**
<u>**While They Are Still Employed By Motorola**</u>

109.    Defendant Pan was hired by Motorola on about August 1, 1994 as a Staff Engineer for Motorola New Enterprises.  Pan was employed full-time and paid a salary by Motorola through about April 2, 2004.  In or before July 2002, without Motorola's knowledge or consent, Pan accepted employment with and/or began actively working on behalf of Defendant Lemko.  Pan never disclosed this to Motorola, nor sought approval from Motorola for his simultaneous employment with Lemko.

110.    Defendant Nicholas Labun was hired by Motorola on about September 25, 1989 as Director of Strategy, Motorola New Enterprises.  Labun was employed full-time and paid a salary by Motorola through about May 10, 2004.  In or before July 2002, without Motorola's knowledge or consent, Defendant Labun accepted employment with and/or began actively working on behalf of Defendant Lemko.  Labun never disclosed this to Motorola, nor sought approval from Motorola for his simultaneous employment with Lemko.

111.    Defendant Bohdan Pyskir was hired by Motorola on about January 7, 1993 as a Business Development Manager with Motorola Paging and Wireless Data Group.  Pyskir was employed full-time and paid a salary by Motorola through about March 31, 2004.  In or before July 2002, without Motorola's knowledge or consent, Defendant Pyskir accepted employment with and/or began actively working on behalf of Defendant Lemko.  Pyskir never disclosed this to Motorola, nor sought approval from Motorola for his simultaneous employment with Lemko.

112.    Defendant Hechun Cai was hired by Motorola on about October 26, 1998 as "Lead Software Engineer reporting to ShaoWei Pan in the Cellular Infrastructure Group."  Cai was employed full-time and paid a salary by Motorola through about May 19, 2005.  In or before September 2002, without Motorola's knowledge or consent, Defendant Cai accepted

employment with and/or began actively working on behalf of Defendant Lemko.  Cai never disclosed this to Motorola, nor sought approval from Motorola for his simultaneous employment with Lemko.

113.    Defendant Jinzhong Zhang was hired by Motorola on about May 19, 1995, and was employed full-time and paid a salary by Motorola from through about July 11, 2004.  In or before September 2002, without Motorola's knowledge or consent, Defendant Zhang accepted employment with and/or began actively working on behalf of Defendant Lemko.  Zhang never disclosed this to Motorola, nor sought approval from Motorola for his simultaneous employment with Lemko.

114.    Defendant Angel Favila was hired by Motorola on about December 18, 1989 as a programmer with the Motorola Communications Sector.  Favila is still employed full-time and paid a salary by Motorola.  In or before June 2004 without Motorola's knowledge or consent, Defendant Favila accepted employment with and/or began actively working on behalf of Defendant Lemko.  Favila never disclosed this to Motorola, nor sought approval from Motorola for his simultaneous employment with Lemko.

115.    Defendant Ankur Saxena was employed full-time and paid a salary by Motorola from about May 31, 2000 through about August 2, 2005.  In or before June 2004, without Motorola's knowledge or consent, Defendant Saxena accepted employment with and/or began actively working on behalf of Defendant Lemko.  Saxena never disclosed his simultaneous employment with Lemko to Motorola, nor sought approval from Motorola for his simultaneous employment with Lemko..

116.     Defendant Labun supervised Defendant Pan's and Defendant Pyskir's work at Motorola.  Labun signed Pan's performance reviews as Pan's manager in 2000, 2001, 2002, and 2003.  Labun signed Pyskir's performance reviews as Pyskir's manager in 2002 and 2003.

117.     Defendant Pan supervised Defendant Cai's, Defendant Zhang's and Defendant Favila's work at Motorola.  Pan signed Cai's performance reviews as Cai's manager each year between 1999 and 2004.  Pan also signed Zhang's performance reviews as Zhang's manager each year between 1999 and 2004.  Pan signed Favila's performance reviews as Favila's manager each year from 2001-2004.

118.     Defendant Zhang supervised Defendant Saxena's and Defendant Jin's work at Motorola.  Zhang signed Saxena's performance reviews as Saxena's manager in 2002, 2003 and 2004.  Zhang signed Jin's performance reviews as Jin's manager in 2001, 2002 and 2003.

119.     While they were employed by Motorola, Defendants Pan, Labun, Pyskir, Cai and Zhang, together with Defendant Howell, founded Defendant Lemko.

120.     Defendants Pan, Labun, Pyskir and Howell began working on Lemko Corporation in or before 2002.

121.     Defendants Vorick, Cai, Zhang and Desai began working for the benefit of Lemko in or before 2002.

122.     By mid-2002, Defendants already had converted their efforts and work product as Motorola employees into a product for Lemko, and Defendants were arranging meetings with customers and competitors of Motorola to show them "a working demo of the Lemko system."

123.     Defendants Vorick, Pan, Labun, Pyskir, Zhang, Cai and Jin began discussing and working on Lemko patent submissions at least as early as September 2002, while Pan, Labun,

Pyskir, Zhang and Jin were each employees of Motorola with a prior agreement to assign their inventions to Motorola.

124.    Defendants began conducting Lemko field trials at customer sites in or before 2003.  These trials involved products built upon and containing Motorola's source code and other of Motorola's proprietary trade secrets and confidential information.

125.    In January 2003, Lemko represented to investors that it was currently selling a product which required no further development time or expense.

126.    Defendants Pan, Labun, Pyskir, Cai, Zhang, Favila, Saxena and Jin, individually and/or in concert, used Motorola assets and Motorola's proprietary research and development, source code, development tools and other trade secrets to develop and market a product, acquire investors, prepare and file patent applications, establish and run Lemko, and used Lemko to exploit and transfer Motorola proprietary information to entities in China and other parts of the world.

127.    In 2002, 2003 and 2004, Defendants Pan, Labun, Pyskir, Cai and Zhang, individually and/or in concert, promoted Lemko's business at trade shows that they attended as Motorola employees, and/or made sales and technical presentations and conducted demonstrations and trials at potential customer sites around the world while they were working full-time for Motorola.

128.    The products that Defendants attempted to sell and did sell on behalf of Lemko were developed by Motorola employees, at Motorola's time and expense, and with the use of Motorola's proprietary trade secrets and confidential information.

129.    Defendants Pan, Labun, Pyskir, Cai, Zhang, Favila, Saxena and Jin, individually and/or in concert, hid their dual employment from potential Lemko investors and customers by

failing to disclose their current employment status at Motorola, and/or by falsely representing that they were former employees of Motorola when in fact they were current employees of Motorola.

130.    Defendants Pan, Labun, Pyskir, Cai, Zhang, Favila, Saxena and Jin, individually and/or in concert, further hid their dual employment from Motorola, by directing others to communicate with Motorola on their behalf and on Lemko's behalf.

131.    Prior to March 17, 2003, Defendants Howell, Pan, Labun, and Pyskir formed IDC Holdings, LLC, an Illinois holding company in which they were each members, for the purpose of hiding the Motorola employees' direct involvement in Lemko.  In January 2004, the Operating Agreement of IDC Holdings, LLC was amended to add Defendants Cai and Zhang as members. At that time, the six members of IDC Holdings, LLC collectively owned the majority of the stock of Lemko.  IDC Holdings, LLC was voluntarily dissolved in September 2005.

132.    Defendants Howell, Vorick and Desai knew or should have known that Defendants Pan, Labun, Pyskir, Cai, Zhang, Favila, Saxena and Jin were full-time Motorola employees who were improperly acquiring, disclosing and using Motorola trade secrets for the benefit of Defendant Lemko.  Defendants Howell, Vorick and Desai were aware that these Defendants, who were employed at Motorola, improperly were engaging in activities on behalf of Defendant Lemko that presented a clear conflict of interest in regards to their employment at Motorola.  Defendants Howell, Vorick and Desai actively aided in the cover up of these Defendants' full-time employment at Motorola and their improper conduct.

133.    Pan acted as the Chief Technical Officer of Lemko from at least January 2003 until he resigned from Motorola and thereafter.  As a Motorola employee, Pan had access to Motorola's computers and Motorola's proprietary trade secrets and confidential information.

134.    Without Motorola's knowledge or consent, and exceeding his authorized access, on multiple occasions Defendant Pan obtained valuable proprietary and trade secret information from Motorola's protected computers and forwarded the Motorola information to his personal email account.

135.    Pan's non-Motorola computers contain Motorola source code and other of Motorola's proprietary trade secrets and confidential information, and many of these files were stored on Pan's computers for use at Lemko.

136.    On multiple occasions, Pan transferred files containing Motorola's source code and other of Motorola's proprietary trade secrets and confidential information to Lemko, or through Lemko to third-parties for the benefit of Lemko.

