# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOTOROLA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08 C 5427 |
| | ) |
| LEMKO CORP., SHAOWEI PAN, HANJUAN JIN, XIAOHUA WU, XUEFENG BAI, XIAOHONG SHENG, NICHOLAS LABUN, BOHDAN PYSKIR, HECHUN CAI, JINZHONG ZHANG, ANGEL FAVILA, ANKUR SAXENA, RAYMOND HOWELL, FAYE VORICK, and NICHOLAS DESAI, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Motorola, Inc. has moved to dismiss the counterclaim of defendant Shaowei Pan pursuant to Federal Rule of Civil Procedure 12(b)(6) and has moved for judgment on the pleadings pursuant to Rule 12(c) on the counterclaim of Xiaohong Sheng. For the reasons stated below, the Court grants the motions in part and denies them in part.

## Background

Motorola has sued Pan, Sheng, and several others under the Computer Fraud and Abuse Act and for misappropriation of trade secrets and other claims. Pan worked for Motorola from 1994 through early April 2004 and is now the chief technology officer of defendant Lemko Corp. He is also the spouse of defendant Xiaohua Wu, who

worked for Motorola as an engineer from 1995 through December 2007. Motorola alleges that in 2005-2007, Wu obtained confidential and proprietary Motorola information and transferred it to Lemko.

Sheng worked for Motorola as a software engineer from November 2006 through July 2008. Motorola alleges that while working for the company, Sheng secretly continued to work for Lemko, where she had been employed. According to Motorola, Sheng (among other things) improperly downloaded confidential and proprietary Motorola information without its consent and used a Motorola-provided computer to perform work for Lemko.

**1.      Sheng's counterclaim**

Sheng has filed a four-count counterclaim against Motorola. Count 1 is a claim for abuse of process. Sheng alleges that she did not possess or use any Motorola trade secret and that Motorola had no reason to think she did when it sued her. She also alleges that Motorola has misrepresented the communications that it alleges constituted improper transmission of confidential or proprietary information. According to Sheng, "Motorola brought this lawsuit to coerce Sheng to assist in civil and criminal claims against [defendant Hanjuan] Jin, and/or to use [Sheng] as an example to intimidate its past, present, and future employees who may assert their rights against it or be 'more loyal to their friends' than to Motorola." Sheng Counterclaim ¶ 53.

In Count 2, Sheng alleges that Motorola discriminated against her based on her Chinese ethnicity. She alleges that Motorola investigated only Chinese nationals and Asians when investigating Jin's alleged trade secret theft and did not file suit against any white person or anyone born in the United States relating to that theft but rather

2

sued only Chinese nationals and Asians. She also alleges that Motorola terminated her for an infraction that, under Motorola's standard policies, subjected a person only to a written warning for a first offense. She alleges that Motorola acted contrary to these policies because of her race and alienage and that it follows its policies when applying them to white persons born in the United States. Sheng alleges that Motorola would not have terminated her employment or filed suit against her had she not been a Chinese national or Asian.

In Count 3, Sheng alleges that Motorola provided her with a computer and understood she would use it to work from home. She says that Motorola allowed its employees to occasionally check their personal e-mail from Motorola-issued computers and that she did so occasionally. She alleges that she took steps to secure her personal e-mail account and that she had a reasonable expectation that the contents of that account were private. Despite this, Sheng alleges, Motorola intentionally viewed the contents of her private, web-based e-mail account.

Count 4 is a claim under the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, based on the same allegations that underlie Count 3. Sheng alleges that Motorola, without authorization, "intentionally accessed a facility through which an electronic communication service is provided," Sheng Counterclaim ¶ 91, to obtain access to electronic communications in electronic storage.

**2.    Pan's counterclaim**

Pan has filed a six-count counterclaim seeking a declaratory judgment on various issues (Counts 1, 3, and 5) and damages for unjust enrichment (Counts 2, 4, and 6). Pan alleges that while at Lemko, he actually invented or co-invented a number

3

of the inventions that Motorola claims are its trade secrets that he misappropriated. He contends that Motorola took advantage of these technologies as if it owned them exclusively.

