**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEMKO CORPORATION, XIAOHONG | ) | |
| SHENG, SHAOWEI PAN, HANJUAN | ) | |
| JIN, XIAOHUA WU, XUEFENG BAI, | ) | |
| NICHOLAS LABUN, BOHDAN | ) | |
| PYSKIR, HECHUN CAI, JINZHONG | ) | |
| ZHANG, ANGEL FAVILA, ANKUR | ) | Case No. 08 CV 5427 |
| SAXENA, RAYMOND HOWELL, FAYE | ) | |
| VORICK, and NICHOLAS DESAI, | ) | |
| | ) | |
| Defendants. | ) | Judge Matthew F. Kennelly |
| | ) | |
| * * * * * * * * * * * * * | ) | Magistrate Judge Geraldine Soat Brown |
| LEMKO CORPORATION, SHAOWEI | ) | |
| PAN, XIAOHUA WU and XIAOHONG | ) | |
| SHENG, | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| MOTOROLA, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## MOTOROLA'S RENEWED MOTION TO COMPEL

From the start, this case has been about Defendants' misappropriation of Motorola's source code and unauthorized downloading of Motorola's electronic files. Accordingly, in April and May of last year, Motorola served requests for production on both the individual defendants and on Lemko that were primarily focused on discovering what source code and electronic files defendants had on their computers, and when and where they got them. In the nearly a year that has elapsed since Motorola served its first requests for production, Lemko still has not produced anything in discovery except a handful of personnel files and two identical NDAs.

On February 11, 2010, this Court dismissed without prejudice Motorola's Third Motion to Compel and Motorola's Re-Noticed October 2, 2009 Motion to Compel, because they did not contain the required Local Rule 37.2 language about counsel's good faith efforts to resolve the discovery dispute.

Subsequently, on March 2, 2010, counsel met (for the second time) at the offices of Nixon Peabody for approximately two and a half hours to discuss the issues raised in the motions to compel.  The participants in this meeting were:

- Jodi Rosen Wine, Deanna Swits and, for part of the meeting, Mark Halligan (for Motorola)

- Mike Karpeles and Charles Leuin (for Lemko and most of the individual defendants)

- Mike Persoon (for Defendant Sheng)

- Bill Leonard (for Defendant Wu)

Following the March 2 meeting, counsel for Motorola sent a detailed letter to counsel for Lemko, explaining yet again why Motorola needed the discovery requested, and proposing a compromise regarding the scope of discovery requested.  (See Ex. A, Wine 3/8/10 letter.)

Although promising a response to counsel's March 8 letter on the Friday before the court hearing that was scheduled for the morning of March 15, 2010, Lemko's counsel chose not to respond before the hearing.  Instead, Lemko's counsel represented to the Court at the hearing that the parties had "gotten very close" on the issues raised in Motorola's motions.  Then, right after the hearing, Lemko's counsel sent an acrid response to the March 8 letter, rejecting the proposal from Motorola's counsel in its entirety.  (See Ex. B, Karpeles 3/15/10 Letter.)  Accordingly, after consultation in person and good faith attempts to resolve differences, the parties are unable to reach an accord.

12930955.2

As of the date of this motion, another <u>six weeks</u> has gone by since the parties were in court on February 11 and the Court admonished Lemko's counsel not to continue the "history of obstruction and obfuscation on the defense side." (Ex. C, 2/11/10 Transcript of Proceedings at 10.) And Defendants still have not produced <u>anything</u> in the <u>six months</u> since Motorola filed its October 2, 2009 motion to compel.[1]

Accordingly, Motorola respectfully requests that the Court grant its motion and compel Lemko to produce the discovery requested, as set forth below. In support, Motorola submits a declaration from its forensic expert, Chad Gough, explaining why the electronic evidence requested is proper pursuant to Fed. R. Civ. P. 26 and likely to lead to the discovery of admissible evidence, and how it is obtainable without either undue burden or expense. Motorola further requests that the Court issue sanctions against Lemko for the substantially increased expense caused by its contumacious conduct, which has required Motorola to file three separate motions to obtain the discovery that it needs to efficiently and effectively move this case to trial.

