# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOTOROLA, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LEMKO CORP., XIAOHONG SHENG, ) <br> SHAOWEI PAN, HANJUAN JIN, XIAOHUA ) <br> WU, XUEFENG BAI, NICHOLAS LABUN, ) <br> JINZHONG ZHANG, ANGEL FAVILA, ) <br> ANKUR SAXENA, RAYMOND HOWELL, ) <br> FAYE VORICK, and NICHOLAS DESAI, ) <br> ) <br> Defendants. ) | Case No. 08 C 5427 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The defendants have moved under Federal Rule of Civil Procedure 26(b)(5)(B) for a determination that plaintiff Motorola Inc.'s claims of attorney-client and work product protection for certain documents requested in discovery are unfounded. Two of the defendants, Lemko Corp. and Shaowei Pan, have moved to retain the protective order designations of "attorneys' eyes only" or "highly confidential" for certain documents. In this decision, the Court rules on both motions.

1. **Motorola's privilege claims**

The first question on the privilege issue is what law applies. This case includes four federal or arguably federal claims and over a dozen state claims. Motorola's federal claims are count one, a claim under the Computer Fraud and Abuse Act in which Motorola claims that certain defendants obtained proprietary information from

Motorola computers in excess of their authorization; count six, a claim in which Motorola seeks a declaratory judgment that certain patents held by and patent applications submitted by various defendants are Motorola's property; and count seventeen, a claim in which Motorola alleges that Lemko has infringed Motorola's copyright in certain source code. Defendant Sheng has asserted a counterclaim whose only remaining count is a federal discrimination claim; Pan has asserted a counterclaim that he is the rightful owner of certain inventions; and Wu and Lemko have asserted counterclaims that arise under state law.

In federal court, matters of privilege are governed by federal common law, except "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision," on which state law governs. Fed. R. Evid. 501. The rule, by its terms, is claim-specific; the governing law of privilege depends on what claim or defense is at issue.

Defendants argue that Illinois privilege law governs; Motorola argues that the governing law is federal privilege law – specifically, federal privilege law as interpreted by the Federal Circuit, which hears appeals in patent cases. Given Rule 501's claim-specific focus, the threshold question would appear to be what claim or claims the material on which privilege is asserted concerns. If the material pertains only to state claims, then Illinois law controls. If the material pertains only to federal claims, then federal law controls (which circuit's law would depend on which federal claims the material concerns). If the material pertains to both state and federal claims, the issue is perhaps tougher. Though neither party has addressed the point, there are cases saying in that situation, federal privilege law governs. *See, e.g., von Bulow by*

*Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *Mem. Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 & n.3 (7th Cir. 1981). Both *von Bulow* and *Memorial Hospital*, however, were cases in which federal law applied narrower privilege protection than state law. The opposite is true in the present case. The scope of attorney-client privilege protection is arguably narrower under Illinois law than under federal law, based on Illinois' adherence to the "control group" test in the corporate context.

The Court has not located any decisions addressing what law applies when the evidence applies to both federal and state claims and state law applies narrower privilege protection. Motorola does not address this question; it essentially assumes that because there are patent issues in the case, Federal Circuit law applies. Defendants say that the material in question all concerns the state law claims, though they do not spill much ink trying to explain their contention.

The material on which Motorola has claimed privilege appears to involve an "intellectual property review" in connection with a project that it was undertaking with another entity. As best as the Court can determine, the review concerned whether there was a potential for patent infringement. From this, Motorola leaps to the conclusion that Federal Circuit law controls. But given Rule 501's claim-specific focus, the question is not the nature of the underlying work but rather the claim(s) being litigated on which the evidence is relevant. The primary case that Motorola cites, *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000), says that Federal Circuit privilege law applies if the case is within the Federal Circuit's exclusive appellate jurisdiction. It is conceivable that appellate jurisdiction in this case may lie with the

Federal Circuit, due to the claim for declaratory judgment of ownership of patents and patent applications (though Motorola does not come right out and say that). But in *Spalding Sports*, the Federal Circuit was dealing with the question of *what circuit's* privilege law applies, not with a federal-vs.-state-law question under Rule 501. There is no reason to believe that the Federal Circuit would disregard Rule 501 and apply its own privilege law with regard to a state-law claim.

Motorola makes no showing – indeed, it does not attempt to do so – that any of the material on which it claims privilege concerns the patent-related claims asserted in the case. Nor does it argue that any of the evidence concerns its Computer Fraud and Abuse Act claim, its copyright infringement claim, or defendant Sheng's discrimination counterclaim. Indeed, the issue regarding privilege first arose in connection with litigation over defendant Wu's counterclaim under the Illinois Whistleblower Act, a state-law claim. There is no suggestion that the privilege issue relates to any claims other than that one. For these reasons, the Court concludes that defendants have the better of the argument and that Illinois privilege law governs.

