**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MOTOROLA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LEMKO CORPORATION, XIAOHONG | ) |
| SHENG, SHAOWEI PAN, HANJUAN JIN, | ) |
| XIAOHUA WU, XUEFENG BAI, NICHOLAS | ) |
| LABUN, BOHDAN PYSKIR, HECHUN CAI, | ) |
| JINZHONG ZHANG, ANGEL FAVILA, | ) |
| ANKUR SAXENA, RAYMOND HOWELL, | )   Case No. 08 CV 5427 |
| FAYE VORICK, NICHOLAS DESAI, , and | ) |
| HUAWEI TECHNOLOGIES CO., LTD., a | ) |
| Chinese corporation, | )   Judge Matthew F. Kennelly |
| | ) |
| | )   Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) |
| | ) |
| * * * * * * * * * * * * * * * | ) |
| | ) |
| LEMKO CORPORATION, SHAOWEI PAN, | ) |
| XIAOHUA WU and XIAOHONG SHENG, | ) |
| | ) |
| Counter-Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| MOTOROLA, INC., | ) |
| | ) |
| Counter-Defendant. | ) |

**LEMKO DEFENDANTS' RESPONSE TO MOTOROLA'S SUPPLEMENT TO ITS
REPLY IN SUPPORT OF MOTOROLA'S AND HUAWEI'S JOINT MOTION TO
DISMISS WITH PREJUDICE DEFENDANT HUAWEI TECHNOLOGIES CO., LTD.**

Defendants Lemko Corporation ("Lemko"), Nicholas Labun, Shaowei Pan, Bohdan

Pyskir, Hechun Cai, Xuefeng Bai, Jinzhong Zhang, Faye Vorick, Nick Desai, and Ankur Saxena

(collectively, the "Lemko Defendants"), by their undersigned counsel, hereby respectfully

submit this response to Motorola's Supplement to the Reply in Support of Motorola's and Huawei's Joint Motion to Dismiss with Prejudice Defendant Huawei Technologies Co., Ltd. (the "Supplement") and state as follows:[1]

## I.   <u>INTRODUCTION</u>

Neither Motorola's Supplement nor Motorola and Huawei's earlier-filed Joint Response to the Lemko Defendants' Opposition to the Joint Motion to Dismiss (the "Reply") have rebutted the Lemko Defendants' showing that Huawei's dismissal from this matter would cause substantial legal prejudice to the remaining defendants.   In fact, both the Reply and the Supplement fail to dispute the fact that Huawei's dismissal would foreclose the Lemko Defendants from obtaining vital witness testimony and documents necessary to rebut Motorola's allegations in the TAC of purported corporate espionage by Huawei and the Lemko Defendants. At the hearing held on May 12, 2011, the Court responded to the Lemko Defendants' argument that they would be unfairly prejudiced as a result of Huawei's dismissal by observing:

> What I'm dealing with here is a situation where whether or not Huawei is a party to the case, Huawei is the 500-pound gorilla sitting over at the side of the case, okay, unless there were to be some significant carve-back of the allegations in the complaint and people were giving up on certain allegations.  If that's not happening, and there's no suggestion that it's happening at this point, these people on this side of the room have to defend against the allegation that Lemko people didn't just take Motorola's technology and use it themselves; they took and they gave it to other people, okay.  So the other people are in a place where it's -- I think he said it's exceedingly difficult or extraordinarily difficult or nearly impossible, whatever the word is, to get discovery, okay.  So how is that fair?  How is that fair?

(May 12, 2011 Hearing Tr., attached hereto as Exhibit A, pp. 18:21-19:11.)  As a result of the Lemko Defendants' arguments that severe unfairness would result from the dismissal of Huawei

---

[1]   Motorola filed its Supplement under seal and with the inconsistent labels of both "Highly Confidential" and "Attorney's Eyes Only," while the Lemko Defendants submit this response in the public record.  There is simply no plausible justification for Motorola's filing of its supplement under seal, and the Lemko Defendants also respectfully request that this Court direct Motorola to file the Supplement as a publicly-accessible document.

should the allegations of the TAC remain unchanged, the Court indicated that it could not yet rule on the Joint Motion to Dismiss and directed Motorola to file the Supplement in order to provide the answer to one simple question -- "In other words, if I grant this motion, what provisions of the third amended complaint are you withdrawing?" (*Id.*, p. 22:11-12.)

