IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA, INC., | Case No. 1:08-cv-05427 |
| Plaintiff, | Judge Matthew F. Kennelly |
| | Magistrate-Judge Geraldine Soat Brown |
| v. | |
| LEMKO CORPORATION, XIAOHONG SHENG, SHAOWEI PAN, HANJUAN JIN, XIAOHUA WU, XUEFENG BAI, NICHOLAS LABUN, BOHDAN PYSKIR, HECHUN CAI, JINZHONG ZHANG, ANGEL FAVILA, ANKUR SAXENA, RAYMOND HOWELL, FAYE VORICK and NICHOLAS DESAI, | |
| Defendants. | |
| LEMKO CORPORATION, SHAOWEI PAN, XIAOHUA WU and XIAOHONG SHENG, | |
| Counter-Plaintiffs, | |
| v. | |
| MOTOROLA, INC., | |
| Counter-Defendant. | |

**LEMKO'S MOTION TO COMPEL
PRODUCTION OF HUAWEI SETTLEMENT AGREEMENT**

**I.     COMPLIANCE WITH LOCAL RULE 37.2**

Counsel for Lemko Corporation certifies that it consulted in person with counsel for Motorola, Inc. on August 17, 2011, as well as in email correspondence leading up to that meeting, regarding the issues raised in this motion.  Unfortunately, despite the parties' good faith attempts to resolve their differences, they have been unable to reach an accord.

## II.     INTRODUCTION

Motorola continues to withhold a key piece of evidence in this case – the settlement agreement it entered into with Huawei Technologies Co., Ltd., a previous defendant in this lawsuit.  This document is not privileged.  It is not burdensome to produce.  There is no prejudice to Motorola.  And confidentiality concerns can be handled through the existing Protective Order in the case.  Motorola's sole basis for failing to produce the agreement is relevance – a thin objection at this stage of discovery and one that the Court should reject in this instance.

The Huawei settlement agreement is relevant for several independent reasons.  Each reason standing alone warrants production of the agreement:

- Huawei was accused of taking and using the same trade secrets as Lemko.  In fact, Motorola's most recent response to the court ordered discovery (served *after* Huawei was dismissed from the case) still maintains Motorola's assertions against "Huawei/Lemko" products – in Motorola's own words.  Lemko is entitled to determine what consideration was paid (or not paid) for Huawei to be given an effective license to continue using Motorola's alleged secrets.

- The Huawei agreement is necessary to determine if Lemko is entitled to a set-off in connection with Count Eighteen of the Third Amended Complaint, which alleges a conspiracy between Huawei and Lemko, among other things.

- The agreement could show possible collusion between Motorola and Huawei or witness bias.

- Production of the Huawei agreement would foster informed settlement discussions with the remaining Defendants.

As set forth more fully below, Lemko respectfully requests that its motion be granted.

## III.     FACTUAL BACKGROUND

Although Huawei has been formally dismissed as a named defendant, it remains a major component of Motorola's claims *and* Lemko's defenses in this case.  Motorola continues to assert civil conspiracy charges in Count Eighteen, for example, alleging a conspiracy between the remaining Defendants and Huawei.  This Count specifically and expressly implicates Huawei,

Lemko and eleven of the individual Defendants (Dkt. No. 473, pp. 77-83). The charge includes allegations that the Defendants conspired to, among other things, misappropriate Motorola's trade secrets, retain such information after various defendants' employment with Motorola and use and transfer the information for the benefit of Lemko (e.g., Id. at ¶¶ 316, 324). It is undisputable that this Count includes overlapping claims of liability with respect to Huawei, Lemko and the individual Defendants.

