IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA, INC.,<br><br>          Plaintiff,<br><br> v.<br><br>LEMKO CORPORATION, XIAOHONG SHENG, SHAOWEI PAN, HANJUAN JIN, XIAOHUA WU, XUEFENG BAI, NICHOLAS LABUN, BOHDAN PYSKIR, HECHUN CAI, JINZHONG ZHANG, ANGEL FAVILA, ANKUR SAXENA, RAYMOND HOWELL, FAYE VORICK and NICHOLAS DESAI,<br><br>          Defendants. | Case No. 1:08-cv-05427<br><br>Judge Matthew F. Kennelly<br>Magistrate-Judge Geraldine Soat Brown |
| LEMKO CORPORATION, SHAOWEI PAN, XIAOHUA WU and XIAOHONG SHENG,<br><br>          Counter-Plaintiffs,<br><br> v.<br><br>MOTOROLA, INC.,<br><br>          Counter-Defendant. | |

**LEMKO'S REPLY IN SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF HUAWEI AGREEMENT**

**I. THE HUAWEI SETTLEMENT AGREEMENT
IS RELEVANT TO THE ISSUE OF DAMAGES**

Lemko's opening brief cited several decisions holding that production of settlement agreements is necessary, in both trade secret and patent cases, because such agreements are relevant to the issue of damages (Dkt. 801 at p. 6-7). Tellingly, Motorola did not address any of these cases. The bottom line is that (whether called a settlement, license, covenant not to sue or otherwise) when a patent or trade secret holder allows another company to continue selling the

accused product, it is a factor to consider in determining the value of the trade secrets and potential damages: prior "licenses" is a specific Georgia-Pacific factor that applies equally in trade secret and patent cases. Vermont Microsystems v. Autodesk, Inc., 88 F.3d 142, 151 (2d Cir. 1996); O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 399 F. Supp. 2d 1064 (N.D. Cal. 2005).

Unable to distinguish or even address any of the cases cited by Lemko, Motorola chooses to ignore them. Worse, Motorola's own authority does not come close to supporting its position. For example, in Abbott Laboratories v. Sandoz, 743 F.Supp.2d 762 (N.D. Ill. 2010), cited by Motorola, the plaintiff entered into three settlements allowing third parties to continue selling their allegedly infringing products on a royalty-free basis – just like Huawei is seemingly being allowed to do here. Critically, the Abbott court was not determining *relevance* from the standpoint of discovery, but rather *admissibility* at trial in the context of motions *in limine*. The Abbott case fully supports Lemko's motion to compel because in Abbott, the settlement agreements *were* produced in discovery and the court later determined admissibility based upon a fully developed record. Motorola applies this incorrect standard throughout its brief, even stating in a heading that the Huawei settlement agreement is "not admissible," which is not the issue currently before the Court (Opp. at p. 3, Section II).

Still further, the court in Abbott ultimately denied plaintiff's motion *in limine* and found the settlement agreements admissible. Id. at 767. Thus, not only were the agreements produced in discovery, but they were also found admissible at trial. Id. Motorola's own case law strongly favors Lemko's position and the granting of its motion to compel.

Similarly, Motorola relies upon Mars Steel v. Continental Illinois Nat'l Bank & Trust of Chicago, 834 F.2d 677 (7th Cir. 1987), where a settlement agreement and all of its terms were produced in the litigation – the court merely prohibited discovery into the "settlement

negotiations." Id. at 684. If anything, Mars supports Lemko because Lemko, at the present time, is only seeking production of the final Huawei settlement agreement, as opposed to documents or information regarding the negotiations leading to the settlement. Mars is of limited application in any event. The case dealt with whether a class action settlement was entitled to a "fairness hearing" – an issue far removed from the matter before this Court. Likewise, Peaco v. Commissioner of Internal Revenue addressed whether a settlement payment was taxable income, having no bearing on the issues before this Court. Two other district court *patent* cases relied upon by Motorola[1] both pre-date the Federal Circuit's ResQNet.com decision and thus have no precedential value.

Much more pertinent are the cases cited by Lemko in its opening brief (ignored by Motorola) that recognize the difference between discovery and admissibility:

> While it is true that "litigation can skew the result of the hypothetical negotiation," [ResQNet.com] at 872, and that a settlement agreement entered into as a result of litigation may ultimately lack probative value in determining a reasonable royalty, even something ultimately inadmissible is still discoverable under Fed. R. Civ. P. 26(b)(1).