137.    On at least one occasion, the words "Copyright © 2001, Motorola, Inc." were removed from a Motorola source code file and the otherwise identical source code file was transferred to Lemko without the copyright notice and with an instruction that the attached files could be used to update Lemko code.

138.    On October 12, 2006, more than two years after Defendant Pan had terminated his employment by Motorola, more than 300 files were copied to Pan's JAYPAN computer, all identical to the Motorola files recovered by the FBI from non-Motorola media during Defendant Jin's arrest.  These files contain Motorola's proprietary trade secrets and confidential information, and nearly all of them were used in one or more Lemko customer trials.

139.    An unusually large number of USB drives were plugged into Pan's and/or Wu's personal or Lemko computers, totaling at least 83 unique USB storage devices.  At least one of these USB devices was attached to both Pan's computer and Defendant Jin's Motorola-issued laptop computer.

## <u>COUNT ONE</u>

## <u>COMPUTER FRAUD AND ABUSE ACT</u>

## (Against Lemko, Pan, Jin, Wu, Bai, and Sheng)

140.   Motorola repeats and realleges the averments of paragraphs 1-139 as if fully set forth herein.

141.   All computers used by Defendants without authorization or in excess of authorized access, or to destroy or impair Motorola information, including but not limited to all servers, desktop computers, laptop computers, external hard drives, "Blackberry" and/or "Q" devices, and thumb drives, USB drives, and "flash" drives, were at all relevant times used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e).   The Motorola proprietary trade secrets and confidential information is stored on, and may be accessed from, one or more of these protected computers owned by Motorola, access to which is strictly controlled via various security measures, including secret passwords, and all are used in or affect interstate or foreign communications or commerce.

142.   Defendants intentionally accessed the secure, protected computers of Motorola or other protected computers without authorization or exceeding their authorization, and thereby obtained information from those protected computers, in violation of 18 U.S.C. § 1030(a)(2)(C).

143.   Defendants knowingly and with the intent to defraud, accessed the secure, protected computers of Motorola or other protected computers, or caused others to access the secure, protected computers of Motorola, without authorization or in excess of their authorized access and in furtherance of the intended fraud obtained the valuable Motorola proprietary trade secrets and confidential information and/or other valuable information or the valuable use of the secure Motorola network and computers, which has a value exceeding five thousand dollars ($5,000.00) in a one-year period, in violation of 18 U.S.C. § 1030(a)(4).

144.    Defendants knowingly caused the transmission of a program, information, code, or command and/or intentionally accessed the protected computers of Motorola and/or other protected computers, and, as a result, intentionally and without authorization, recklessly caused damage and loss to the secure, protected computers of Motorola and/or other protected computers in violation of 18 U.S.C. § 1030(a)(5)(A)-(C).[1]

145.    Defendants, through their actions in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)-(C), have caused Motorola to incur losses for responding to and investigation of Defendants' misconduct, including damage and security assessments, exceeding five thousand dollars ($5,000.00) during a one-year period in violation of 18 U.S.C. § 1030(g) and (c)(4)(A)(i)(I); the investigation of such losses continues.

146.    In addition to an award of compensatory damages, Motorola also is entitled to injunctive relief pursuant to 18 U.S.C. § 1030(g), restraining and enjoining Defendants and all those in privity, concert or participation with Defendants from engaging in such wrongful acts in violation of 18 U.S.C. § 1030(a)(2), (a)(4), and (a)(5)(A)-(C).

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief against Defendants:

a.    enter judgment in favor of Motorola on Count One;

b.    award both preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1030, *et seq.,* restraining and enjoining Defendants and all those in privity, concert or participation with them from engaging in acts and practices in violation thereof;

c.    award compensatory damages pursuant to 18 U.S.C. § 1030, *et seq.,* in an amount in excess of $5,000.00 to be proven at trial;

---

[1]    By order of February 11, 2009, the Court dismissed Plaintiff's claim for violation of 18 U.S.C. § 1030(a)(5). Plaintiff recognizes the Court's ruling as current law of the case, but repleads its claim for violation of section 1030(a)(5) in this Second Amended Complaint in order to preserve the issue for appeal.

d.      enter an order compelling Defendants to return any and all of Plaintiff's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code, designs, prototypes and the like, in Defendants' possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivations and compilations and/or other memorializations of such purloined information; together with such other affirmative relief required to compel compliance with this order, including the use of electronic evidence experts and other technicians;

e.      enter an order compelling Defendants to disclose its actual and potential customers and any and all persons and entities to which Defendants disclosed Plaintiff's proprietary trade secrets and confidential information; and

f.      such further relief as this Court may deem just and proper, in law or equity.

## COUNT TWO

## THREATENED OR ACTUAL
## MISAPPROPRIATION OF TRADE SECRETS

### (Against All Defendants)

147.   Motorola repeats and realleges the averments of paragraphs 1-139 as if fully set forth herein.

148.   The Motorola proprietary trade secrets and confidential information, set forth individually and collectively in the preceding paragraphs of the Complaint, are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

149.   At all times, Motorola has taken reasonable measures to protect the Motorola proprietary trade secrets and confidential information, and Motorola derives economic value and competitive advantage from such information not being generally known to the public or trade.

150.   There exists the threatened or actual misappropriation of trade secrets by the Defendants, acting individually and in concert, to acquire, disclose and/or use, by improper

means, the Motorola proprietary trade secrets and confidential information for their own benefit and/or the benefit of others without or exceeding Motorola's authorization and consent.

151.    Motorola has sustained and will continue to sustain damages, and Defendants have been and will continue to be unjustly enriched in an amount to be proven at trial, as a direct result of Defendants' threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information.

152.    Defendants' threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information has been willful and malicious and entitles Motorola to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

153.    Motorola also is entitled to injunctive relief to prevent the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information by Defendants pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief against Defendants:

a.    enter judgment in favor of Motorola on Count Two;

b.    both preliminary and permanent relief pursuant to 765 ILCS 1065/1, et seq. restraining and enjoining Defendant Lemko, its officers, directors, employees, agents, and all those in privity, concert or participation with it from the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information;

c.    both preliminary and permanent relief pursuant to 765 ILCS 1065/1, et seq. restraining and enjoining Defendants Pan, Jin, Wu, Bai, Sheng, Labun, Pyskir, Cai, Zhang, Favila, Saxena, Howell, Vorick and Desai, and all those in privity, concert or participation with them from the threatened or actual misappropriation of the Motorola proprietary trade secrets and confidential information;

d.    a finding that Defendants' acts and conduct constitute the actual or threatened misappropriation of trade secrets in violation of 765 ILCS 1065/1, et seq., and that such acts and conduct are and have been willful and malicious;

e.    compensatory and increased damages sustained as a result of Defendants' wrongful actions, together with an accounting of Defendants' profits and unjust enrichment arising from such actions;

f.    an order compelling Defendants to return any and all of Plaintiff's proprietary trade secrets and confidential information including all types of scientific, technical and engineering information, files, documents, drawings, schematics, programs, object code, source code, designs, prototypes and the like, in Defendants' possession, custody or control, and wherever and however stored physically, electronically, graphically, photographically, or in writing, and all derivations and compilations and/or other memorializations of such purloined information; together with such other affirmative relief required to compel compliance with this order, including the use of electronic evidence experts and other technicians;

g.    an order compelling Defendants to disclose its actual and potential customers and any and all persons and entities to which Defendants disclosed Plaintiff's proprietary trade secrets and confidential information;

h.    attorneys' fees and costs pursuant to 765 ILCS 1065/1, et seq.; and

i.    such further relief as this Court may deem just and proper, in law or equity.


## COUNT THREE

## BREACH OF FIDUCIARY DUTY

### (Against Defendants Jin, Wu, Bai, and Sheng)

154.   Motorola repeats and realleges the averments of paragraphs 1-139 as if fully set forth herein.

155.   Defendants Jin, Wu, Bai, and Sheng each held positions of trust and confidence with Motorola, and each owed Motorola a duty of loyalty as Motorola's employees.

156.   Defendants Jin, Wu, Bai, and Sheng, individually and in concert, abused their respective positions of trust and confidence with Motorola to further their private interests, failed to protect the corporate property of Motorola, and deprived Motorola of profit or advantages in the marketplace.

157.     Defendants Jin, Wu, Bai, and Sheng, by their actions individually and in concert, violated the duty of loyalty required of them as employees of Motorola not to engage in competition with Motorola while employed by Motorola.