Pan alleges that while at Motorola, he contributed to or created at least sixty patented inventions assigned to Motorola. He says that when, after his departure from Motorola, his wife Wu's team began to work on "cellular location technology," he "began unofficially advising and collaborating with the team, repeatedly giving them the benefit of his knowledge and experience." Pan Counterclaim ¶ 2. During this period of advice and collaborating, Pan alleges, Wu submitted several inventions to Motorola for consideration. Motorola filed for patents on some and maintained others as trade secrets and has used a number of them, including inventions referred to as the hybrid location determination trade secret, the AP geometry location determination trade secret, and the tracking invention. (These are some of the same matters that, according to Motorola, Pan misappropriated or assisted in misappropriating from Motorola.) Pan alleges that he received no compensation for these inventions and that Motorola has made millions of dollars from them. Pan seeks a declaratory judgment that he is an owner or co-owner of all three inventions and damages consisting of the market value of one of them (on which Motorola filed but abandoned a patent application) and Motorola's profits from the others.

## Discussion

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811,

4

820 (7th Cir. 2009). To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. Though a complaint need not include "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). A motion for judgment on the pleadings under Rule 12(c) is considered under the same standard that applies to a Rule 12(b)(6) motion. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

1. **Sheng's counterclaim**

    a. **Abuse of process claim**

    To succeed on her claim for abuse of process, Sheng must prove an ulterior motive or purpose by Motorola in the use of regular court process and some act in the legal process not proper in the regular prosecution of the proceedings. *See, e.g., Commerce Bank, N.A. v. Plotkin*, 255 Ill. App. 3d 870, 872, 637 N.E.2d 746, 748 (1994); *Sutton v. Hofeld*, 118 Ill. App. 3d 65, 69, 454 N.E.2d 681, 683 (1983). But "the mere filing of a lawsuit even with a malicious motive does not constitute an abuse of process." *Sutton*, 118 Ill. App. 3d at 70, 454 N.E.2d at 684. Illinois courts "have generally taken a very restrictive view of the tort of abuse of process. The word 'process' has been given its literal meaning." *Commerce Bank*, 255 Ill. App. 3d at 872,

627 N.E.2d at 748.

Count 1 fails to state an abuse of process claim. Sheng's allegation that Motorola filed suit to intimidate her is insufficient without more. Specifically, she has not alleged any act by Motorola in the use of court process that was not proper in the regular prosecution of the case. *See, e.g., Sanchez & Daniels v. Koresko & Assocs.*, No. 04 C 5183, 2006 WL 3235604, at *6 (N.D. Ill. Nov. 8, 2006) (citing cases).

### b. Discrimination claim

In her response to Motorola's motion to dismiss, Sheng has clarified that Count 2 is a claim under 42 U.S.C. § 1981(a), which provides that "[a]ll persons with in the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." The term "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

It is questionable whether Motorola's allegedly improper referral of Sheng to federal law enforcement authorities and its investigation and filing of suit against her qualify as actions that adversely impact Sheng's rights relating to the making and enforcement of contracts. The termination of her employment, however, is the type of conduct that may be actionable under section 1981(a).

Section 1981 encompasses only claims of discrimination based on race, not national origin. But the Supreme Court has defined race "broadly to include identifiable classes of persons who are subjected to intentional discrimination solely because of

6

their ancestry or ethnic characteristics." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n. 4 (7th Cir. 2006) (citing *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609(1987)). Sheng's allegation that Motorola terminated her employment because of her Chinese ethnicity is sufficient to bring her claim within section 1981(a).

Motorola alleges that Sheng has not alleged sufficient facts to state a discrimination claim. The Court disagrees. Sheng is not required to prove her case in her complaint, even in the post-*Twombly* and *Iqbal* environment: the Federal Rules still follow a notice-pleading regime, and they do not "impose a probability requirement on plaintiffs." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Sheng alleges that Motorola acted contrary to its usual policies and treated her alleged infraction more severely than it treated similar infractions by white persons. The Court must take this allegation as true for present purposes. This, plus the other allegations in Count 2, are sufficient to save her claim from dismissal.

      c.      **Intrusion upon seclusion claim**

To sustain a claim of intrusion upon seclusion under Illinois law – a form of invasion of privacy claim – Sheng must show that Motorola committed an unauthorized intrusion or prying into her seclusion that would be highly offensive or objectionable to a reasonable person, intruded into a private matter, and caused the plaintiff anguish and suffering. *See, e.g., Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 71, 813 N.E.2d 1013, 1017 (2004). As indicated earlier, Sheng alleges that Motorola looked at the contents of her private e-mail account, which Sheng had accessed via a Motorola-provided computer. *See* Sheng Counterclaim ¶¶ 77-87.

Sheng's claim is insufficient because she has not alleged that Motorola's intrusion was unauthorized. The Court does not reach this conclusion based on Motorola's reference to a "usage notice" that it contends was posted on Sheng's company-issued computer in which it reserved the right to inspect any electronic communication transmitted via the computer or via Motorola's network. *See* Motorola Mem. at 11 n.2. That is a reference to a document outside the pleadings, which the Court cannot properly consider in the present procedural context. Rather, the Court rules as it does because Sheng's counterclaim contains no allegation that Motorola's alleged intrusion was unauthorized.[1] For this reason, the Court need not consider Motorola's other arguments in support of dismissal.