**A.     The Scope Of Motorola's Discovery Requests Was Impacted By False Testimony Given By Lemko 30(b)(6) Deposition**

Before serving its discovery requests and by Order of this Court, Motorola served a March 2009 deposition notice pursuant to Fed. R. Civ. P. 30(b)(6), for the testimony of Defendant Lemko regarding the following subjects: (1) Lemko's computer networks, ***including databases***; (2) Lemko's computer hardware, ***including servers***; (3) Lemko's data storage practices; (4) Lemko's IT personnel; (5) Lemko's software, ***including "bug" control system software and logs, software for product development such as compilers and development tools,***

---

[1]     Defendants have offered to produce some documents (but not those addressed in this Renewed motion), and not until April 7, 2010. Motorola rejected this offer, and asked that the documents be produced by March 12, in advance of the court hearing that took place on March 15. (Ex. A at p. 5.) Defendants neither responded to Motorola's demand, nor produced a single document prior to that hearing.

12930955.2

*and source code control systems and logs*; (6) Lemko's electronic security policies and

procedures; (7) Lemko's email systems; (8) Lemko's voicemail system; and (9) Lemko's use of

off site data storage.

At this deposition, Defendant Pan unambiguously testified on behalf of Lemko that

Lemko was founded in 2004.

> Q.    All right. Now, Dr. Pan, how many years have
>        you worked for Lemko?
> A.    Since April 2004.
> Q.    Since April 2004?
> A.    Yeah.
> Q.    And prior to April 2004, where did you work?
> A.    Motorola.
> Q.    And for what period of time did you work at
>        Motorola?
> A.    Since July 1993.
> Q.    July 1993?
> A.    Yes.
> Q.    Until --
> A.    Until March 2004.
> Q.    Until March 2004. And you've been at Lemko
>        from April 2004 to the present?
> A.    Yes.
> Q.    Now, when you arrived at Lemko in April of
>        2004, how many years had Lemko been a corporation? How
>        many years had they been in existence, to your
>        knowledge?
> A.    I think almost the same time of I'm start.
> Q.    So you were part of the startup of Lemko?
> A.    Yes.
> Q.    You were what is sometimes referred to as one
>        of the founders of Lemko?
> A.    Yes.

(Ex. D, 4/29/09 Dep. at 9-10.)  This testimony has proved to be absolutely false, and in fact Pan

and certain of the other Defendants started Lemko in 2002 or earlier.  Defendants have suggested

that any false answers given at the deposition were the result of imprecise questioning (*See* Ex. B

at n.2.), but Pan confirmed and reconfirmed this 2004 date throughout the 30(b)(6) deposition.

(*See, e.g.,* Ex. D, 4/29/09 Dep. at 12, 52, 75.)

12930955.2

As a result of this testimony, Motorola put time limits on certain of the discovery requests that it would never have included if Pan had truthfully testified that Defendants had been running a competing business for years while they were still employed by Motorola.  Lemko is now taking the position, however, that it will not provide any discovery prior to 2005, because some of the requests were so limited  (*See* Ex. B at p. 3.) ("With respect to the time frame, you concede that [from 2005 to September 2008] is all that is sought by the express request.  There is no basis to expand the request beyond its terms.").

Lemko's counsel is thus taking the position that Motorola will have to serve new discovery requests covering the earlier time period.  If Lemko had timely responded to the outstanding requests, then its position might be sustainable.  But by waiting for nearly a year to provide the discovery, Lemko has opened itself up to a broader scope of relevant discovery as the scope of the case has broadened.  This Court should not require Motorola to serve new discovery requests covering an expanded time period—which would only cause additional delay—when the scope of some (but not all) of the initial requests was limited solely due to the false testimony of Lemko's corporate representative.

Lemko has also taken the position, without providing any justification, that it will not provide any discovery after the complaint was filed.  (*Id.* at p. 2.) ("There is no basis for Motorola to demand production of data after September 2008, when this lawsuit was initiated.").  Motorola's requests were not so limited, and there is no basis to so limit the production.  Accordingly, neither of Lemko's artificial temporal limits on discovery should be permitted, and Lemko should be compelled to produce all documents that are responsive to Motorola's discovery requests.