Illinois law confines attorney-client privilege protection in the corporate environment to communications involving the corporation's "control group." The control group includes top management as well as employees "whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority." *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 120, 432 N.E.2d 250, 25 (1982); *see also, e.g., Sterling Fin. Mgmt., L.P. v. UBS PaineWebber, Inc.*, 336 Ill. App. 3d 442, 448, 782 N.E.2d 895, 900 (2002).

4

Motorola, which has the burden of showing the privilege applies on a document-by-document basis, has made no attempt to show that the communications in question involved members of its "control group" thus defined. As a result, it has failed to show the documents are protected by the attorney-client privilege under Illinois law.

Motorola also argues that the documents are protected by the work product doctrine. The parties appear to agree that this question is governed by federal law. *See* Defs.' Privilege Mot. at 14 & Reply at 9-12 (citing only federal cases); Pl.'s Privilege Resp. at 11-13. Under Federal Rule of Civil Procedure 26(b)(3), "a party may not discover documents . . . that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," subject to certain exceptions that are not at issue. Fed. R. Civ. P. 26(b)(3)(A).

Motorola has failed to provide evidence sufficient to carry its burden in this regard. The evidence tends to show that the materials in question concern a review routinely done by Motorola at the outset of new projects to determine the risk of patent infringement. The work product doctrine, however, applies to materials only if they "can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996) (emphasis added; internal quotation marks and citation omitted). In this regard, courts "distinguish between an investigative report developed in the ordinary course of business as a precaution for the remote prospect of litigation and materials prepared because some articulable claim, *likely* to lead to litigation . . . ha[s] arisen." *Id.* at 977 (emphasis in original; internal citations and quotation marks omitted). Motorola has failed to show

that the materials in question fall into the latter category. It has therefore not established a basis for work product protection.

**2. Attorneys'-eyes and highly-confidential designations**

The Court entered a protective order in April 2009 governing documents and other information produced in discovery. *See* Defs.' Confid. Mot., Ex. B. The order provided for designation of certain types of documents and information as "confidential" and "highly confidential." Under the April 2009 order, "highly confidential" information is available only to outside counsel of record, in-house counsel of corporate parties, one designated non-lawyer representative of each corporate party, and independent experts and consultants. *Id.* ¶¶ 7 & 9. This amounted to five persons for Motorola, not including experts and consultants.

The Court amended the order in March 2010 to permit Motorola to show a small number of documents designated as highly confidential to one additional non-lawyer executive. *See* Order of Mar. 9, 2010 (dkt. no. 375). The Court will refer to this category of documents as protected under "highly confidential level two."

In May 2009, the Court ordered the electronic imaging of certain computers belonging to defendants Pan and Wu. The order provided that the images would be categorized as highly confidential information under the April 2009 protective order. In September 2009, the Court entered a supplemental protective order regarding the electronically stored information on the Pan / Wu computers. *Id.*, Ex. A. The September 2009 order provided that the information was to be treated as "attorneys' eyes only" and would be accessible only to outside counsel of record who have filed an

appearance in the case and to independent expert witnesses and consultants. *Id.* ¶ 1.

In February 2010, Motorola asked Lemko and Pan to authorize disclosure of some 1,300 documents subject to the September 2009 order to nine Motorola personnel, some of which are in-house attorneys and some of which are business or security personnel. Lemko and Pan object; they argue that many of the documents should remain in the attorneys' eyes only category and that the others should be categorized as highly confidential level two. Motorola contends that this is insufficient to allow it to evaluate its claims and potential claims against the defendants and others.

When a designation of materials as confidential under a protective order is challenged, the designating party bears the burden of justifying the need for enforcement of the order. *See, e.g., Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005); *In re: Bank One Securities Litig.*, 222 F.R.D. 582, 586 (N.D. Ill. 2004).[1] In this case, that means Lemko and Pan must show good cause for limiting disclosure of certain of the materials at issue to Motorola's outside counsel and the rest to outside counsel, a few in-house lawyers, and one non-lawyer executive.

In evaluating the present motion, the Court assumes that even if Motorola and

---

[1] There is authority supporting an arguably different allocation of the burden of persuasion. In *Andrew Corp. v. Rossi*, 180 F.R.D. 338 (N.D. Ill. 1998), the court stated that the party seeking confidentiality must show the information is a trade secret or confidential business information and that there is good cause for a protective order, and that if this showing is made, the opposing party must demonstrate that the need for discovery outweighs the need for privacy. *Id.* at 340. Wherever the burden lies, however, the Court concludes that defendants have failed to show good cause for maintenance of the current classification of the materials in question or the revised classification they propose.