Despite the clarity of the Court's inquiry, Motorola's Supplement does not offer any cogent reply. Instead, Motorola abjectly fails to identify ***any*** allegation that it is willing to remove from the TAC and, in fact, clarifies that it intends to offer evidence of what it believes to be the Lemko Defendants' transfer of Motorola trade secrets and technology to Huawei -- detailed allegations of which remain in the TAC asserted against the Lemko Defendants. Motorola appears to want to have its cake and eat it too -- seeking to dismiss Huawei (along with the exculpatory evidence it possesses) from the case while retaining allegations of wrongdoing involving Huawei in the TAC that are inextricably linked to Motorola's assertions against the Lemko Defendants.[2] Nothing that Motorola has set forth in either the Reply or the Supplement rebuts Lemko's showing that dismissal of Huawei from this case would unfairly restrict the Lemko Defendants' right and ability to obtain and present vital evidence, thereby resulting in classic legal prejudice. Accordingly, this Court should exercise its discretion to either deny the Joint Motion to Dismiss or condition the grant of dismissal upon Huawei's ongoing availability and cooperation in providing information required by the other defendants to defend themselves in this lawsuit.

---

[2]     Lemko certainly has not wanted to keep Huawei in this case, but has no choice but to preserve the ability to defend itself given Motorola's failure to withdraw any allegations in the TAC.

## II.   ARGUMENT

### A.   The Motorola Supplement Does Not Rebut The Lemko Defendants' Showing Of Legal Prejudice.

Motorola's Supplement does not address the argument that Huawei's dismissal would result in legal prejudice in the form of a barrier to the Lemko Defendants' right to obtain relevant evidence. *See Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("[a] party also suffers plain legal prejudice if the settlement strips the party of . . . the right to present relevant evidence at trial"). Instead, Motorola relies on a 1958 decision from the Southern District of New York that either predates or fails to even reference the concept of legal prejudice in support of an argument that Huawei's dismissal would "leave Lemko in no worse a position than had Huawei never been a defendant." (Supplement, pp. 2-3, citing *Broadway & Ninety-Sixth Street Realty Corp. v. Loew's Inc.*, 23 F.R.D. 9, 11-12 (S.D.N.Y. 1958).) Regardless of the fact that *Loews* fails to reference or apply the applicable standard for motions brought under Rule 41(a)(2) as set by the Seventh Circuit, that decision contains no indication that it is applicable to the circumstances here.

In *Loews*, the remaining defendants based their objection on the ground that their "rights of examination and discovery [would] be ***broader***" as to the departing defendants were they to remain in the case. *Id.* at 11. Here, in contrast, the Lemko Defendants would be barred entirely from obtaining discovery from Huawei by Huawei's dismissal. Thus, unlike *Loews*, the question of the Lemko Defendants' access to discovery and examination from Huawei is not one of degree but an absolute.[3] While that distinction alone is enough to render *Loews* inapposite, there also is no indication that *Loews* involved the complex and intertwined issues of fact and law

---

[3]   Presumably the dismissed defendants in *Loews* were subject to the subpoena power of at least one United States district court and, therefore, would have an obligation to comply with any subpoena issued by the remaining defendants. With Huawei that is decidedly not the case, as set forth in the Lemko Defendants' previously-filed response to the Joint Motion to Dismiss. (*See* Dkt. No. 730, pp. 6-7.)

present here.  *Loews* includes no discussion whatsoever as to the existence or content of allegations pleaded against the remaining defendants that continued to involve defendants who were dismissed from the case.  In contrast here, while Motorola has asserted in conclusory fashion that "a conspiracy between Lemko and Huawei is no longer part of Motorola's case against Lemko" (Supplement, pp. 2-3), that position is belied by the following allegations concerning Huawei alleged against the Lemko Defendants in the TAC and that remain in the operative pleading filed in the public record of this matter:

> Defendant Shaowei Pan met with Ren Zhengfei, the founder and chairman of Huawei, in Beijing in 2001 but the details of this meeting have not been discovered yet from the limited evidence obtained in discovery in this litigation to date. However, it is established that in 2001 and at all times up to and including April 2, 2004, Defendant Shaowei Pan was a trusted senior engineer and director of architecture working full time at Motorola on the development of new products and new technologies for Motorola.  However, as set forth below, Defendant Shaowei Pan and the other defendants secretly were engaged in new product development for Huawei;

> Arrangements were made for Defendant Shaowei Pan to travel to China and "[we]will take some products with us for presentation." These presentations were to include:  "IPmobile control and switches, Bluetooth and CDMA cellular mobile voice communication and Bluetooth cellular data communication." This trip was scheduled in September 2002. Huawei knew or should have known that the "products" and proprietary technology being brought to China for "presentation" to the founder and chairman of Huawei were acquired and derived from misappropriated Motorola trade secrets and confidential information by full time Motorola employees;

> However, there is at least part of an email chain that has been recovered that confirms that Defendant Shaowei Pan, at Huawei's request, transmitted proprietary and confidential Motorola specifications for the Motorola SC300 base station to Ren Zhengfei and JinLong Hou, Huawei's vice president of wireless communications, in March 2003 and that a meeting and an agreement for the transfer of Motorola proprietary information did in fact take place in Beijing during the China trip in February-March 2003;

> Other Motorola proprietary trade secrets and confidential information have been recovered from computers produced pursuant to Court Order on May 28, 2009 including proprietary information from Motorola labs, various proprietary technical specifications, proprietary Motorola implementation specifications and requirements, proprietary system architecture, proprietary functional requirement documentation

for the Motorola SuperCell (SC) system, detailed Motorola proprietary functional system descriptions, proprietary technical requirement documents, proprietary Motorola source code documents and, upon information and belief, much if not all of this information has been disclosed, used and transmitted by the defendants to Huawei and Lemko without Motorola's authorization and consent;

The technology that Lemko was developing jointly with Huawei with the secret involvement of full time Motorola employees and engineers, including Defendants Shaowei Pan, Nicholas Labun, Bo Pyskir, and former Motorola employees, Ray Howell and Faye Vorick in the 2002-2004 time period has been described as "distributed mobile architecture" (DMA) and alternatively as a "control and soft switch element" (CASSE). This technology at all times was developed with purloined Motorola proprietary trade secrets and confidential information and is derived from the "Seamless Mobility" initiative that Defendant Pan and the other defendants were working on at Motorola; and

Both Lemko and Huawei are now marketing and selling DMA/CASSE cellular "solutions" in separate channels. Lemko uses the moniker "Node 1, Node 2 and Node 3" solutions and such other marketing terms as an "All-IP" network and "On Demand Cellular" solutions. Huawei, in turn, is marketing the DMA/CASSE base station "solution" as the "EasyGSM BTS", described as "the industry's first all IP-based compact BTS" that can be "mounted on a pole, wall, or tower," and under other trade names including the 3600 series, 3900 series and 6900 series products. All of these Lemko/Huawei "solutions" and "products" can be traced back to the same all-IP and/or soft-switching characteristics of the Motorola Seamless Mobility technology and the proprietary SC300 microcell BTS in 2001 when the Lemko/Huawei relationship was secretly formed and from which these solutions and products were created and derived from purloined Motorola proprietary trade secrets and confidential information without Motorola's knowledge or consent.

(TAC, ¶¶ 342, 347, 350, 353, 356, 360.) The combination of these of these allegations in the TAC and Motorola's concession that it intends to pursue its allegations that the Lemko Defendants transferred Motorola technology to Huawei (*e.g.*, Supplement, p. 3) cannot be squared with Motorola's bare assertion that a conspiracy between Lemko and Huawei is no longer part of this case. In reality, the Lemko Defendants are left in a far worse position than if Huawei had never been added to this case because ***none*** of these allegations were asserted in the Second Amended Complaint, yet ***all*** of these allegations (and more) remain pending against the Lemko Defendants in the TAC. These allegations remain in the public record despite the fact that Motorola now seeks to dismiss Huawei from this case and Motorola's CEO now touts in the

global media Motorola's "traditional relationship of confidence and trust" with Huawei,[4] no doubt the result of Motorola's careful review of the explanations and data provided by Huawei to make clear that the Motorola allegations quoted above are factually baseless.