Motorola has attempted to downplay this overlap by arguing that, following the dismissal of Huawei, it will no longer seek Huawei's profits, but will instead focus on Lemko's products (Tr. of Proceedings, May 12, 2011, p. 13). However, from Motorola's Answers and Objections to Court-Entered Discovery Based On Lemko Defendants' Status Report (Dkt. No. 799-1, Filed Under Seal), which was served *after* Huawei was dismissed, it is clear that Motorola continues to rely on allegations of use and transfer of alleged Motorola trade secrets to Huawei, including to develop a "Huawei/Lemko" solution (see Id. at pp. 12, 13, 25, 28, 30-32). Thus, even Motorola's latest misappropriation of trade secret allegations fail to delineate where Huawei's potential liability ends and the remaining Defendants' potential liabilities begin. Accordingly, Lemko and the individual Defendants must evaluate the terms and conditions of the settlement agreement in order to ascertain whether those terms and conditions, including any representations and warranties set forth therein, impact any of the Defendants' rights, potential liabilities and existing or potential defenses.

Motorola itself is pressing for extensive discovery from Lemko directly involving Lemko's relationship with Huawei:

Motorola's Sixth Set of Requests for Production to Lemko

115. A true and accurate copy of any and all Documents and Communications that Relate or refer to any communications between Shaowei Pan and counsel for Huawei, Huawei North America, Futurewei, or any of

Huawei's affiliates, including but not limited to communications referred to in documents HW00000526 – HW00000531.

<u>Motorola's Seventh Set of Requests for Production to Lemko</u>

122. A true and accurate copy of any and all documents and communications referring or consisting of executed contracts, agreements, or understandings between Huawei and Lemko, including but not limited to any agreement to jointly bid on operator equipment purchases, or to bid or sell the other's equipment or software licenses on operator equipment purchases.

123. A true and accurate copy of any and all documents and communications that refer to any meetings or telephone conferences between Lemko and Huawei regarding the development or sale of any Lemko products or combination Lemko/Huawei products, including but not limited to meeting agendas, presentations, and minutes.

124. A true and accurate copy of any and all documents and communications that refer to any meetings or telephone conferences between Huawei and any of the individual Defendants, including but not limited to meeting agenda, presentations, and minutes.

130. Any and all documents that refer to Huawei's testing of Lemko's software, including but not limited to the Lemko software that was tested by Huawei, including source code.

131. A true and accurate copy of any and all Lemko software sold by Huawei, or incorporated into Huawei's products, or licensed by Huawei.

157. A true and accurate copy of any and all purchase orders for any and all Huawei equipment (as referenced at Howell Dep. 327:22-328:5).

164. All agreements entered into between Lemko and Ericsson, Huawei, Node 2 Network, Berico Tech, or Versar.

<u>Motorola's Eighth Set of Requests for Production to Lemko</u>

174. Provide any and all communications and documents exchanged between Huawei and Lemko which relate in any way to the discussions, agreement or potential agreement between Motorola and Nokia Siemens Networks, B.V. ("NSN") or any other party regarding NSN's or the other party's potential acquisition of a portion of Motorola's business.

The overlap in claims, including the underlying allegations, against Huawei and Lemko is

unmistakable.

## IV. MOTOROLA'S ONLY OBJECTION TO PRODUCTION IS "RELEVANCE," WHICH IS DISFAVORED DURING DISCOVERY

During the face-to-face meet and confer held on August 17, 2011 (as well as extensive email correspondence prior to the meeting), Motorola raised a single objection to production of the Huawei settlement agreement – relevance. This was confirmed again at the hearing on August 23. Production of the agreement is not burdensome (particularly in the context of the massive, intrusive discovery that Motorola is obtaining from Lemko, individual Defendants and third parties in this case), and any confidentiality concerns can be handled by the comprehensive Protective Order (Dkt. 96). Design, Inc. v. Guardian Bldg. Prods. Distrib., 270 F.R.D. 437, 438 (E.D. Wis. 2010) ("Most cases find that a settlement agreement is discoverable despite a confidential designation, especially when there is a protective order in place to prevent unauthorized disclosure."). Motorola's relevancy objection is unwarranted.

In the context of discovery, relevance is construed broadly and liberally "to encourage full disclosure before trial." White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364, 366 (N.D. Ill. 2001) (ordering production of settlement agreement), citing Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340, 351 (1978) (relevancy broadly construed to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."). As held in White, "relevancy for discovery is flexible and has a broader meaning than admissibility at trial." 203 F.R.D. at 366.