Small v. Nobel Biocare USA, LLC, 2011 U.S. Dist. LEXIS 77838, *17 (S.D.N.Y. July 19, 2011) (ordering production of settlement agreement because under ResQNet, the trier of fact should consider "all information concerning royalty rates" and a "litigation-based settlement agreement … falls within that universe of information.").

In the trade secret case Vermont Microsystems, the court held that in determining damages, "the trier of fact should consider such factors as … the prices past purchasers or licensees may have paid; the total value of the secret to the plaintiff" and more. Id., 88 F.3d at 151-152, quoting University Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 539

---

[1] Insight Technology Inc. v. SureFire LLC, 2009 WL 3242554 (D.N.H. Oct. 8, 2009) and Centillion Data Systems, Inc. v. Ameritech Corp., 193 F.R.D. 550, 553 (S.D. Ind. 1999).

(5th Cir. 1974); see also O2 Micro Int'l, 399 F.Supp.2d at 1078 (Georgia-Pacific lists "the factors relevant to a reasonable royalty determination" in trade secret case).

In this case, Huawei was accused of stealing the same Motorola trade secrets that are alleged against Lemko.  Huawei was accused of developing Lemko/Huawei products and conspiring with Lemko to use Motorola's alleged secrets in its products.  Huawei was apparently released for this alleged theft and use of Motorola's trade secrets, and the accused Huawei products continue to be sold in the marketplace unabated.  Motorola does not deny these facts in its opposition.  What was the "price" paid by Huawei for this release and effective license?  Isn't it pertinent to determine the value of Motorola's secrets – allegedly billions of dollars when asserted against individual defendants and a small company like Lemko – while industry giant Huawei can continue flooding the marketplace with its accused products free of charge?  What other potential adverse admissions are contained in the Huawei settlement agreement that could impact the credibility of Motorola's damages claim or the value of Motorola's alleged secrets?

The Huawei settlement agreement is clearly "relevant" from a discovery standpoint – it is reasonably calculated to lead to the discovery of admissible evidence on damages alone.  Admissibility can be determined at a later date.

## II. THE HUAWEI SETTLEMENT AGREEMENT IS RELEVANT TO LEMKO'S SET-OFF CLAIM

Motorola tries to cut too fine a line in saying that it is not seeking damages regarding "Huawei's" conspiracy and use of Motorola's trade secrets.  Critically, Motorola continues to seek damages from *Lemko* for the Lemko/Huawei products and for Lemko's alleged disclosure of the trade secrets to Huawei.  As shown by just one example of the many discovery requests that Motorola is pursuing with Lemko:

> 131.   A true and accurate copy of any and all Lemko software sold by Huawei, or incorporated into Huawei's products, or licensed by Huawei.

(Motorola's 7th Set of Requests for Production). In addition, as recently as August 26, Motorola sought the following discovery through subpoenas to Lemko's customers:

>    1.    Any and all documents and communications referring or relating to Lemko or its products or services, including but not limited to any product or service offered in conjunction with Huawei.

(See e.g., Exhibit 2).

Evaluation of the Huawei settlement agreement could plainly lead to admissible evidence regarding a potential set-off.

### III.  THE HUAWEI SETTLEMENT AGREEMENT IS RELEVANT TO SHOW POTENTIAL BIAS

Motorola once again completely ignores the case law cited by Lemko showing that courts frequently order production of settlement agreements to show bias (Dkt. 801 at p. 8-9). See White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364, 367-68 (N.D. Ill. 2001) (collecting case law). The joint press release attached to Lemko's opening brief alone provides support for this position, in addition to the fact that Motorola devoted dozens of paragraphs in its Third Amended Complaint to conspiracies and theft by Huawei, only to dismiss all of its claims and retreat from its position entirely. These circumstances strongly suggest that the Huawei settlement agreement contains provisions, either explicitly or implicitly, showing some type of collusion or bias.

### IV.  ORDERING PRODUCTION OF THE HUAWEI SETTLEMENT AGREEMENT COULD FOSTER SETTLEMENT DISCUSSIONS

Motorola did not address Section V(D) of Lemko's brief, citing to the holding in White that production of the settlement agreement "could foster settlement talks, which in turn promotes judicial economy." Id., 203 F.R.D. at 367. This is yet another undisputed basis to order production of the Huawei settlement agreement.

## V. ANY CONFIDENTIALITY ISSUES CAN BE HANDLED THROUGH THE EXISTING PROTECTIVE ORDER

As held in Thermal Design, Inc. v. Guardian Bldg. Prods. Distrib., 270 F.R.D. 437 (E.D. Wis. 2010), cited by Lemko at page 5 of its opening brief, but ignored by Motorola:

> Most cases find that a settlement agreement is discoverable despite a confidential designation, especially when there is a protective order in place to prevent unauthorized disclosure.