158.     Defendants Jin, Wu, Bai, and Sheng, individually and in concert, acted with fraud, oppression, and/or malice.

159.     Motorola has sustained losses and damages as a direct and proximate result of Defendant's wrongful actions described herein in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief against Defendants:

    a.      enter judgment in favor of Motorola on Count Three;

    b.      compensatory damages, including disgorgement, for the breach of fiduciary duty by Defendants Jin, Wu, Bai, and Sheng;

    c.      exemplary damages for the acts constituting breach of fiduciary duty committed with fraud, oppression, and/or malice; and

    d.      such further relief as this Court may deem just and proper, in law or equity.

## COUNT FOUR

## BREACH OF FIDUCIARY DUTY

**(against Defendants Pan, Labun, Pyskir, Cai, Zhang, Favila, and Saxena)**

160.     Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

161.     Defendants Pan, Pyskir, Cai, Zhang, Favila, and Saxena held positions of trust and confidence with Motorola, and each owed Motorola a duty of loyalty as Motorola's employees.

162.     Defendant Labun was both an officer and employee of Motorola and therefore held a position of heightened trust and confidence with Motorola and owed Motorola a heightened duty of loyalty as an officer and employee of Motorola.

163.     Defendants Labun, Pan, Pyskir, Cai, Zhang, Favila, and Saxena, individually and in concert, abused their respective positions of trust and confidence with Motorola to further their private interests, failed to protect the corporate property of Motorola, and deprived Motorola of profit or advantages in the marketplace.

164.     Defendants Labun, Pan, Pyskir, Cai, Zhang, Favila, and Saxena, individually and in concert, violated the duty of loyalty required of them as employees of Motorola not to engage in competition with Motorola while employed by Motorola.

165.     Defendants Labun, Pan, Pyskir, Cai, Zhang, Favila, and Saxena, individually and in concert, acted with fraud, oppression, and/or malice.

166.     Motorola has sustained losses and damages as a direct and proximate result of Defendants' wrongful actions described herein.

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief against Defendants:

a.      enter judgment in favor of Motorola on Count Four;

b.      award compensatory damages in an amount to be determined at trial;

c.      order disgorgement of all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by Defendants from the breach of their fiduciary duties to Motorola;

d.      award punitive damages for the acts constituting breach of fiduciary duty committed with fraud, oppression and/or malice in an amount sufficient to punish Defendants and deter such misconduct in the future;

e.      order restitution and forfeiture of all compensation and benefits paid to Defendants by Motorola during the period of the breach of Defendants' loyalty to Motorola; and

f.      such further relief as this Court may deem just and proper, in law or equity.

## COUNT FIVE

## USURPATION OF CORPORATE OPPORTUNITY

## (Against Pan, Labun, Pyskir)

167. Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

168. Defendant Pan, Defendant Labun and Defendant Pyskir held positions of authority and trust at Motorola, and were entrusted with Motorola's proprietary trade secrets and confidential information.

169. Defendants owed certain fiduciary duties to Motorola on account of their positions at Motorola.

170. Defendants used Motorola's proprietary trade secrets and confidential information for their own benefit and for the benefit of Defendant Lemko, both before and after the termination of their employment by Motorola.

171. Defendants failed to disclose business opportunities to Motorola and, instead, diverted opportunities that were developed through the use of Motorola assets to Defendant Lemko.

172. Defendants' conduct violated their duty of loyalty to their employer, Motorola, and their obligation to act in the best interest of Motorola.

173. Defendants' breaches of their fiduciary duty were a proximate cause of injury to Motorola.

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief against Defendants:

a.      enter judgment in favor of Motorola on Count Five;

b.      award compensatory damages in an amount to be determined at trial;

c.   order disgorgement of all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by Defendants from the breach of their fiduciary duties to Motorola;

d.   award punitive damages for the acts constituting breach of fiduciary duty committed with fraud, oppression and/or malice in an amount sufficient to punish Defendants and deter such misconduct in the future;

e.   order restitution and forfeiture of all compensation and benefits paid to Defendants Pan, Labun and Pyskir by Motorola during the period of the breach of Defendants' loyalty to Motorola; and

f.   such further relief as this Court may deem just and proper, in law or equity.

## COUNT SIX

## DECLARATORY JUDGMENT OF PATENT OWNERSHIP

### (Against Lemko, Pan And Labun)

174.   Motorola repeats and realleges the averments of paragraphs 1-139, 188-220 as if fully set forth herein.

175.   Defendant Pan's employment responsibilities at Motorola included assisting in the development of innovative mobile communication system technologies, including the conception and design of distributed mobile communications systems, methods and devices.

176.   Defendant Labun's employment responsibilities at Motorola included the development of new business, through the creation and commercialization of proprietary Motorola technology, and assisting in the development and commercialization of innovative mobile communication system technologies, including the conception and design of distributed mobile communications systems, methods and devices.

177.   Beginning in or before September 2002, Defendants Pan and Labun began planning patent filings on behalf of Lemko for inventions, innovations or ideas that they developed or conceived during their employment at Motorola, and which related to the actual or

anticipated business activities of Motorola, and/or which resulted from or were suggested by work which Pan and Labun did for Motorola.

178.   Pan and Labun used Motorola's offices, equipment, laboratories, other facilities, supplies, materials, and/or subordinates' time to substantially complete the inventions developed and conceived during their employment at Motorola.

179.   Pan and Labun failed to disclose their inventions, innovations and ideas to Motorola, and further failed to submit records of these inventions to Motorola, as required by their agreements with Motorola and their fiduciary duties to Motorola.

180.   Lemko is the assignee of certain patents and patent applications disclosing and claiming a system, method and device for providing communications using a distributed mobile architecture, namely U.S. Patent No. 7,539,158, U.S. Patent No. 7,486,967, U.S. Patent No. 7,548,763 (hereinafter the "Lemko Patents"), and U.S. Patent Application Nos. 11/105,173, 11/362,395, 11/393,993, 11/451,238, 11/858,762, 11/955,017, 12/425,147 and 12/471,253 (hereinafter the "Lemko Patent Applications").

181.   The named inventor(s) listed on the Lemko Patents and the Lemko Patent Applications are Pan and/or Pan and Labun.

182.   The patent application leading to U.S. Patent 7,539,158 was filed on November 8, 2004, only months after Pan and Labun departed from Motorola.

183.   The patent applications leading to U.S. Patent 7,486,967 and U.S. Patent No. 7,548,763, respectively, were each filed on April 13, 2005.

184.   Each of the inventions disclosed and claimed in the Lemko Patents and the Lemko Patent Applications were developed and/or conceived by Pan, or by Pan and Labun, or

by Pan and/or Labun jointly with others at Motorola, during the term of their employment at Motorola.

185.    There is an actual and justiciable controversy regarding the rightful owner of the invention or inventions disclosed and claimed in the Lemko Patents and the Lemko Patent Applications.

186.    Motorola is entitled to a declaration that the inventions disclosed and claimed in the Lemko Patents and the Lemko Patent Applications were previously assigned to Motorola by inventors Pan and Labun.

187.    Motorola thus seeks a declaration from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, that Motorola is the rightful owner of the Lemko Patents and the Lemko Patent Applications.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendants Lemko, Pan and Labun:

a.    a declaration that Motorola owns all right, title and interest to the invention or inventions disclosed and claimed in the Lemko Patents, and any continuation or divisional patents that may issue therefrom;

b.    a declaration that Motorola owns all right, title and interest to the invention or inventions disclosed and claimed in the Lemko Patent Applications, and any patent, continuation patent, or divisional patent that may issue therefrom;

c.    order Pan and Labun to make a full and complete disclosure to Motorola of the invention or inventions disclosed in the Lemko Patent Applications;

d.    order Lemko, Pan and Labun to assign to Motorola all of their right, title and interest in the Lemko Patents, and any continuation or divisional patents that may issue therefrom.

e.    order Lemko, Pan and Labun to assign to Motorola all of their right, title and interest in the Lemko Patent Applications, and any patents issuing from such applications and all worldwide right, title and interest to the invention disclosed therein;

f.    enter a preliminary and permanent injunction enjoining Lemko, Pan and Labun, and those persons in active concert with them, from employing the methods, or

from making, using, offering to sell or selling, or importing into the United States, the apparatus claimed in the Lemko Patents;

g.   enter a  preliminary and permanent injunction enjoining Lemko, Pan and Labun, and those persons in active concert with them, from employing the methods or from making, using, offering to sell or selling, or importing into the United States the apparatus claimed in the Lemko Patent Applications as of the issue date of any patent which issues from such applications; and

h.   grant such other and further relief as this Court deems appropriate under the circumstances.