### d. Stored Communications Act claim

The Stored Communications Act permits a person aggrieved by a knowing or intentional violation of the Act to recover damages from the violator. 18 U.S.C. § 2707(a). Sheng does not identify the particular provision of the Act she contends Motorola violated. But based upon her allegations, it appears that she alleges that Motorola violated 18 U.S.C. § 2701(a), which prohibits a person from "intentionally access[ing] without authorization a facility through which an electronic communication service is provided" and from "intentionally exceed[ing] an authorization to access that

---

[1] If Sheng attempts to replead this claim in a sufficient manner via an amended counterclaim, she and her counsel should of course be aware that Federal Rule of Civil Procedure 11(b)(3) makes it improper to make a factual allegation that does not have evidentiary support or is unlikely to have such support after a reasonable opportunity for discovery. If Motorola is correct about the usage notice, Sheng would be well advised in any amended counterclaim to acknowledge its existence and then allege (if she has a viable basis to do so) why it does not apply or otherwise bar her claim.

8

facility."

Sheng's Stored Communications Act claim fails for the same reason that her intrusion upon seclusion claim was deficient. Specifically, Sheng has not alleged that Motorola's access was without authorization. The Court thus need not deal with whether her claim otherwise meets the requirements under the Act.

**2.    Pan's counterclaim**

   **a.    Unjust enrichment claims**

"The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies, including the equitable remedy of constructive trust and the legal actions of assumpsit and restitution or quasi-contract. To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154, 545 N.E.2d 672, 676 (1989).

A claim for unjust enrichment may be asserted in the present context when one party performs a service for the benefit of another, the other party accepts the benefit, and the surrounding circumstances indicate that the service was not intended to be gratuitous. *See, e.g., Midwest Emerg. Assocs.-Elgin Ltd. v. Harmony Health Plan of Ill., Inc.*, 382 Ill. App. 3d 973, 982, 888 N.E.2d 694, 701 (2008). Generally speaking, a person who "perform[s] services altruistically or gratuitously, with some end other than payment in mind," cannot recover for unjust enrichment. *Midcoast Aviation, Inc. v.*

*General Electric Credit Corp.*, 907 F.2d 732, 740 (7th Cir. 1990).

Pan points out that statements by courts along these lines generally have been made in the context of *quantum meruit* claims and that he is not making such a claim.[2] Whether or not that is so, but Pan still has to show – or at this point, to allege plausibly – that Motorola was *unjustly* enriched. With that in mind, the statements by courts in *quantum meruit*-based unjust enrichment cases along the lines that "with no expectation of payment for services rendered, a party can hardly claim that another has been *unjustly* enriched," *id.*, apply equally in the present context. *Id.* (emphasis in original). *See also, e.g., Cosgrove v Bartolotta*, 150 F.3d 729, 734 (7th Cir. 1998) (Wisconsin law; to recover for unjust enrichment, benefactor must reasonably believe he will be paid, "that is, when the benefit is not rendered gratuitously . . . or donatively, as by an altruist or friend or relative").

Sheng does not allege that he was expecting a benefit; rather, he alleges that he was helping out his spouse. Illinois law applies a presumption that a person who furnishes services to a family member does so gratuitously, *see, e.g., In re Templeton*, 339 Ill. App. 3d 310, 314, 789 N.E.2d 1265, 1268 (2003), and Pan alleges nothing that hints he can rebut that presumption. For this reason, he has failed to state a claim for unjust enrichment.

    **b.    Declaratory judgment claims**

The Court denies Motorola's motion to dismiss with regard to Pan's declaratory judgment claims. Motorola relies largely on its own complaint against Pan as well as

---

[2] Pan cites no authority, however, sustaining an unjust enrichment claim in the present context.

other documents that are not part of Pan's counterclaim. The Court cannot consider these materials in the present procedural posture of the case.

## Conclusion

For the reasons stated in this decision, the Court grants Motorola's motions to dismiss and for judgment of the pleadings [311 & 315] in part and denies them in part. Counts 1, 3, and 4 of Sheng's counterclaim are dismissed, as are Counts 2, 4, and 6 of Pan's counterclaim. Motorola's motions are otherwise denied. Motorola is directed to answer the remaining claims on or before March 29, 2010.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 15, 2010