12930955.2

**B.    Motorola's Discovery Requests Are Reasonably Designed To Discover Information That Is Relevant To Its Claims In This Litigation**

**1.    Bug Logs (Request No. 6)**

At the April 2009 deposition of Lemko's corporate representative, Shaowei Pan testified that Lemko used the bug control system software "Bugzilla" and that Lemko had been using this software since 2005.  (Ex. D, 4/29/09 Dep. at 66.)  Production of Lemko's bug logs is critical in this case, because Lemko testified through its representative that the bug tracking system was the only authentication record for Lemko's source code:

> Q.    Do you keep authentication records for your
>        source code to show that this is the source code that was
>        developed? Any sort of authentication records for
>        source-code management?
>
> A.    No.
>
> Q.    So other than the bug-tracking system, that's
>        the only thing you have?
>
> A.    Yes, yes.

(Ex. D, 4/29/09 Dep. at 88.)

Based on Lemko's deposition testimony, Motorola made the following request for discovery from Lemko:

> A true and accurate copy of any and all "bug logs" and
> supporting data thereto from 2005 to the present, including
> but not limited to those from the Bugzilla application and
> supporting data and systems thereto.

As set forth in the Declaration of Chad Gough, "bug" tracking tools help developers in the development of software by tracking modifications, added features and enhancements to the code.  (Ex. E, Gough Decl. ¶¶ 6-7.)  This information is critical to Motorola's ability to determine what Motorola source code has been used to create Lemko's software.  *Id.* at ¶ 13.

Lemko has refused to produce its bug logs in their native format and instead has offered either a 5,000 page hard copy print out of the Bugzilla database, or to provide the information in

an undisclosed electronic format.  (Ex. E, Gough Decl. at ¶¶ 12-13.)  As detailed in the

Declaration of Chad Gough, these proposals are highly likely to degrade and reduce the usability

of the data and are not acceptable to Motorola's experts.  *Id.*  The native version back-up of the

database that is requested would allow Plaintiff's experts to restore the data and conduct searches

and generate reports on the data in the same manner in which the information was used at

Lemko.  (*Id.* at ¶ 13.)

Moreover, because the Bugzilla system is designed to be backed up, and requires only a

single command to do so, creating a backup of Bugzilla is a simple procedure that is cost

effective and takes very little human intervention.  (*Id.* at ¶14.)  After a few minutes of a person's

time, the rest of the backup is automated.  In contrast, both the hard copy printout and the

"electronic" copy that Lemko proposes to create would likely be more time consuming and

expensive to create. (*Id.* at ¶ 13.)

Lemko has also stated that it is unwilling to produce a backup of the Bugzilla database

because doing so would compromise the integrity of its data.  (Ex. B at p. 2.)  But, as explained

by Gough, the backup requested is simply an exact duplicate of the database, and nothing

Motorola's experts could do to the duplicate could compromise the integrity of Lemko's data.

(Ex. E, Gough Decl. at ¶ 15.)

Finally, as explained above, Motorola limited its request to data from 2005 to the present

based on Lemko's 30(b)(6) testimony.  In the March 15 letter, however, Lemko's counsel states

that Lemko did not begin using Bugzilla until 2006.  Given the evidence that Lemko's

misappropriation from Motorola began in 2002, Motorola requires Lemko to produce <u>all</u> of its

"bug logs" and supporting data, including any that may have preceded its use of Bugzilla.

### 2.      MySQL Database (Request No. 8)

At the April 2009 deposition of Lemko, Lemko's corporate representative, Pan, was asked whether the company had any databases.  Pan testified that the only database at Lemko was a production database using MySQL software, to which all Lemko engineers had access and on which engineering data is stored.  (Ex. D, 4/29/09 Dep. at 19-21.)  Pan further testified on behalf of Lemko that MySQL is the centralized repository for Lemko's tracking development efforts, stating under oath that Lemko's twenty-two engineers connect into the MySql database, which tracks and audits the engineers' activity.  (*Id.* at 28.)  Additionally, Pan testified that Lemko uses MySQL software for its development tools and for compiling.  (*Id.* at 66-67.)

Based on Lemko's deposition testimony, Motorola served the following request for discovery from Lemko:

> The MySQL database(s) and any supporting applications
> thereto, for electronic imaging in the EnCase image format,
> by Plaintiff Motorola's experts.