Lemko do not now compete, there is the potential that they could.  The Court also assumes the truth of defendants' contention that the materials in question disclose the fact and information regarding relationships Lemko has with entities with which Motorola competes and/or has existing relationships.

That, however, does not carry the day for defendants.  They need to show that disclosure of *these materials* to a small number of Motorola business personnel, all of whom will be subject to non-disclosure / non-use restrictions under the Court's protective order, presents a risk of disclosure (including inadvertently or accidentally) of sensitive competitive information.  That is the test defendants themselves advocate. *See* Defs.' Confid. Reply at 5.  To support their contentions in this regard, defendants have submitted a number of the documents and the affidavit of defendant Bohdan Pyskir, Lemko's president and chief operating officer.  *See id.*, Exs. E-H.

Pyskir's affidavit is largely conclusory.  He says the materials at issue concern Lemko's development, design, and implementation of cutting-edge communications technology and that disclosure "of any aspect" of this technology would put Lemko at risk that a competitor or potential competitor would learn of and use the technology. *Id.*, Ex. E ¶¶ 4-5.  But he does not explain these statements – particularly the latter one – and support for them is not apparent from the documents themselves:  the materials that defendants have chosen to provide to the Court all appear quite dated – they are from 2004, 2005, and 2007.[2]  It is certainly not self-evident, and it is not apparent to the

---

[2] Defendants state in one of their submissions that they can make other materials available to the Court if it wishes, but it is their burden to show need for limiting disclosure, not the Court's burden to ferret it out.

Court, that disclosure of the materials in question to a very small number of Motorola personnel – the responsibilities of most of whom are legal and security-related – would pose the sorts of risks about which defendants are concerned. Pyskir's conclusory statements are insufficient to show that the slight expansion of disclosure involved here to persons who will be subject to the Court's protective order puts defendants at any appreciable risk. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) ("To establish 'good cause' for a protective order under [Rule] 26(c), the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . .") (quoting *In re Halkin*, 598 F.2d 176, 193 (D.C. Cir. 1979) (internal quotation marks omitted)).

Pyskir also says that Motorola competes with certain of Lemko's suppliers and that it does business with one of them. Defs.' Confid. Mot., Ex. E ¶ 7. He goes on to say that *if* Motorola used information from the materials in question to interfere with Lemko's relationships, Lemko would be severely harmed. *Id.* That is, no doubt, true. But Lemko provides no basis for a determination that the limited expansion of the scope of disclosure sought by Motorola would lead to an appreciable risk of such harm. The handful of additional Motorola personnel that would have access to the information all would be required to execute a sworn undertaking not to disclose the information to others and to use it only in connection with assisting counsel. *See* Defs.' Confid. Mot., Ex. B at Ex. A.

On the other side of the ledger (assuming the Court even needs to get there, given defendants' failure to show a need for the extraordinarily restrictive limitations they seek to maintain), there is a legitimate need for Motorola's outside counsel to be

able to consult with client representatives other than lawyers. The Court cannot put it much better than the court in *Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125 (W.D. Mich. Feb. 9, 2009):

> Discovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant. Further, courts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in mediation and other settlement methods. It is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client. A litigant who is not in possession of all relevant facts, furthermore, is in a poor position to assess its obligation to evaluate its ongoing obligation to maintain only arguably meritorious actions at every stage of the case. Although the imposition of these and other handicaps upon a litigant is justifiable in some circumstances, such action by the court must be supported by a showing that disclosure will work a clearly defined and serious injury to the party seeking extraordinary confidential treatment.

*Id.* at *6. As the Court has indicated, defendants have not made such a showing of risk of injury.

**Conclusion**

For the reasons stated above, the Court grants the motions of defendants for determination that plaintiff's claims of privilege and protection are unfounded [# 377 & 379] and denies the motion of certain defendants to retain attorneys' eyes and highly confidential designations [# 412 & 414]. Plaintiff is directed to produce forthwith the documents that were the subject of the former motions, pursuant to whatever confidentiality designation is appropriate. Plaintiff may make available to the so-called "control group 9" the documents that were the subject of the latter motions. Defendant Lemko's motion to stay interrogatory responses pending ruling on its motion to dismiss [# 381] is terminated because the Court denied the motion to dismiss on April 12, 2010,

and Lemko and Pan's motion to extend time [# 372] is terminated as moot.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 1, 2010