There is, therefore, no justification whatsoever for Motorola's conclusory assertion that "Huawei's role in the case will be reduced to one of merely a number of non-defendant recipients of products and information from Lemko." (Supplement, p. 3.) Instead, Huawei is -- as this Court recognized -- the 500-pound gorilla in the room. And because Motorola has conceded that it is not removing any allegations from the TAC and intends to submit evidence in support of the asserted trade secret misuse and technology transfers set forth above, there is simply no persuasive justification for Motorola's argument that the categories of discovery indentified by the Lemko Defendants "are no longer at issue in this case and are not relevant to Motorola's remaining claims." (Supplement, p. 3.) The relevance is plain as day. Motorola alleges in the TAC that the Lemko Defendants worked with Huawei to steal and develop base station, softswitch, push-to-talk, and seamless mobility technology (not to mention various other unspecified categories of Motorola's technology). To demonstrate that these assertions are false (both for the jury and in support of any proceeding pursuant to Rule 11 or 28 U.S.C. § 1927), the Lemko Defendants need access to information from Huawei corresponding to those fields of technology in order to show (as Huawei has shown Motorola) that Huawei developed such technologies *without* the aid of technology "purloined" by the Lemko Defendants, and in fact, possessed such technological capabilities all along.

Additionally, Motorola cites to a case setting forth the elements of a claim for misappropriation under the Illinois Trade Secrets Act in support of the assertion that the Lemko

---

[4] This remedial public affirmation is not available to the Lemko Defendants, who continue to be publicly maligned in the TAC -- false allegations that have caused great economic and other harm to Lemko.

Defendants will not need discovery from Huawei to defend against Motorola's claims. (Supplement, p. 3, n. 1.) This assertion is plainly false. Huawei has made clear throughout this litigation that it was a long-time business partner of Motorola prior to the filing of the TAC. Further, Huawei has also made clear that, in the course of the relationship between it and Motorola, Huawei sold to or provided Motorola with Huawei products, technology and confidential information that Motorola now asserts as trade secrets in this litigation, including softswitch and push-to-talk technology created by Huawei. Consequently, the Lemko Defendants need evidence and testimony from Huawei to show that such claimed Motorola trade secrets are not trade secrets at all. The inability to obtain such evidence will prejudice the Lemko Defendants in their ability to defend against Motorola's claims that the Lemko Defendants are responsible for misappropriating potentially hundreds of claimed Motorola trade secrets. It is, therefore, hard to fathom how Motorola can claim that such discovery is not "relevant to Motorola's remaining claims."

Finally, the Lemko Defendants are left in a far worse (*i.e.*, prejudiced) position should Huawei be dismissed because Motorola, by seeking Huawei's dismissal, is intentionally attempting to interfere with the Lemko Defendants' ability to access the exculpatory information in the hands of Huawei and its employees. In addition to the source code provided to Motorola by Huawei in the clean room and other pre-settlement conference information assembled by Huawei to demonstrate to Motorola that its allegations are unfounded, it is the Lemko Defendants' understanding that settlement negotiations between Huawei and Motorola, involving executives at Motorola's highest level, took place in Hong Kong over a period of days or even weeks in the lead-up to the Motorola/Huawei settlement. The Lemko Defendants believe that the Huawei and Motorola representatives did not spend this time talking only about the structure

of the settlement, but instead that Huawei executives and subject matter experts were brought to Hong Kong from mainland China to provide the Motorola representatives with detailed information debunking Motorola's theory that Huawei established multiple areas of its technology relying on purloined Motorola trade secrets. It was, therefore, a combination of both the information assembled by Huawei and the explanations of its representatives that resulted in Motorola's fresh review of the facts and renewed "confidence and trust" in Huawei. In this same vein, testimony from Huawei witnesses with knowledge regarding Huawei's relationship with Lemko is necessary in order to disprove Motorola's allegations that the Lemko Defendants gave Huawei confidential and proprietary Motorola information at Huawei's request. This documentary and testimonial evidence disproving Motorola's allegations in the TAC that Huawei worked with Lemko to steal Motorola technology to develop and sell products worldwide has now been seen and digested by Motorola. The Lemko Defendants, meanwhile, have had no such opportunity to access this evidence, and Motorola wants to cut-off the Lemko Defendants' access to that information by and through the dismissal of Huawei.