In Meyer v. South Pacific Lines, 199 F.R.D. 610 (N.D. Ill. 2001), the court held:

A request for discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *AM Intern. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D. Ill. 1981), citing 8 *Wright & Miller, Federal Practice and Procedure*, Civil § 2008 (1970). Thus, courts commonly look unfavorably upon significant restrictions placed upon the discovery process. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 135 (N.D. Ill. 1993).

Meyer, 199 F.R.D. at 611-612; See also Trading Techs. Int'l Inc. v. eSpeed, Inc., 2005 U.S. Dist. LEXIS 10686 (N.D. Ill. Apr. 28, 2005) ("Discovery encompasses matters that actually or potentially affect any issue in the litigation.").

**V.    THE HUAWEI SETTLEMENT AGREEMENT IS "RELEVANT" AND SHOULD BE PRODUCED FOR SEVERAL SEPARATE, INDEPENDENT REASONS**

**A.    The Huawei Agreement Could Lead To Discovery Of Admissible Evidence Regarding The Value Of The Alleged Trade Secrets**

Motorola is claiming billions of dollars in damages from Lemko for allegedly using Motorola's trade secrets – the same trade secrets that Huawei is now apparently free to use as openly and broadly as it desires.  In effect, Huawei has obtained a license to use Motorola's alleged secrets and the value of that license is relevant to Motorola's damage calculation against Lemko, as held in numerous cases in the analogous context of patent infringement licenses/settlements.   ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010); Small v. Nobel Biocare USA, LLC, 2011 U.S. Dist. LEXIS 77838 (S.D.N.Y. July 19, 2011) (collecting cases in view of ResQNet and granting motion to compel production of settlement agreement with former co-defendant).

Indeed, the Illinois Trade Secrets Act expressly provides for damages "measured in terms of a reasonably royalty." 765 ILCS § 1064/4(a).  As in the patent context, numerous courts have used the *Georgia-Pacific* factors, including past licenses, in determining damages for trade secret misappropriation.  Vermont Microsystems v. Autodesk, Inc., 88 F.3d 142, 151 (2d Cir. 1996) (citing *Georgia-Pacific* in discussion of reasonable royalty for trade secret misappropriation); O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 399 F. Supp. 2d 1064 (N.D. Cal. 2005) (reviewing *Georgia-Pacific* factors in trade secret case).

Was the license free of charge?  Are Motorola's trade secret claims so weak that it actually paid Huawei?  Or was there consideration given to Motorola for Huawei's continued use

of Motorola's alleged trade secrets?  In any instance, the agreement could clearly lead to the

discovery of admissible evidence regarding the *value* of the alleged trade secrets in this case.

> **B.      The Huawei Agreement Could Lead To Discovery Of Admissible**
> **Evidence Relating To Lemko's Set-Off Claim**

It has been well-established for decades that:

> [W]here an injury has been received by the negligence or willfulness of two or
> more joint tortfeasors and suit is brought against one or more of them to recover
> damages, any amounts received by plaintiff for execution of a covenant not to sue
> some or more of the joint tortfeasors are to be applied in reduction of the damages
> recoverable from those remaining in the suit.

New York, C. & S. L. R. Co. v. American Transit Lines Inc., 408 Ill. 336, 342 (Ill. 1951).  See

also Harris v. Elliott, 207 Ill. App. 3d 384, 389-390 (Ill. App. Ct. 2nd Dist. 1991) (holding that

while alleged intentional tortfeasors are not entitled to contribution under the Joint Tortfeasor

Contribution Act, "Plaintiff has confused contribution with setoff.").  As held in Schoonover v.

International Harvester Co., 171 Ill. App. 3d 882 (Ill. App. Ct. 1st Dist. 1988):

> [T]he purpose of compensatory tort damages is to compensate the plaintiff for his
> injuries, not to punish the defendant or bestow a windfall upon the plaintiff.
> (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 363, 392 N.E.2d
> 1.)  An injured person is entitled to one full compensation for his injuries, and a
> double recovery for the same injury is against public policy.  (*Eberle v. Brenner*
> (1987), 153 Ill. App. 3d 700, 702, 505 N.E.2d, citing *Popovich v. Ram Pipe &
> Supply Co.* (1980), 82 Ill. 2d 203, 412 N.E.2d 518.)  Thus a plaintiff who has
> recovered his damages should have no basis to complain because a defendant
> benefitted from a setoff.  153 Ill. App. 3d at 702.