Id. at 438. The Protective Order in this case contains multiple layers of confidentiality designations that are more than adequate to address any concerns of Motorola. Moreover, Motorola states (without any factual support whatsoever) that Huawei has "refused to consent to the production of the agreement absent an Order from the Court" (Opp. at p. 6). Apparently, Huawei has no objection to producing the agreement pursuant to the Court's Order, which is exactly what Lemko is seeking with this motion.

## VI. CONCLUSION

As a throw-in at the end of its opposition, Motorola requests that "the Court review the settlement agreement *in camera* for relevance prior to ordering the production" (Opp. at p. 6). There is no assertion of any potential privilege here, so this intermediate step is unnecessary, particularly with the close of fact discovery rapidly approaching. Naturally, the Court views evidence with a more balanced eye, whereas Defendants' counsel is in a better position to analyze the Huawei settlement agreement and determine if it could lead to any potential argument or other evidence to support Defendants' positions.

For the reasons stated herein and in Lemko's opening brief (Dkt. 801), it is respectfully requested that its motion be granted.

Respectfully submitted,

/s/ Raymond P. Niro, Jr.
Raymond P. Niro
Raymond P. Niro, Jr.
Robert A. Conley
Brian E. Haan
Joseph A. Culig
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
RNiro@nshn.com; RNiroJr@nshn.com;
RConley@nshn.com; BHaan@nshn.com;
JCulig@nshn.com

Attorneys for Lemko Corporation, Shaowei Pan, Xuefeng Bai, Nicholas Labun, Bohdan Pyskir, Hechun Cai, Jinzhong Zhang, Ankur Saxena, Faye Vorick and Nicholas Desai

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 13, 2011 the foregoing

## LEMKO'S REPLY IN SUPPORT OF ITS
## MOTION TO COMPEL PRODUCTION OF HUAWEI AGREEMENT

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

*Counsel for Motorola*

| | | |
|---|---|---|
| Dan K. Webb | R. Mark Halligan | John A. Chatowski |
| James E. McComb | Deanna R. Swits | Robert A. Weikert |
| Joanna R. Travalini | Jason T. Kunze | NIXON PEABODY LLP |
| Lawrence R. Desideri | Jodi R. Wine | One Embarcadero Center, 18th Floor |
| Maureen L. Rurka | Michael C. Hallerud | San Francisco, CA 94111 |
| WINSTON & STRAWN LLP | NIXON PEABODY LLP | jchatowski@nixonpeabody.com |
| 35 West Wacker Drive | 300 South Riverside Plaza, 16th Floor | rweikert@nixonpeabody.com |
| Chicago, IL 60601-9703 | Chicago, IL 60606 | |
| dwebb@winston.com | rhalligan@nixonpeabody.com | |
| emccomb@winston.com | dswits@nixonpeabody.com | |
| jtravalini@winston.com | jkunze@nixonpeabody.com | |
| ldesideri@winston.com | jwine@nixonpeabody.com | |
| mrurka@winston.com | hallerud@nixonpeabody.com | |

*Counsel for Xiaohong Sheng*
Thomas Howard Geoghegan
Michael Paul Persoon
DESPRES SCHWARTZ & GEOGHEGAN
77 West Washington Street - Suite 711
Chicago IL 60602
admin@dsgchicago.com
mike.persoon@gmail.com

*Counsel for Hanjuan Jin*
Telly Stefaneas
TELLY STEFANEAS, ESQ.
53 West Jackson Boulevard - Suite 1437
Chicago, IL 60604
telly_stefaneas@me.com

*Counsel for Xiaohua Wu*
William J. Leonard
WANG, LEONARD & CONDON
33 North LaSalle Street - -Suite 2020
Chicago, IL 60602
williamjleonard@yahoo.com

*Counsel for Angel Favila*
Gregory Adam Adamski
ADAMSKI & CONTI
100 North LaSalle Street - Suite 1720
Chicago, IL 60602
GAAdamski@adamskiandconti.com

*Counsel for Raymond Howell*
Isabella I Wells
LAW OFFICES OF ISABELLA I. WELLS, P.C.
415 N. LaSalle - Suite 301
Chicago, IL 60654
isabellawells@gmail.com

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

                                           /s/ Raymond P. Niro, Jr.
                                           NIRO, HALLER & NIRO