## COUNT SEVEN

## BREACH OF CONTRACT

## (Against Pan)

188.   Motorola repeats and realleges the averments of paragraphs 1-139, 175-187, as if fully set forth herein.

189.   In consideration of his employment at Motorola and the salary and wages paid to him by Motorola, on August 1, 1994, Pan voluntarily executed an Employment Agreement with Motorola in the same form and substance as the attached **EXHIBIT A**.

190.   In the Employment Agreement, Pan agreed not to use, publish, or otherwise disclose to others, either during or subsequent to his employment by Motorola, any confidential information of Motorola, or Motorola's customers and suppliers.

191.   In the Employment Agreement, Pan further agreed that upon termination of his employment by Motorola he would promptly deliver to Motorola all documents and other records belonging to Motorola or relating to the business activities of Motorola.

192.   In the Employment Agreement, Pan assigned to Motorola the entire right, title and interest to any inventions, innovations or ideas developed or conceived by Pan during his employment at Motorola, as follows:

> I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.

193.   In the Employment Agreement, Pan further agreed to make and maintain written records of his inventions, innovations or ideas, and to submit such records and any supplemental oral disclosures to designated representatives of Motorola, and to provide Motorola assistance in obtaining patents and other legal protection for inventions or innovations in the United States and any other country.

194.   Defendant Pan further signed a Software Licensing, Information Protection and Non-Disclosure Agreement on or about August 1, 1994, whereby he agreed to use Motorola's computer resources and systems only for management-approved business purposes.

195.   In the Software Licensing, Information Protection and Non-Disclosure Agreement, Pan further agreed not to copy, disclose or use any confidential or proprietary information which is owned by or entrusted to Motorola except to perform his job responsibilities.

196.   On or about August 1, 1994, Pan acknowledged that he had been provided with a copy of the Motorola "Code of Conduct" and understood that he was required to abide by its provisions, including that Pan "may not work for or receive payments for services from any competitor, customer, distributor or supplier of Motorola without prior approval," and further that Pan was required to "disclose any situation that may be or appear to be a conflict of interest."

197.    On or about March 31, 2004, Pan signed an Employee Separation Statement. Pursuant to this Statement Pan reconfirmed that he would not use or publish or otherwise disclose to others any confidential information of Motorola or its customers, and acknowledged that such confidential information existed not only within the scope of his immediate work at Motorola, but also in other work areas at Motorola to which he was exposed.  Further, Pan represented that he had delivered to Motorola all documents and other records relating to the business activities of Motorola  and other items belonging to Motorola, and agreed to return any Motorola items remaining in his possession within three (3) days.  Further, Pan represented that he had complied with the terms of the Employment Agreement regarding the submission of inventions to Motorola.

198.    Pan has breached his agreements with Motorola by copying, using and/or disclosing Motorola confidential and proprietary information for purposes other than in the performance of his job duties for Motorola, and by retaining, using and disclosing Motorola confidential and proprietary information to Lemko and other third parties, and by working for Lemko during the term of his employment by Motorola without disclosing the conflict of interest to Motorola or obtaining the prior approval of Motorola.

199.    Pan has further breached his agreements with Motorola by failing to assign to Motorola the rights, title and interest in the inventions disclosed and claimed in the Lemko Patents and the Lemko Patent Applications, and instead assigning the Lemko Patents and the Lemko Patent Applications to Defendant Lemko.

200.    Motorola has been injured by Pan's breaches of the foregoing agreements.

201.    Pan's failure to disclose to Motorola the inventions, innovations or ideas that he developed or conceived while working for Motorola has caused, and will continue to cause, irreparable harm to Motorola, for which there is no adequate remedy at law.

202.    Pan's failure to submit records of his inventions to Motorola or to provide Motorola assistance in obtaining patents and other legal protection has caused, and will continue to cause, irreparable harm to Motorola, for which there is no adequate remedy at law.

203.    Pan's failure to assign the inventions to Motorola has caused, and will continue to cause, irreparable harm to Motorola, for which there is no adequate remedy at law.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendant Pan:

a.      enter judgment in favor of Motorola on Count Seven;

b.      award compensatory damages in an amount to be determined at trial;

c.      order restitution and forfeiture of all compensation and benefits paid to Defendant Pan by Motorola during the period of the breach of Defendant Pan's loyalty to Motorola;

d.      order specific performance by Pan to comply with and satisfy his contractual obligations to Motorola;

e.      imposition of a constructive trust in favor of Motorola over all revenues or other benefits derived from the Lemko Patents or Patent Applications; and

f.      such further relief as this Court may deem just and proper, in law or equity.

## COUNT EIGHT

## BREACH OF CONTRACT

### (Against Labun)

204.    Motorola repeats and realleges the averments of paragraphs 1-139, 175-187, as if fully set forth herein.

205.    In consideration of his employment at Motorola and the salary and wages paid to him by Motorola, on September 15, 1989, Labun voluntarily executed an Employment Agreement with Motorola in the same form and substance as the attached **EXHIBIT A**.

206.    In the Employment Agreement, Labun agreed not to use, publish, or to otherwise disclose to others, either during or subsequent to his employment by Motorola, any confidential information of Motorola, or Motorola's customers and suppliers.

207.    In his Employment Agreement, Labun further agreed that upon termination of his employment by Motorola he would promptly deliver to Motorola all documents and other records belonging to Motorola or relating to the business activities of Motorola.

208.    In the Employment Agreement, Labun assigned to Motorola the entire right, title and interest to any inventions, innovations or ideas developed or conceived by Labun during his employment at Motorola, as follows:

> I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.

209.    In the Employment Agreement, Labun further agreed to make and maintain written records of his inventions, innovations or ideas, and to submit such records and any supplemental oral disclosures to designated representatives of Motorola, and to provide Motorola assistance in obtaining patents and other legal protection for inventions or innovations in the United States and any other country.

210.    On or about September 15, 1989, Labun acknowledged that he had been provided with a copy of the Motorola "Code of Conduct" and understood that he was required to abide by

its provisions, including that Labun "may not work for or receive payments for services from any competitor, customer, distributor or supplier of Motorola without prior approval," and further that Labun was required to "disclose any situation that may be or appear to be a conflict of interest."

211.   Defendant Labun further signed a Software Licensing, Information Protection and Non-Disclosure Agreement, whereby he agreed to use Motorola's computer resources and systems only for management-approved business purposes.

212.   In the Software Licensing, Information Protection and Non-Disclosure Agreement, Labun further agreed not to copy, disclose or use any confidential or proprietary information which is owned by or entrusted to Motorola except to perform his job responsibilities.

213.   On or about May 11, 2004, Labun entered into a Separation and Release Agreement with Motorola.  Pursuant to this Separation and Release Agreement, Motorola agreed to pay to Labun a lump sum separation payment and other benefits.  Labun agreed to maintain the confidentiality of Motorola's confidential or proprietary information and trade secrets in accordance with agreements previously signed by Labun and with the law applicable to Labun as an officer of Motorola, including but not limited to state trade secret protection statutes and Labun's common law fiduciary duty and duty of loyalty.  Labun further agreed (a) that he would give Motorola advance written notice of his intent to disclose any potentially confidential information obtained by Labun as a result of his employment by Motorola; (b) that he would not perform any duties or responsibilities for any third party that would involve the disclosure of Motorola confidential and/or proprietary information or trade secrets or that would present a reasonable possibility of such disclosure, (c) that he would not recruit, solicit or induce, or cause,

allow, permit or aid others to recruit, solicit or induce, or to communicate in support of those activities, any employee of Motorola to terminate his/her employment with Motorola and/or to seek employment with Labun's new or prospective employer, or any other company, and (d) that he would immediately inform Motorola about any new employment, start up business or self-employment in which he engaged in the two-year period following his May 10, 2004 separation date.  Labun further agreed to repay to Motorola the sums that he received pursuant to the Separation Agreement and other benefits upon Labun's breach of the Separation Agreement.

214.    Labun has breached the foregoing agreements with Motorola by copying, using and/or disclosing Motorola confidential and proprietary information for purposes other than in the performance of his job duties for Motorola, and by retaining, using and disclosing Motorola confidential and proprietary information to Lemko and other third parties, and by working for Lemko during the term of his employment by Motorola without obtaining the prior approval of Motorola or disclosing the conflict of interest to Motorola.

215.    Labun has further breached the foregoing agreements with Motorola by failing to assign to Motorola the rights, title and interest in the inventions disclosed and claimed in the Lemko Patents and the Lemko Patent Applications, and instead assigning the Lemko Patents and the Lemko Patent Applications to Defendant Lemko.

216.    Labun has further breached the foregoing agreements with Motorola by recruiting, soliciting or inducing employees of Motorola to terminate their employment with Motorola and to seek employment with Lemko.