Lemko has refused to produce the MySQL database, contending that it contains only real-time information captured from calls made on Lemko's system and is not used either for the internal tracking of software development or with Lemko's bug logs.  (Ex. B at p. 2.)  Although it is certainly possible that Lemko is using the MySQL database to capture real-time information from customer calls, it appears that Lemko is also using the MySQL database in other ways as well, as indicated at the Lemko 30(b)(6) deposition.  (Ex. D, 4/29/09 Dep. at 19-21, 28, 66-67.)  Accordingly, this Court should compel Lemko to provide an EnCase image of the MySQL database, as requested.

Moreover, as explained in the Gough Declaration, it is highly likely that Lemko is also using the MySQL database in conjunction with its bug logs.  Bugzilla is a web-based application that resides and operates in a database environment.  (Ex. E, Gough Decl. at ¶11.)  The only

database servers supported by Bugzilla are MySQL, PostgreSQL and Oracle, and MySQL is by far the most common of the three.  (*Id.*)  Since MySQL is also the only database identified by Lemko in the 30(b)(6) deposition, it is almost inconceivable that Lemko does not use MySQL with Bugzilla.

### 3.     Lemko's Backup Server (Requests No. 11)

At the April 2009 deposition of Lemko, corporate representative Pan was asked where Lemko stores its source code.  Pan testified that each Lemko development engineer stores his source code on his personal notebook or desktop computer and then backs it up on a backup server.  (Ex. D, 4/29/09 Dep. at 21, 30.)  For this reason, Motorola has requested in discovery an EnCase image of the computers used by Lemko's 22 engineers, and the Lemko backup server. *See* 10/2/09 Motion to Compel at 5-6 (Dkt. 231).

Defendants are now taking the position that Motorola has made no valid discovery request seeking Lemko's software development records.  (Ex. B at p. 2.)  But Motorola's request for an image of the backup server directly resulted from this testimony of Lemko's corporate representative.  (Ex. E, Gough Decl. at ¶¶ 20-21.)  At this 30(b)(6) deposition, Pan testified on Lemko's behalf that that Lemko did not use Subversion, CVS, or any other system for its engineers to check in and check out source code. (Ex. D, 4/29/09 Dep. at 53-54.)[2] Pan testified that instead of using a version control system, when revisions to the Lemko source code are required, Lemko's engineers make the changes on their personal computers and then copy their portion of the source code to the backup server.  *Id.*  at ¶ 21.  Pan further testified that prior

---

[2]     As explained by Gough, a revision control system allows a team of engineers to collaborate on the development of source code by "checking out" a copy to work on and later "checking in" their revisions to the central copy, with each addition stored with a new version number so changes can be tracked and removed as needed.  (Ex. E, Gough Decl. at ¶ 6.)

versions of the code are stored on the back-up server (except that very old code is sometimes deleted due to space limitations). (Ex. D, 04/29/09 Dep. at 36-47, 54.)

For this reason, Plaintiff did not specifically ask for Subversion, CVS, or any other source code repositories in its discovery requests; but, consistent with Lemko's testimony, served Discovery Request No. 11 requesting an EnCase image of the backup server to obtain the back up of versions of Lemko's source code:

> The "Linux backup hard drive" and /or "backup server" and any supporting equipment thereto, for electronic imaging, in the EnCase image format, by Motorola's experts.

Since the April 29, 2009 deposition it has become apparent that Lemko does, in fact, use the revision control systems Subversion and CVS to organize its source code. (Ex. E, Gough Decl. at ¶¶ 17-19.) It is not clear, however, whether these systems are used by all of Lemko's engineers or when they may have begun to use it. Accordingly, an image of the back-up server appears to be the most likely avenue for Motorola to obtain the discovery that it needs about the development of Lemko software, as well as versions of that software that have existed over time. (Ex. E, Gough Decl. ¶¶ 21-23.)[3]

### 4. Motorola Documents (Request No. 5)

Motorola's Request No. 5 asked for the following documents:

> Any and all documents, electronic media, and other things in your possession, custody or control that were taken, not returned, downloaded, copied, reproduced, transferred, moved from,

---

[3] In an effort to resolve this dispute, Plaintiff proposed that if Lemko would provide a backup of all source code repositories used by Lemko and a backup of its bug tracking database, then Plaintiff would hold off on its demand for an EnCase image of the 22 engineer computers and Lemko's backup server. (Ex. A at p. 3.) If Lemko's deposition testimony is correct, however, and Lemko does not use a centralized version control system, then Motorola's request for images of the engineers' computers and the backup server may be the only way to obtain the necessary discovery.

transmitted, derived from, or otherwise refer to and/or are related
to Motorola.