There is, therefore, simply no basis for Motorola's assertions that the Lemko Defendants are no worse off than if Huawei had never been made a party to this case, and that the Lemko Defendants and Motorola would be on equal footing should Huawei be dismissed. Given the undeniable fact that allegations remaining in the TAC included claimed ongoing illicit interactions between the Lemko Defendants and Huawei, the dismissal of Huawei would prejudice the Lemko Defendants in their effort to obtain exculpatory information and testimony from Huawei given the barrier to obtaining discovery in China. Motorola, having seen evidence and heard Huawei's expert testimony undermining Motorola's allegations of a Chinese conspiracy now looks to dismiss Huawei, thereby blocking the Lemko Defendants' right and

ability to obtain exculpatory evidence.  Such an injury, stripping a party of the ability to obtain and present relevant evidence through a voluntary dismissal, establishes plain legal prejudice. *See Agretti,* 982 F.2d at 247 (citing *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171 (5th Cir. 1981)).  The holding in *Dunn* was unequivocal: a dismissal that barred the remaining defendants from obtaining evidence from a dismissed defendant -- particularly evidence that, as here, the plaintiff *knew* was damaging to its case -- was improper under Rule 41(a)(2).  Motorola never has sufficiently addressed this plain fact, and its attempt to distinguish *Dunn* and limit the decision to its facts in the Reply is unavailing.  In *Dunn,* the effect of the settlement and dismissal was a bar to relevant evidence.  *See* 639 F.2d at 1173.  It does not matter that in *Dunn* it was an express settlement provision that created the bar, the unavailability to remaining defendants of relevant and exculpatory evidence is prejudicial however it arises.  Here, the unavailable evidence is damaging to Motorola just as it was damaging to the plaintiff in *Dunn*. Therefore, Motorola's Supplement in no way rebuts the Lemko Defendants' showing that they will suffer substantial legal prejudice should this dismissal occur as requested in the Joint Motion to Dismiss.

> **b.**    **Motorola Does Not Seriously Contest That The Lemko Defendants Need Discovery From Huawei And Disclosure Of The Settlement Agreement In Order To Determine Any Required Set-Off And To Apportion Damages.**

Motorola's Supplement fails to respond in any way to the Lemko Defendants' showing that they are entitled to see the Motorola/Huawei settlement agreement and obtain discovery as to its allocation of actual and deemed consideration in order to: (1) determine the amount of any set-off or reduction in any potential damage award; (2) determine the scope of any release granted to Huawei by Motorola; and (3) determine whether the settlement contains any express provisions prejudicial to the Lemko Defendants' right to a full and fair defense of this lawsuit, including any provision discussing ongoing cooperation between Motorola and Huawei with

respect to information and witnesses relevant to the lawsuit. Motorola should be deemed to have waived any objections to the Lemko Defendants' request that Motorola provide information relating to the settlement and those topics.

Moreover, Motorola's assertion that it intends to "focus" on damages caused by the products that Lemko sold and Lemko's unjust enrichment lacks credibility. Lemko has provided Motorola with detailed financials demonstrating that Lemko has never garnered significant revenue from its products sales. Indeed, as a small start-up company, the potential (and unlikely) damages attributable to the products sold by Lemko are miniscule. Consequently, it is unclear what Motorola actually means by such an assertion. In any event, Motorola's argument in no way impacts the proper analysis for determining whether a dismissal under Rule 41(a)(2) results in legal prejudice. In *Atwood v. Pacific Maritime Assoc.*, 432 F.Supp. 491, 495-96 (D. Or. 1977), the court made clear that even where the plaintiff disclaimed any intent to seek damages from the dismissed defendant, prejudice to the remaining defendant existed because of the ***potential*** need for apportionment of damages based on the conduct of the defendant to be dismissed. Consequently, the potential need for apportionment of damages -- a possibility that is very much in play for those claims against the Lemko Defendants that are not intentional torts -- strongly justifies this Court exercising its discretion to either deny the Joint Motion to Dismiss or condition the grant of dismissal upon Huawei's ongoing availability. *See id.*, *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994) (affirmed trial court's decision to deny a plaintiff's motion to voluntarily dismiss where the complexity of the fraud claims and the fact that defendant had yet to depose the moving plaintiff compelled the conclusion that the defendants would be unable to untangle plaintiffs' claims and to defend themselves adequately without the moving plaintiff's continued involvement). Accordingly, though Motorola currently