Schoonover, 171 Ill. App. 3d at 885.

Here, the overlap in Count Eighteen is clear, as shown above.  In a similar situation

involving three alleged co-conspirators (with one defendant settling), the Court ordered

production of the agreement in light of the "overlap of claims."  White, 203 F.R.D. at 366-367.

In these situations, courts "have allowed discovery of settlement documents in order to allow the

parties to ascertain the extent of their liability."  Id., citing U.S. Equal Employment Opportunity

Commission v. Rush Prudential Health Plans, 1998 U.S. Dist. LEXIS 4170 (N.D. Ill. 1998);

Bennett v. La Pere, 112 F.R.D. 136 (D.R.I. 1986).

Still further, in dismissing Huawei from the case, this Court held that: "If Lemko is legally entitled to a set-off based on consideration that Motorola may have received via its settlement with Huawei, it can obtain the necessary information about the terms of that settlement from Motorola" (Dkt. 738, May 24, 2011 Order). For instance, did the Huawei settlement agreement address the remaining Defendants' alleged transfer of Motorola's trade secrets to Huawei? Did the Huawei settlement agreement address the alleged combination "Huawei/Lemko" products for which Motorola continues to seek discovery? The fact that the Huawei settlement agreement may contain additional or complicated business terms is immaterial – Lemko should be allowed to analyze the agreement in its entirety to determine (for itself) if there is any potential argument or claim for a set-off.

### C. The Huawei Agreement Could Lead To Discovery Of Admissible Evidence Regarding Potential Bias In The Testimony, Or Non-Testimony, Of Huawei In This Case

Regardless of whether Huawei is still formally a party to this action (and regardless of any potential set-off or other issues), Lemko is entitled to review the Huawei settlement agreement to determine if there is any implicit or explicit collusion between Motorola and Huawei to either (1) obtain documents or testimony slanted in Motorola's favor or (2) ensure that certain unfavorable testimony or information would ***not*** be forthcoming from Huawei.

Such potential bias is frequently the grounds to order production of a settlement agreement from a settling defendant:

> The Federal Rules of Evidence may allow for the impeachment of [dismissed defendant] Gottlieb to prove bias in the event an agreement exists. *Fed.R.Evid. 408, 607*. Defendant further contends that the settlement may contain evidence of a *quid pro quo* between Gottlieb and Plaintiff. Because Gottlieb will likely be a witness, the remaining defendants are entitled to learn whether any promises have

been made in connection with his dismissal as a party defendant or whether Plaintiffs chose to voluntarily drop their claims against Gottlieb. *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc., 1998 U.S. Dist. LEXIS 6808, 1998 WL 186705 (E.D. La. 1998)* (Finding discovery of settlement agreements is permitted to evaluate a witness' potential bias, interest and credibility). *See also Tribune Co. v. Purcigliotti, 1996 U.S. Dist. LEXIS 11571, 1996 WL 337277 (S.D.N.Y. 1996); Griffin v. Mashariki, 1997 U.S. Dist. LEXIS 19325, 1997 WL 756914 (S.D.N.Y. 1999)* (Allowing discovery of settlement agreements on issue of witness bias).

<u>White</u>, 203 F.R.D. at 367-368.

The Joint Statement of Huawei and Motorola after the settlement discusses the "cooperative and productive relationship" that the companies will have going forward and that "after further review of the matter" and "after reviewing the facts," Motorola dropped its trade secret claims against Huawei (Exhibit 1, April 13, 2011 press release). When Lemko's counsel raised the issue of the potential "ongoing cooperation between Motorola and Huawei" at the May 12, 2011 hearing, this Court stated: "I can solve that by saying they have got to show you the agreement. We find out" (Tr. at pp. 12-13). The only way for Lemko to find out if there is witness bias and cooperation is to see the agreement itself.