217.    Motorola has been injured by Labun's breaches of the foregoing agreements.

218.     Labun's failure to disclose to Motorola the inventions, innovations or ideas that he developed or conceived while working for Motorola has caused, and will continue to cause, irreparable harm to Motorola, for which there is no adequate remedy at law.

219.     Labun's failure to submit records of his inventions to Motorola or to provide Motorola assistance in obtaining patents and other legal protection has caused, and will continue to cause, irreparable harm to Motorola, for which there is no adequate remedy at law.

220.     Labun's failure to assign the inventions to Motorola has caused, and will continue to cause, irreparable harm to Motorola, for which there is no adequate remedy at law.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendant Labun:

a.     enter judgment in favor of Motorola on Count Eight;

b.     award compensatory damages in an amount to be determined at trial

c.     order restitution and forfeiture of all compensation and benefits paid to Defendant Labun by Motorola during the period of the breach of Defendant Labun's loyalty to Motorola;

d.     order specific performance by Labun to comply with and satisfy his contractual obligations to Motorola;

e.     imposition of a constructive trust in favor of Motorola over all revenues or other benefits derived from the Lemko Patents or Patent Applications; and

f.     such further relief as this Court may deem just and proper, in law or equity.

## COUNT NINE

## BREACH OF CONTRACT

## (Against Pyskir)

221.     Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

222.     In consideration of his employment at Motorola and the salary and wages paid to him by Motorola, on July 6, 1993, Pyskir voluntarily executed an Employment Agreement with Motorola in the same form and substance as the attached **EXHIBIT A**.

223.     In the Employment Agreement, Pyskir agreed not to use, publish, or otherwise disclose to others, either during or subsequent to his employment by Motorola, any confidential information of Motorola, or Motorola's customers and suppliers.

224.     In his Employment Agreement, Pyskir further agreed that upon termination of his employment by Motorola he would promptly deliver to Motorola all documents and other records belonging to Motorola or relating to the business activities of Motorola.

225.     In the Employment Agreement, Pyskir assigned to Motorola the entire right, title and interest to any inventions, innovations or ideas developed or conceived by Pyskir during his employment at Motorola, as follows:

> I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.

226.     In the Employment Agreement, Pyskir further agreed to make and maintain written records of his inventions, innovations or ideas, and to submit such records and any supplemental oral disclosures to designated representatives of Motorola, and to provide Motorola assistance in obtaining patents and other legal protection for inventions or innovations in the United States and any other country.

227.     On or about July 6, 1993, Pyskir acknowledged that he had been provided with a copy of the Motorola "Code of Conduct" and understood that he was required to abide by its

provisions, including that Pyskir "may not work for or receive payments for services from any competitor, customer, distributor or supplier of Motorola without prior approval," and further that Pyskir was required to "disclose any situation that may be or appear to be a conflict of interest."

228.    On or about March 25, 2004, Pyskir signed an Employment Termination Statement.  Pursuant to this Statement Pyskir reconfirmed that he would not use or publish or otherwise disclose to others any confidential information of Motorola or its customers, and acknowledged that such confidential information existed not only within the scope of his immediate work at Motorola, but also in other work areas at Motorola to which he was exposed. Further, Pyskir represented that he had delivered to Motorola all documents and other records relating to the business activities of Motorola  and other items belonging to Motorola, and agreed to return any Motorola items remaining in his possession within three (3) days.  Further, Pyskir represented that he had complied with the terms of the Employment Agreement regarding the submission of inventions to Motorola.

229.    Pyskir has breached his agreements with Motorola by copying, using and/or disclosing Motorola confidential and proprietary information for purposes other than in the performance of his job duties for Motorola, and by retaining, using and disclosing Motorola confidential and proprietary information to Lemko and other third parties, and by working for Lemko during the term of his employment by Motorola without obtaining the prior approval of Motorola or disclosing the conflict of interest to Motorola.

230.    Motorola has been injured by Pyskir's breaches of the foregoing agreements.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendant Pyskir:

a.      enter judgment in favor of Motorola on Count Nine;

b.      award compensatory damages in an amount to be determined at trial

c.      order restitution and forfeiture of all compensation and benefits paid to Defendant Pyskir by Motorola during the period of the breach of Defendant Pyskir's loyalty to Motorola; and

d.      such further relief as this Court may deem just and proper, in law or equity.


## COUNT TEN

## BREACH OF CONTRACT

### (Against Cai)

231.    Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

232.    In consideration of his employment at Motorola and the salary and wages paid to him by Motorola, October 26, 1998, Cai voluntarily executed an Employment Agreement with Motorola in the same form and substance as the attached **EXHIBIT A**.

233.    In the Employment Agreement, Cai agreed not to use, publish, or otherwise disclose to others, either during or subsequent to his employment by Motorola, any confidential information of Motorola, or Motorola's customers and suppliers.

234.    In his Employment Agreement, Cai further agreed that upon termination of his employment by Motorola he would promptly deliver to Motorola all documents and other records belonging to Motorola or relating to the business activities of Motorola.

235.    In the Employment Agreement, Cai assigned to Motorola the entire right, title and interest to any inventions, innovations or ideas developed or conceived by Cai during his employment at Motorola, as follows:

> I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely,

or jointly with others, at any time during the term of my
employment and which inventions, innovations, or ideas
relate to the actual or anticipated business activities of
Motorola, or result from, or are suggested by, work which I
do for Motorola.

236.    Cai further agreed to make and maintain written records of his inventions,
innovations or ideas, and to submit such records and any supplemental oral disclosures to
designated representatives of Motorola, and to provide Motorola assistance in obtaining patents
and other legal protection for inventions or innovations in the United States and any other
country.

237.    Defendant Cai further signed a Software Licensing, Information Protection and
Non-Disclosure Agreement on or about October 26, 1998, whereby he agreed to use Motorola's
computer resources and systems only for management-approved business purposes.

238.    In the Software Licensing, Information Protection and Non-Disclosure
Agreement, Cai further agreed not to copy, disclose or use any confidential or proprietary
information which is owned by or entrusted to Motorola except to perform his job
responsibilities.

239.    On or about October 26, 1998, Cai signed an Acknowledgement that he had been
provided with a copy of the Motorola "Code of Conduct" and understood that he was required to
abide by its provisions as an ongoing condition of his employment at Motorola and understood
that he was required to abide by its provisions, including that Cai "may not work for or receive
payments for services from any competitor, customer, distributor or supplier of Motorola without
prior approval," and further that Cai was required to "disclose any situation that may be or
appear to be a conflict of interest."

240.    Cai has breached his agreements with Motorola by copying, using and/or
disclosing Motorola confidential and proprietary information for purposes other than in the

performance of his job duties for Motorola, and by retaining, using and disclosing Motorola confidential and proprietary information to Lemko and other third parties, and by working for Lemko during the term of his employment by Motorola without obtaining the prior approval of Motorola or disclosing the conflict of interest to Motorola.

241.     Motorola has been injured by Cai's breaches of the foregoing agreements.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendant Cai:

  a.      enter judgment in favor of Motorola on Count Ten;

  b.      award compensatory damages in an amount to be determined at trial

  c.      order restitution and forfeiture of all compensation and benefits paid to Defendant Cai by Motorola during the period of the breach of Defendant Cai's loyalty to Motorola; and

  d.      such further relief as this Court may deem just and proper, in law or equity.


## COUNT ELEVEN

## BREACH OF CONTRACT

## (Against Zhang)

242.     Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

243.     In consideration of his employment at Motorola and the salary and wages paid to him by Motorola, on May 19, 1995, Zhang voluntarily executed an Employment Agreement with Motorola in the same form and substance as the attached **EXHIBIT A**.

244.     In the Employment Agreement, Zhang agreed not to use, publish, or otherwise disclose to others, either during or subsequent to his employment by Motorola, any confidential information of Motorola, or Motorola's customers and suppliers.

245.     In his Employment Agreement, Zhang further agreed that upon termination of his employment by Motorola he would promptly deliver to Motorola all documents and other records belonging to Motorola or relating to the business activities of Motorola.

246.     In the Employment Agreement, Zhang assigned to Motorola the entire right, title and interest to any inventions, innovations or ideas developed or conceived by Zhang during his employment at Motorola, as follows:

> I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.

247.     In the Employment Agreement, Zhang further agreed to make and maintain written records of his inventions, innovations or ideas, and to submit such records and any supplemental oral disclosures to designated representatives of Motorola, and to provide Motorola assistance in obtaining patents and other legal protection for inventions or innovations in the United States and any other country.