One would think, in a case of this nature, that this request would not garner much

objection.  Nonetheless, Lemko has agreed only to produce documents regarding Defendants'

access to Motorola systems and Motorola source code, system architecture, or testing/debugging

tools in Defendants' possession, and only for the time period 2005-2008.

Lemko specifically objects to the "or otherwise refer to and/or are related to Motorola"

language in the request, arguing that this makes the request overly broad.  (Ex. B, Karpeles

3/15/10 Letter at p. 3).  Furthermore, at the conference of March 2, counsel for Lemko stated that

they were "inferring" the above-referenced time limitation but provided no further explanation

for the objection.  Motorola will concede that general information about Motorola is not within

the scope of the request, but asks the Court to compel, without limitation, all documents,

electronic media or other things that were "taken, not returned, downloaded, copied, reproduced,

transferred, moved from, transmitted, or derived from . . .  Motorola" -- without time restriction.

## 5.    Lemko's Business Activities In India and China (Request No. 12)

Plaintiff served the following request for production on Lemko:

> A true and accurate copy of any and all documents and communications
> that relate or refer to Lemko's business and/or other activities in India
> and/or China, from 2005 to the present.

At his April 2009 deposition, Pan denied that Lemko had offices in India or China:

> Q.     . . . Now, you said that you had no other offices,
>        but I saw on yourWeb site you had an office in India.
> A.     No. We don't have an office in India.
> Q.     Did you ever have an office in India?
> A.     No.
> Q.     Why did you put India on yourWeb site?
> A.     By mistake.
> Q.     When did you take India off the Web site?
> A.     I don't remember. Because the Web site was
>        support by third party. They made mistake, so we found

out, and we ask them to take it out.

(Ex. D, 4/29/09 Dep. at 59-60.)

> Q.   Now, China was listed as another office that you had. Is that a mistake, too?
> A.   We never put China in that.
> Q.   So who put China then?
> A.   Motorola.
> Q.   Motorola. How would Motorola be able to put anything on yourWeb site?
> A.   No. Motorola says that we have office in China, but we don't.
> Q.   Okay. But I think yourWeb site said you had an office in China.
> A.   No. They never.
> Q.   So you're saying you know that it said India, but that was a mistake?
> A.   Yes.
> Q.   But you don't think it ever said China?
> A.   No.

(*Id.* at 81-82.)

This testimony is false, however, because Lemko's website has indicated that Lemko has

offices in both India and China, as shown by the following screen shot of the Lemko website in

May of 2007:



Indeed, the Lemko website in May of 2007 even listed an address for an office in India



And, as of August, 2009, months <u>after</u> the 30(b)(6) deposition, the Lemko website still

showed "offices in Hong Kong and India"



Motorola notes that references to Lemko's offices in India and China have now been

removed from its website, s*ee* www.lemko.com, but this should not preclude Motorola from

pursuing this discovery.  Motorola believes that the information was removed from the website

as a cover-up, because Lemko's India and China activities were taking place in the 2002-2004

time period during which Pan was still employed full time at Motorola—the same time period

that he denied that Lemko was operational at the Rule 30(b)(6) deposition.

## 6.    Communications Among Defendants (Request No. 2)

Motorola's Request No. 2 asked Lemko, Pan, Bai, Sheng and Wu for all communications

by and between Lemko and any other Defendant named in this action.  In conjunction with the

Rule 37.2 conferences surrounding Plaintiff's October 2009 motion to compel, Motorola limited

this request to communications between the individual defendants (and not all communications between "Lemko" and the individual defendants).  Despite Motorola agreeing to this limitation in July of 2009, Defendants still have not produced a single such communication.