disclaims an intent to seek damages based on Huawei profits, such a statement in no way obviates or even reduces the Lemko Defendants need to obtain discovery as to the proper amount of damages potentially attributable to Huawei both to untangle Motorola's complex claims of wrongdoing and for an apportionment analysis.

## III.    CONCLUSION

For all the foregoing reasons, and for all the reasons set forth in the Lemko Defendants' response in opposition to the Joint Motion to Dismiss With Prejudice pursuant to Fed. R. Civ. P. 41(a)(2), the Lemko Defendants' respectfully submit that the Joint Motion to Dismiss should either be denied, or its grant should be conditional upon Huawei's provision to the Lemko Defendants of reasonable discovery requested throughout the remainder of this litigation. The Lemko Defendants must not be foreclosed from obtaining evidence sufficient to counter Motorola's wide-ranging proclamations of a Chinese conspiracy as part of Motorola's attempt to cast these proceedings with a xenophobic pall. Accordingly, should this Court be inclined to grant the Joint Motion to Dismiss, it should be granted only with the following conditions: (1) Huawei furnish to the Lemko Defendants all information and documents that it has produced or disclosed to Motorola, including that source code currently housed in the clean room environment; (2) Huawei shall make available to the Lemko Defendants any other information related to the claims raised in this lawsuit that the Lemko Defendants may reasonably request, including information on the topics set forth in the Lemko Defendants' initial response to the Joint Motion to Dismiss and in Lemko's pending (very limited) document request to Huawei; (3) Huawei shall make available for pre-trial depositions and trial testimony those of its employees and representatives that the Lemko Defendants reasonably request to appear; and (4) the Motorola/Huawei settlement agreement be disclosed to the Lemko Defendants and the Lemko control group subject to an appropriate designation under the Protective Order.

Dated:  May 23, 2011                                    Respectfully submitted,


                                                         /s/ Michael D. Karpeles
                                                        Michael D. Karpeles (ARDC # 6191828)
                                                        *KarpelesM@gtlaw.com*
                                                        Richard D. Harris (ARDC # 1137913)
                                                        *HarrisR@gtlaw.com*
                                                        Charles B. Leuin (ARDC # 6225447)
                                                        *LeuinC@gtlaw.com*
                                                        Jonathan H. Claydon (ARDC # 6289235)
                                                        *ClaydonJ@gtlaw.com*
                                                        Barry R. Horwitz (ARDC # 6296764)
                                                        *HorwitzB@gtlaw.com*

                                                        Greenberg Traurig, LLP
                                                        77 West Wacker Drive, Suite 3100
                                                        Chicago, IL   60601
                                                        Tel.     (312) 456-8400


                                                         Attorneys for Lemko Corporation, Nicholas Labun,
                                                        Shaowei Pan, Bohdan Pyskir, Hechun Cai, Jinzhong
                                                        Zhang, Xuefeng Bai, Faye Vorick, Nick Desai and
                                                        Ankur Saxena

## CERTIFICATE OF SERVICE

The undersigned certifies that the attached ***Lemko Defendants' Response To Motorola's Supplement To The Reply In Support Of Motorola's And Huawei's Joint Motion To Dismiss With Prejudice Defendant Huawei Technologies Co., Ltd.*** was served via the CM/ECF System, this 23d day of May, 2011, upon counsel for all parties of record.


By:     /s/ Michael D. Karpeles