### D. Ordering Production Of The Huawei Settlement Agreement Could Further Settlement Discussions With The Remaining Defendants

In language directly applicable here, the court held in <u>White</u>:

In addition, the discovery could foster settlement talks, which in turn promotes judicial economy. For example, in a claim for $1,000,000 involving overlapping claims against multiple defendants, the fact that one defendant has settled for $0, $100,000 or $750,000 has great strategic significance to the remaining defendants. Such information may promote settlement of the remaining claims and permits the remaining defendants to evaluate their risks in continuing with the litigation.

<u>White</u>, 203 F.R.D. at 367.

This is yet another independent basis to order production of the Huawei settlement agreement.

## VI.     CONCLUSION

For the reasons stated, it is respectfully requested that Lemko's motion be granted and Motorola ordered to produce the Huawei settlement agreement pursuant to the terms of the Protective Order.

Respectfully submitted,

_____/s/ Raymond P. Niro, Jr._____
Raymond P. Niro
Raymond P. Niro, Jr.
Robert A. Conley
Brian E. Haan
Joseph A. Culig
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
RNiro@nshn.com; RNiroJr@nshn.com;
RConley@nshn.com; BHaan@nshn.com;
JCulig@nshn.com

Attorneys for Lemko Corporation, Shaowei
Pan, Xuefeng Bai, Nicholas Labun, Bohdan
Pyskir, Hechun Cai, Jinzhong Zhang, Ankur
Saxena, Faye Vorick and Nicholas Desai

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 30, 2011 the foregoing

## LEMKO'S MOTION TO COMPEL
## PRODUCTION OF HUAWEI SETTLEMENT AGREEMENT

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

***Counsel for Motorola***

| | | |
|---|---|---|
| Dan K. Webb | R. Mark Halligan | John A. Chatowski |
| James E. McComb | Deanna R. Swits | Robert A. Weikert |
| Joanna R. Travalini | Jason T. Kunze | NIXON PEABODY LLP |
| Lawrence R. Desideri | Jodi R. Wine | One Embarcadero Center, 18th Floor |
| Maureen L. Rurka | Michael C. Hallerud | San Francisco, CA 94111 |
| WINSTON & STRAWN LLP | NIXON PEABODY LLP | jchatowski@nixonpeabody.com |
| 35 West Wacker Drive | 300 South Riverside Plaza, 16th Floor | rweikert@nixonpeabody.com |
| Chicago, IL 60601-9703 | Chicago, IL 60606 | |
| dwebb@winston.com | rhalligan@nixonpeabody.com | |
| emccomb@winston.com | dswits@nixonpeabody.com | |
| jtravalini@winston.com | jkunze@nixonpeabody.com | |
| ldesideri@winston.com | jwine@nixonpeabody.com | |
| mrurka@winston.com | hallerud@nixonpeabody.com | |

***Counsel for Xiaohong Sheng***
Thomas Howard Geoghegan
Michael Paul Persoon
DESPRES SCHWARTZ & GEOGHEGAN
77 West Washington Street - Suite 711
Chicago IL 60602
admin@dsgchicago.com
mike.persoon@gmail.com

***Counsel for Hanjuan Jin***
Telly Stefaneas
TELLY STEFANEAS, ESQ.
53 West Jackson Boulevard - Suite 1437
Chicago, IL 60604
telly_stefaneas@me.com

***Counsel for Xiaohua Wu***
William J. Leonard
WANG, LEONARD & CONDON
33 North LaSalle Street - -Suite 2020
Chicago, IL 60602
williamjleonard@yahoo.com

***Counsel for Angel Favila***
Gregory Adam Adamski
ADAMSKI & CONTI
100 North LaSalle Street - Suite 1720
Chicago, IL 60602
GAAdamski@adamskiandconti.com

***Counsel for Raymond Howell***
Isabella I Wells
LAW OFFICES OF ISABELLA I. WELLS, P.C.
415 N. LaSalle - Suite 301
Chicago, IL 60654
isabellawells@gmail.com

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ Raymond P. Niro, Jr.

NIRO, HALLER & NIRO