248.     In further consideration of his employment at Motorola, Defendant Zhang signed a Software Licensing, Information Protection and Non-Disclosure Agreement, whereby he agreed to use Motorola's computer resources and systems only for management-approved business purposes.

249.     In the Software Licensing, Information Protection and Non-Disclosure Agreement, Zhang further agreed not to copy, disclose or use any confidential or proprietary information which is owned by or entrusted to Motorola except to perform his job responsibilities.

250.    In further consideration of his employment at Motorola, Zhang acknowledged that he had been provided with a copy of the Motorola "Code of Conduct" and understood that he was required to abide by its provisions, including that Zhang "may not work for or receive payments for services from any competitor, customer, distributor or supplier of Motorola without prior approval," and further that Zhang was required to "disclose any situation that may be or appear to be a conflict of interest.

251.    On or about January 21, 2005, Zhang signed an Employee Separation Statement. Pursuant to this Statement Zhang reconfirmed that he would not use or publish or otherwise disclose to others any confidential information of Motorola or its customers, and acknowledged that such confidential information existed not only within the scope of his immediate work at Motorola, but also in other work area at Motorola to which he was exposed.  Further, Zhang represented that he had delivered to Motorola all documents and other records relating to the business activities of Motorola  and other items belonging to Motorola, and agreed to return any Motorola items remaining in his possession within three (3) days.  Further, Zhang represented that he had complied with the terms of the Employment Agreement regarding the submission of inventions to Motorola.

252.    Zhang has breached his agreements with Motorola by copying, using and/or disclosing Motorola confidential and proprietary information for purposes other than in the performance of his job duties for Motorola, and by retaining, using and disclosing Motorola confidential and proprietary information to Lemko and other third parties, and by working for Lemko during the term of his employment by Motorola without obtaining the prior approval of Motorola or disclosing the conflict of interest to Motorola.

253.    Motorola has been injured by Zhang's breaches of the foregoing agreements.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendant Zhang:

a.   enter judgment in favor of Motorola on Count Eleven;

b.   award compensatory damages in an amount to be determined at trial

c.   order restitution and forfeiture of all compensation and benefits paid to Defendant Zhang by Motorola during the period of the breach of Defendant Zhang's loyalty to Motorola; and

d.   such further relief as this Court may deem just and proper, in law or equity.

## COUNT TWELVE

## BREACH OF CONTRACT

### (Against Favila)

254.   Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

255.   In consideration of his employment at Motorola and the salary and wages paid to him by Motorola, on December 18, 1989, Favila voluntarily executed an Employment Agreement with Motorola in the same form and substance as the attached **EXHIBIT A**.

256.   In the Employment Agreement, Favila agreed not to use, publish, or otherwise disclose to others, either during or subsequent to his employment by Motorola, any confidential information of Motorola, or Motorola's customers and suppliers.

257.   In his Employment Agreement, Favila further agreed that upon termination of his employment by Motorola he would promptly deliver to Motorola all documents and other records belonging to Motorola or relating to the business activities of Motorola.

258.   In the Employment Agreement, Favila assigned to Motorola the entire right, title and interest to any inventions, innovations or ideas developed or conceived by Favila during his employment at Motorola, as follows:

> I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.

259.    In the Employment Agreement, Favila further agreed to make and maintain written records of his inventions, innovations or ideas, and to submit such records and any supplemental oral disclosures to designated representatives of Motorola, and to provide Motorola assistance in obtaining patents and other legal protection for inventions or innovations in the United States and any other country.

260.    Defendant Favila further signed a Software Licensing, Information Protection and Non-Disclosure Agreement on or about June 22, 1994, whereby he agreed to use Motorola's computer resources and systems only for management-approved business purposes.

261.    In the Software Licensing, Information Protection and Non-Disclosure Agreement, Favila further agreed not to copy, disclose or use any confidential or proprietary information which is owned by or entrusted to Motorola except to perform his job responsibilities.

262.    On or about December 18, 1989, Favila acknowledged that he had been provided with a copy of the Motorola "Code of Conduct" and understood that he was required to abide by its provisions, including that Favila "may not work for or receive payments for services from any competitor, customer, distributor or supplier of Motorola without prior approval," and further that Favila was required to "disclose any situation that may be or appear to be a conflict of interest."

263.    Favila has breached the foregoing agreements with Motorola by copying, using and/or disclosing Motorola confidential and proprietary information for purposes other than in the performance of his job duties for Motorola, and by retaining, using and disclosing Motorola confidential and proprietary information to Lemko and other third parties, and by working for Lemko during the term of his employment by Motorola without obtaining the prior approval of Motorola or disclosing the conflict of interest to Motorola.

264.    Motorola has been injured by Favila's breaches of the foregoing agreements.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendant Favila:

a.    enter judgment in favor of Motorola on Count Twelve;

b.    award compensatory damages in an amount to be determined at trial

c.    order restitution and forfeiture of all compensation and benefits paid to Defendant Favila by Motorola during the period of the breach of Defendant Favila's loyalty to Motorola; and

d.    such further relief as this Court may deem just and proper, in law or equity.

## COUNT THIRTEEN

## BREACH OF CONTRACT

### (Against Saxena)

265.    Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

266.    In consideration of his employment at Motorola and the salary and wages paid to him by Motorola, on May 30, 2000 and July 23, 2001, Saxena voluntarily executed Employment Agreements with Motorola in the same form and substance as the attached **EXHIBIT A**.

267.    In the Employment Agreements, Saxena agreed not to use, publish, or otherwise disclose to others, either during or subsequent to his employment by Motorola, any confidential information of Motorola, or Motorola's customers and suppliers.

268.    In his Employment Agreements, Saxena further agreed that upon termination of his employment by Motorola he would promptly deliver to Motorola all documents and other records belonging to Motorola or relating to the business activities of Motorola.

269.    In the Employment Agreements, Saxena assigned to Motorola the entire right, title and interest to any inventions, innovations or ideas developed or conceived by Saxena during his employment at Motorola, as follows:

> I hereby assign to Motorola as its exclusive property the entire right, title and interest in all my inventions, innovations, or ideas developed or conceived by me solely, or jointly with others, at any time during the term of my employment and which inventions, innovations, or ideas relate to the actual or anticipated business activities of Motorola, or result from, or are suggested by, work which I do for Motorola.

270.    In the Employment Agreements, Saxena further agreed to make and maintain written records of his inventions, innovations or ideas, and to submit such records and any supplemental oral disclosures to designated representatives of Motorola, and to provide Motorola assistance in obtaining patents and other legal protection for inventions or innovations in the United States and any other country.

271.    On or about May 30, 2000 and July 23, 2001, Saxena acknowledged that he had been provided with a copy of the Motorola "Code of Conduct" and understood that he was required to abide by its provisions, including that Saxena "may not work for or receive payments for services from any competitor, customer, distributor or supplier of Motorola without prior

approval," and further that Saxena was required to "disclose any situation that may be or appear to be a conflict of interest."

272.    On or about August 2, 2005, Saxena signed an Acknowledgment of Continuing Obligations Under Any Agreements Related to Confidential Information.   Pursuant to this Acknowledgment Saxena reconfirmed that he would maintain Motorola's Confidential Information and Intellectual Property including all information and trade secrets (whether or not specifically labeled or identified as "confidential"), in any form or medium, disclosed to, developed or learned by him relating to the business, products, services, research or development of Motorola or its suppliers, distributors or customers.

273.    Saxena has breached his agreements with Motorola by copying, using and/or disclosing Motorola confidential and proprietary information for purposes other than in the performance of his job duties for Motorola, and by retaining, using and disclosing Motorola confidential and proprietary information to Lemko and other third parties, and by working for Lemko during the term of his employment by Motorola without obtaining the prior approval of Motorola or disclosing the conflict of interest to Motorola.

274.    Motorola has been injured by Saxena's breaches of the foregoing agreements.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendant Saxena:

a.    enter judgment in favor of Motorola on Count Thirteen;

b.    award compensatory damages in an amount to be determined at trial

c.    order restitution and forfeiture of all compensation and benefits paid to Defendant Saxena by Motorola during the period of the breach of Defendant Saxena's loyalty to Motorola; and

d.    such further relief as this Court may deem just and proper, in law or equity.

**COUNT FOURTEEN**

**TORTIOUS INTERFERENCE WITH CONTRACT**

**(Against Lemko)**

275.    Motorola repeats and realleges the averments of paragraphs 1-139, 188-274, as if fully set forth herein.

276.    Throughout their employment at Motorola, Motorola maintained valid contractual relationships with Pan, Labun, Pyskir, Cai, Zhang and Favila in the form of their Employment Agreements and their agreement to abide by the Motorola Code of Conduct.