Defendants now offer to produce emails and any hard copy correspondence between Defendants Pan, Bai, Jin, Sheng, and Wu, but object to producing any correspondence between those defendants and the other defendants named in the case, on the grounds that there were only five individual defendants in the case when the discovery was served (in April and May of last year).  Again, Defendants' extreme delay in providing this discovery should not be used to shield the production of relevant documents.[4]

**C.   The Court Should Order Sanctions For Defendants' Abject Failure To Provide Discovery in this Case.**

It is well within this Court's discretion to sanction Defendants for their complete failure to provide discovery in response to Plaintiff's requests that have been pending for nearly a year. Shifting costs, including attorneys' fees, is an entirely proper remedy for Defendants' recalcitrance.  Regarding motions to compel discovery, Fed. R. Civ. P. 37(a)(5) states:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

The award of costs and reasonable attorneys' fees in connection with the filing of a motion to compel is mandatory, unless the court finds that the motion was filed without the

---

[4]   Motorola is cognizant that this issue may be impacted by this Court's March 16, 2010 Order (Dkt 387) granting Defendants' Motion to Stay Response to Motorola's Interrogatories Pending Resolution of the Motion To Dismiss Motorola's Second Amended Complaint.  Motorola requests that the Court enter an order compelling production of the disputed discovery at such time as its stay order is lifted.

movant making a good faith effort to obtain the discovery without court action, the opposition to

the motion was substantially justified, or other circumstances make the award unjust. *Rickels v.*

*City of South Bend*, 33 F.3d 785, 786-87 (7th Cir. 1985) ("The great operative principle of Rule

37(a)[(5)] is that the loser pays."); *Burke v. The Prudential Ins. Co. of America*, 02 C 5910, 2004

U.S. Dist. LEXIS 1113 (N. D. Ill. Jan. 28. 2004) (granting plaintiff's fees and expenses incurred

in filing motion to compel where defendant failed to provide complete discovery until after the

motion was filed).  Defendants' conduct in this case aptly described by the comments made by

Judge Ashman in a recent decision awarding Rule 37 sanctions:

> In sum, the record evinces strong scents of noncompliance and
> evasive conduct.  Plaintiff continually requested information and
> Defendants did not provide it, forcing Plaintiff to expend time and
> money filing motions. Only after Plaintiff filed motions did
> Defendants produce these documents. This is exactly the type of
> behavior contemplated by Rule 37's fee-shifting provision.

*Lorrilard Tobacco Co. v. Elston Self Service Wholesale Groceries, Inc.*, 259 F.R.D. 323, 328

(N.D. Ill. 2009).

   Motorola filed its first motion to compel on May 15, 2009, and subsequent motions on

October 2, 2009 and February 8, 2009.  Lemko has not produced a single document in the

intervening months before this renewed motion was filed.  This is exactly the type of behavior

contemplated by Rule 37's fee-shifting provision.

   For each of the foregoing reasons, Motorola respectfully requests that the Court grant its

motion and enter the attached order compelling discovery and awarding sanctions.

Dated:  March 25, 2010                          Respectfully submitted,


                                                /s/ Jodi Rosen Wine

                                                **R. Mark Halligan (IL 6200723)**
                                                rmhalligan@nixonpeabody.com
                                                **Deanna R. Swits (IL 6287513)**

12930955.2

dswits@nixonpeabody.com
**Jodi Rosen Wine (IL 6209883)**
jwine@nixonpeabody.com
**NIXON PEABODY LLP**
300 South Riverside Plaza, 16th Floor
Chicago, IL 60606
Tel: 312-425-3900
Fax: 312-425 3909

*Attorneys for Plaintiff Motorola, Inc.*

12930955.2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that PLAINTIFF MOTOROLA'S RENEWED MOTION TO COMPEL was filed electronically in compliance with the General Order on Electronic Case Filing, Section III(B)(1).   As such, these documents were served on all counsel who are deemed to have consented to electronic service.   Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.9.   This document was also served via U.S. Mail on March 25, 2010 to the following pro se defendant:

Raymond Howell
26680 N. Countryside Lake Drive
Mundelein, IL 60060

Date:   March 25, 2010                    /s/ Jodi Rosen Wine

*Attorney for Plaintiff Motorola, Inc.*

12930955.2