277.    Motorola had a reasonable expectation that Defendants would fulfill their obligations under their agreements with Motorola.

278.    Lemko knew of Defendants' contractual relationships with Motorola, but wrongfully and unjustifiably interfered with these relationships;

279.    Lemko's interference caused Defendants to breach their agreements with Motorola by (1) disclosing confidential information of Motorola to Lemko; (2) assigning the property rights in inventions developed or conceived by Defendants when they were employed by Motorola to Lemko, and (3) working for Lemko, and (4) receiving compensation for services from Lemko, without Motorola's prior consent and to the detriment of Defendants' job performance at Motorola.

280.    Lemko's actions caused Defendants to breach their contractual relationships with Motorola.

281.    Motorola has been injured by Lemko's actions.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendants:

a.    enter judgment in favor of Motorola on Count Fourteen;

b.     award compensatory damages in an amount to be determined at trial;

c.     order disgorgement of all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by Lemko from the breach of Defendants' fiduciary duties to Motorola;

d.     imposition of a constructive trust in favor of Motorola over all revenues or other benefits derived from the Lemko Patents or Patent Applications; and

e.     such further relief as this Court may deem just and proper, in law or equity.

## COUNT FIFTEEN

## COMMON LAW FRAUD

### (Against Pan, Labun, Pyskir, Cai, Zhang, Favila, and Saxena)

282.     Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

283.     During the time that they were employed by Motorola, Defendants Pan, Labun, Pyskir, Cai, Zhang, Favila, Saxena and Jin intentionally misrepresented to Motorola that they were working full-time for Motorola and devoting their full and best efforts to Motorola.

284.     Defendants' representations were false and/or misleading because in fact they were surreptitiously working for Lemko, diverting Motorola's confidential and proprietary information to Lemko, and devoting a substantial portion of their efforts to benefit Lemko rather than Motorola.

285.     Defendants' misrepresentations were made knowingly, willfully, in bad faith, and/or with reckless disregard as to truth or falsity.

286.     Defendants' misrepresentations were made with an intent to have Motorola rely on them.

287.     In reasonable reliance upon Defendants' misrepresentations, Motorola continued to compensate Defendants with a full-time salary and benefits, and entrusted them with confidential and proprietary information of Motorola.

288.     Defendants' misrepresentations were material because, absent the misrepresentations, Motorola would not have continued to employ Defendants and Motorola would not have entrusted Defendants with the proprietary trade secrets and confidential information of Motorola.

289.     Motorola was injured by Defendants' false representations and conduct. Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendants:

    a.     enter judgment in favor of Motorola on Count Fifteen;

    b.     award compensatory damages in an amount to be determined at trial;

    c.     award punitive damages in an amount sufficient to punish Defendants and deter such misconduct in the future;

    d.     award Motorola the costs and attorneys' fees incurred in bringing this action; and

    e.     such further relief as this Court may deem just and proper, in law or equity.

## COUNT SIXTEEN

## SPOLIATION OF EVIDENCE

### (Against Pan, Wu and Lemko)

290.     Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

291.     Defendants were aware of the claims made in this lawsuit at least by September 23, 2008, when they were served with the summons and complaint.

292.    Defendants had a duty to exercise ordinary care to preserve the integrity of evidence that they knew or should have known would be material to the underlying causes of action in the complaint.

293.    On May 26, 2009, the Court ordered Defendants to report to counsel for Motorola whether four computers named PANDELLM2, JAYPAN, JAY2 and D3RBDM8 could be delivered to Motorola's forensic experts for electronic imaging and further ordered the parties to work out the language of an order for the imaging of these four computers.

294.    On May 27, 2009, Defendants reported to the Court that the computer named D3RBDM8 could not be located, and the Court entered an order requiring Defendants to deliver the PANDELLM2, JAYPAN, and JAY2 computers for electronic imaging by Motorola's forensic experts by 5:00 p.m. on May 28, 2009.

295.    The PANDELLM2, JAYPAN, and JAY2 computers belonged to Defendant Pan and/or Defendant Wu and/or Defendant Lemko.

296.    Defendants knew or should have known that information on the PANDELLM2, JAYPAN, and JAY2 computers was material to the underlying causes of action.

297.    Notwithstanding their duty to preserve evidence, Defendants Pan and/or Defendant Wu intentionally and deliberately destroyed evidence on the computers by deleting files residing on the computer with an Eraser program and by tampering with the computer names and clocks.

298.    Specifically, in the days and hours between the court's oral preservation order and the time that Defendants Pan and Lemko delivered the three computers for forensic imaging, the secure deletion program "Eraser" was used to delete and overwrite information from two of the three computers that were forensically imaged pursuant to court order.

299.     Additionally, in the hours before the computers were to be turned over, elaborate changes were made to all three of the computers' clocks and the names of two of the computers in an apparent attempt to conceal evidence and/or the destruction of evidence.

300.     But for the destruction of this evidence, Motorola had a greater probability of succeeding in the underlying lawsuit for, inter alia, violations of the Computer Fraud and Abuse Act and trade secret misappropriation.

301.     Defendants' deliberate destruction of the evidence negatively affects Motorola's ability to prove otherwise valid claims for trade secret misappropriation and Computer Fraud and Abuse Act violations.

302.     As a direct and proximate result of Defendants' destruction and/or modification of evidence, Motorola has been injured in that its ability to prosecute and enforce its legal rights against Defendants has been irrevocably prejudiced.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendants Pan, Wu and Lemko:

a.     enter judgment in favor of Motorola on Count Sixteen;

b.     award compensatory damages in an amount to be determined at trial;

c.     award punitive damages in an amount sufficient to punish Defendants and deter such misconduct in the future; and

d.     such further relief as this Court may deem just and proper, in law or equity.

## COUNT SEVENTEEN

## COPYRIGHT INFRINGEMENT

### (Against Lemko)

303.     Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

304.     Motorola's source code is an original work of authorship and comprises copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*

305.     Motorola has complied in all respects with all laws governing copyright and has secured the exclusive rights and privileges in and to the copyright for the aforementioned source code and received from the Registrar of Copyrights U.S. Copyright Registration No. TXU1621667, which was registered on November 17, 2009.  A true and correct copy of the Certificate of Registration is attached hereto as **EXHIBIT C.**

306.     As the owner of the copyrights in the source code, Motorola enjoys the exclusive right to, among other things, reproduce the source code, prepare derivative works based on the source code, and distribute copies of the Motorola Site.  *See* 17 U.S.C. §§ 101, 106.

307.     Lemko has no rights in the copyrighted Motorola source code.

308.     Lemko has infringed and continues to infringe said copyright, by copying the copyrighted Motorola source code, removing Motorola's copyright notice from the source code, and using the copyrighted source code as part of its own source code without Motorola's permission to do so.

309.     Unless enjoined by this Court, Lemko will continue to infringe Motorola's copyright.

310.     Lemko had access to the Motorola source code prior to creating the infringing Lemko source code.

311.     At all times relevant hereto, Lemko has been aware or should have been aware of the existence of Motorola's exclusive rights in and to the copyrighted source code, and therefore, Lemko is a willful infringer of Motorola's copyright.

312.    Motorola has been or is likely to be damaged by the acts of Lemko.

313.    Motorola is entitled to recover from Lemko actual damages suffered by Motorola as a result of Lemko's infringement as well as Lemko's profits resulting from its infringement.

314.    The infringement of Motorola' copyright by Lemko has caused, and will continue to cause, imminent irreparable harm to Motorola.  Accordingly, Motorola is entitled to injunctive relief.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendants:

a.    enter judgment in favor of Motorola on Count Seventeen;

b.    award damages in an amount to be determined at trial, including damages in the amount of Lemko's profits from its willful infringement of Motorola' copyrights, doubled or trebled where appropriate;

c.    enter judgment that Lemko's copyright infringements have been knowing and willful;

d.    permanently enjoin Lemko, including its partners, officers, agents, servants, employees, parent, subsidiaries, sister companies, and all those persons and entities in active concert or participation with them, from further infringement of the copyrights in and to the Motorola source code, pursuant to 17 U.S.C. § 502;

e.    pursuant to 17 U.S.C. § 505 and/or other applicable law, award Motorola the costs and attorneys' fees incurred in bringing this action; and

f.    such further relief as the Court may deem just and proper, in law or equity.

## COUNT EIGHTEEN

## CIVIL CONSPIRACY

## (Against Pan, Labun, Pyskir, Cai, Zhang, Favila, Saxena, Jin, Howell, Vorick, And Desai)

315.    Motorola repeats and realleges the averments of paragraphs 1-139, as if fully set forth herein.

316.    Prior to July 2002, Defendants Howell, Labun, Pan and Pyskir, did each knowingly and willfully conspire and agree among themselves to commit wrongful acts

damaging to Plaintiff Motorola, including: to breach, or to induce other Motorola employees to breach, their contractual obligations and fiduciary duties to Motorola, by simultaneously working for the benefit of themselves and Lemko; to misappropriate Motorola's proprietary trade secrets and confidential information for the benefit of themselves and Lemko; to violate the Computer Fraud and Abuse Act by accessing Motorola's computers without authorization or exceeding their authorization in order to obtain valuable confidential and proprietary information of Motorola; to steal Motorola patents by means of filing applications for the benefit of Lemko on inventions that were invented by Motorola employees with a contractual obligation of assignment to Motorola; and to infringe Motorola copyrights for the benefit of themselves and Lemko.

317.    Prior to August 2002, Defendant Vorick did join the aforementioned conspiracy, which is ongoing, and did knowingly and willfully conspire and agree with the aforementioned conspirators to commit wrongful acts enumerated above.

318.    Prior to September 2002, Defendant Cai did join the aforementioned conspiracy, which is ongoing, and did knowingly and willfully conspire and agree with the aforementioned conspirators to commit wrongful acts enumerated above.

319.    Prior to September 2002, Defendant Zhang did join the aforementioned conspiracy, which is ongoing, and did knowingly and willfully conspire and agree with the aforementioned conspirators to commit wrongful acts enumerated above.

320.    Prior to December 2002, Defendant Desai did join the aforementioned conspiracy, which is ongoing, and did knowingly and willfully conspire and agree with the aforementioned conspirators to commit wrongful acts enumerated above.

321.   Prior to June 2004, Defendant Saxena did join the aforementioned conspiracy, which is ongoing, and did knowingly and willfully conspire and agree with the aforementioned conspirators to commit wrongful acts enumerated above.

322.   Prior to June 2004, Defendant Favila did join the aforementioned conspiracy, which is ongoing, and did knowingly and willfully conspire and agree with the aforementioned conspirators to commit wrongful acts enumerated above.

323.   Prior to June 2004, Defendant Jin did join the aforementioned conspiracy, which is ongoing, and did knowingly and willfully conspire and agree with the aforementioned conspirators to commit wrongful acts enumerated above.

324.   One or more of Defendants committed numerous overt acts in furtherance of the common scheme, including but not limited to unlawfully misappropriating Motorola's Trade Secret Information, and retaining such information after Defendants' employment with Motorola ended despite their prior agreements to return such property and despite Motorola's demand for the return of the property, using and transferring Motorola's Trade Secret Information for the benefit of Defendant Lemko, and copying and/or destroying Motorola's electronically stored information.

325.   In particular, Defendant Howell's wrongful acts include: coordinating, scheduling, and arranging reimbursement for multiple business trips of Motorola employees Cai, Pan, Pyskir and Zhang for the benefit of Lemko, and making financial and business arrangements for Lemko, in furtherance of the conspiracy for the benefit of Lemko.

326.   In particular, Defendant Labun's wrongful acts include: generating or assisting in the preparation of profit and loss spreadsheets, business plans and other Lemko documents, providing executive oversight of the formation and ongoing operations of Lemko while

employed at Motorola, and inducing his subordinates at Motorola to breach their fiduciary duties to Motorola and their agreements with Motorola, in furtherance of the conspiracy for the benefit of Lemko.

327.   In particular, Defendant Pan's wrongful acts include: assigning inventions he invented while employed at Motorola to Lemko, working on Lemko engineering projects while employed at Motorola, transferring Motorola's proprietary trade secrets and confidential information to third parties including to Lemko personnel and to additional parties both within and outside the United States, making numerous business trips on behalf of Lemko both within and outside the United States, including China, while employed at Motorola, inducing his subordinates at Motorola to breach their fiduciary duties to Motorola and their agreements with Motorola, and inducing Defendant Wu and Defendant Bai to misappropriate Motorola's proprietary trade secrets and confidential information, in furtherance of the conspiracy for the benefit of Lemko.

328.   In particular, Defendant Pyskir's wrongful acts include: generating or assisted in the preparation of business plans and other Lemko documents and providing executive oversight of the formation and ongoing operations of Lemko while employed at Motorola, making multiple business trips on behalf of Lemko both within and outside the United States, including China, while employed at Motorola, and inducing his subordinates at Motorola to breach their fiduciary duties to Motorola and their agreements with Motorola, in furtherance of the conspiracy for the benefit of Lemko.

329.   In particular, Defendant Vorick's wrongful acts include: generating or assisting in the preparation of business plans and other Lemko documents, providing marketing expertise for

Lemko, and participating in business meetings for the benefit of Lemko with people she knew to be Motorola employees, in furtherance of the conspiracy for the benefit of Lemko.

330.    In particular, Defendant Cai's wrongful acts include: working on Lemko engineering projects while employed at Motorola, providing technical expertise and demonstrations for customer, vendor or investor presentations for the benefit of Lemko while employed at Motorola, making multiple business trips on behalf of Lemko both within and outside the United States, including China, while employed at Motorola, and participating in the preparation of patent applications for the benefit of Lemko on inventions that were invented by Motorola employees with a contractual obligation of assignment to Motorola, in furtherance of the conspiracy for the benefit of Lemko.

331.    In particular, Defendant Zhang's wrongful acts include: working on Lemko engineering projects while employed at Motorola, providing technical expertise and demonstrations in customer, vendor or investor presentations for the benefit of Lemko while employed at Motorola, making multiple business trips on behalf of Lemko both within and outside the United States, including China, while employed at Motorola, and participating in the preparation of patent applications for the benefit of Lemko on inventions that were invented by Motorola employees with a contractual obligation of assignment to Motorola, in furtherance of the conspiracy for the benefit of Lemko.

332.    In particular, Defendant Desai's wrongful acts include: generating or assisting in the preparation of business plans and other Lemko documents and providing business development expertise for Lemko, coordinating and scheduling multiple business trips of Motorola employees Cai, Pan, Pyskir and Zhang for the benefit of Lemko, and participating in

business meetings for the benefit of Lemko with people he knew to be Motorola employees, in furtherance of the conspiracy for the benefit of Lemko.

333.    In particular, Defendant Saxena's wrongful acts include: working on Lemko engineering projects that included Motorola's proprietary trade secrets and confidential information while employed at Motorola, including the installation and operation of a Lemko trial site in Colombia, in furtherance of the conspiracy for the benefit of Lemko.

334.    In particular, Defendant Favila's wrongful acts include: working on Lemko engineering projects that included Motorola's proprietary trade secrets and confidential information while employed at Motorola, including the installation and operation of a Lemko trial site in Colombia, in furtherance of the conspiracy for the benefit of Lemko.

335.    In particular, Defendant Jin's wrongful acts include: working on Lemko engineering projects while employed at Motorola and transferring Motorola's proprietary trade secrets and confidential information to third parties including to Lemko personnel and to additional parties both within and outside the United States, including China, in furtherance of the conspiracy for the benefit of Lemko.

336.    As a direct result of the foregoing conduct, Defendants have caused and continue to cause damage to Motorola, including but not limited to attorneys' fees and costs that have been expended and that will be expended in the future by Motorola to enforce its legal rights.

337.    Defendants' conduct was willful and malicious and performed with an evil motive and with reckless indifference to the rights of others, entitling Motorola to punitive damages.

WHEREFORE, Plaintiff, Motorola, Inc., respectfully requests that this Court enter the following relief against Defendants:

a.    enter judgment in favor of Motorola on Count Eighteen;

b.    award compensatory damages in an amount to be determined at trial;

c.    award punitive damages in an amount sufficient to punish Defendants and deter such misconduct in the future;

d.    award Motorola the costs and attorneys' fees incurred in bringing this action; and

e.    such further relief as this Court may deem just and proper, in law or equity.

## JURY DEMAND

Pursuant to FED. R. CIV. P. 38(b), Motorola respectfully demands a trial by jury of all issues triable by a jury in its Complaint.

\*       \*       \*

Date: December 18, 2009          Respectfully submitted,


/s/ R. Mark Halligan

**R. Mark Halligan (IL 6200723)**
rmhalligan@nixonpeabody.com
**Deanna R. Swits (IL 6287513)**
dswits@nixonpeabody.com
**Jodi Rosen Wine (IL 6209883)**
jwine@nixonpeabody.com

**NIXON PEABODY LLP**
300 South Riverside Plaza, 16th Floor
Chicago, IL 60606
Tel: 312-425-3900
Fax: 312-425 3909

*Attorneys for Plaintiff Motorola, Inc.*